UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| CIENA HEALTHCARE MANAGEMENT, INC., a Michigan corporation, *individually and as Plan Administrator for the* CIENA HEALTHCARE MANAGEMENT INC. HEALTH AND WELFARE PLAN, | ) | Case No. 2:24-cv-12362 |
| | ) | Judge Mark A. Goldsmith |
| | ) | Magistrate Judge David R. Grand |
| Plaintiffs, | ) | |
| v. | ) | |
| GROUP RESOURCES INCORPORATED, a Georgia corporation, GR HOLDINGS, L.L.C., a Georgia limited liability company, GROUP RESOURCES ACQUISITIONS, LLC, a Georgia limited liability company, GROUP RESOURCES OF IOWA, LLC, a Georgia limited liability company, GROUP RESOURCES OF TEXAS, L.L.C., a Georgia limited liability company, GROUP RESOURCES OF JAMAICA, LLC, a Georgia limited liability company, EMPLOYEE BENEFIT CONCEPTS, INC., a Michigan corporation, WILLIAM ANDREW WILLOUGHBY, an individual, DAVID A. OBERMEYER, an individual, OBERMEYER WEALTH MANAGEMENT, LLC, SOUTHERN | ) | |

OAK DESIGN & BUILD LLC, and )
JOHN DOES 1–10, )
)
Defendants.

# FIRST AMENDED COMPLAINT

Ciena Healthcare Management, Inc. ("Ciena"), individually and as Plan Administrator for the Ciena Healthcare Management, Inc. Health and Welfare Plan (the "Plan") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 15(a) and applicable law, and in lieu of filing a response to Defendants David A. Obermeyer and Obermeyer Wealth Management, LLC's Motion to Dismiss (ECF No. 29), state for their First Amended Verified Complaint against Defendants Group Resources Incorporated ("GRI"), GR Holdings, L.L.C. ("GRHOL"), Group Resources Acquisitions, LLC ("GRA"), Group Resources of Iowa, LLC ("GRIA"), Group Resources of Texas, L.L.C. ("GRTX"), Group Resources of Jamaica, LLC ("GRJAM"), Employee Benefit Concepts, Inc. ("EBC"), William Andrew Willoughby ("Willoughby"), David A. Obermeyer ("Obermeyer"), Obermeyer Wealth Management, LLC ("OWM") and Southern Oak Design & Build LLC ("SODB") (collectively, "Defendants"), as follows[1]:

[1] On September 13, 2024 EBC, GRA and GRIA filed petitions for Chapter 11 bankruptcy in the Northern District of Georgia; and on September 16, 2024, GRI did so as well. This First Amended Verified Complaint is not intended to proceed against these four entities unless and until the stay is lifted or one or more of the bankruptcy cases are dismissed or as otherwise may be permitted by applicable law.

## Nature Of The Case

1. This is an ERISA breach of fiduciary and equitable relief case, against a Plan fiduciary claims administrator that, along with its affiliates and agents, raided and diverted millions of dollars in Plan assets to use as their own personal piggy bank. In connection with this, Defendants failed and refused to pay numerous medical, dental or other health claims of numerous Plan participants and beneficiaries, resulting in some individuals being refused treatment; some facing collections; and these or others facing denial of financing, damage to credit or other financial hardships. Only after one or more clients such as Ciena began to discover Defendants' misdeeds did Group Resources allegedly part ways with its longtime "CFO" Obermeyer on whom Willoughby blamed the entire scheme, falsely claiming they were merely "victims" of Obermeyer.[2] Then in an attempt to stave off litigation, Willoughby has provided partial information and partial payments to providers, but has refused or claimed inability to provide detail on the key accounts controlled by Defendants into which millions was transferred over the last three years, and has refused to continue to serve the Plan or other clients after October 1,

[2] Obermeyer has served Group Resources since 2002 and is still listed as "Executive Vice President & CFO" on a LinkedIn page of his (*see* https://www.linkedin.com/in/dave-obermeyer-a2387412/ (last visited September 9, 2024), and also is still listed as GRI's CFO on GRI corporate documents with the Georgia Secretary of State. *See* Exhibit G-3 hereto (Willoughby as both CEO and corporate Secretary, and Obermeyer as CFO).

2024. The Plan is moving to a fully insured product now, but has sustained major losses of Plan assets at the hands of Defendants, who have declared on September 3, 2024 that in the coming few weeks they will be down to a skeleton staff and then closing their doors. And critically, while Defendants have provided limited bank statements from a single account (held by GRI "for the benefit of" the Plan) at First Horizon Bank, Defendants have delayed and failed to provide Ciena or the Plan with sufficient detail (including actual account holders or valid "reasons" behind same) on the 30 accounts shown on statements from that account (many or all are likely First Horizon Bank accounts), into 19 of which Defendants made transfers of over $17,000,000.00 [over $4,700,000 in 2021, over $6,100,000 in 2022, over $5,800,000 in 2023 and over $1,100,000 in the first three months of 2024], despite multiple direct queries for detail, and only later, finally providing limited information that showed massive transfers were made to inappropriate accounts controlled by Defendants.

2. In addition, an analysis of the premiums paid by or on behalf of the Plan to EBC/Group Resources versus audited final cost of claims suggests EBC/Group Resources obtained from the Plan over $6,500,000 in overpayments due to inflated invoices from EBC/Group Resources, from May 2019 forward [over $1.4M in 2019–20; over $2.9M in 2020–21; over $2.3M in 2021–22; and over $230,000 in 2022–23]. With EBC/Group Resources having serviced the Plan for

over a decade, at all relevant times through Willoughby and Obermeyer, analyses of prior years, as well as 2023–24, are expected to reveal a similar pattern.

3. Ciena and the Plan bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") (along with various state law claims to the extent not preempted by ERISA) and ERISA's broad authority for federal courts to fashion relief much needed by Ciena and the Plan here, on behalf of Ciena, the Plan, and its participants and beneficiaries. To be sure, courts have power to fashion "appropriate relief" for breaches of fiduciary duty and to enjoin acts and practices that violate ERISA or the Plan and to "obtain other appropriate equitable relief" – and this case merits immediate, emergency relief – including an injunction – given the threat of dissipation of Plan assets and events surrounding EBC/GRI/Group Resources' promise made September 3, 2024 to close their doors at any moment.

**Parties**

4. Plaintiff Ciena is a corporation organized and existing under the laws of the state of Michigan with its principal place of business located in Oakland County, Michigan. Ciena is a management company that provides management services to various facilities that provide skilled nursing, rehabilitation, sub-acute and assisted living services in Michigan. Ciena established the Ciena Healthcare Management, Inc. Health and Welfare Plan (the "Plan") for the eligible employees

of its affiliated facilities, to provide medical, dental and other welfare benefits. The Plan is an employee benefit plan as defined under ERISA, 29 U.S.C. § 1002. The Plan is funded in part by contributions from Ciena's managed facilities and in part by contributions made by Ciena's managed facilities' covered employees by payroll deductions. Ciena is the plan sponsor and plan administrator of the Plan, is a named fiduciary, and is authorized to bring this action to enforce the terms of the Plan and to protect the Plan participants, beneficiaries, and assets of the Plan under ERISA, including pursuant to 29 U.S.C. § 1132(a)(2) and (3) and federal common law.

5. The Plan is a self-funded employee welfare benefit plan under ERISA, and has been around for decades in one form or another, as a benefit offered to eligible employees of Ciena and their eligible family members, *etc*. The Plan provides certain medical and dental benefits for participants and beneficiaries. *See* Exhibit A (Plan Document).

6. Defendant Group Resources Incorporated is, upon information and belief, a corporation organized and existing under the laws of the state of Georgia with its principal place of business located in Duluth, Georgia. The Resident Agent of GRI is Philip H. Weener, 5887 Glenridge Drive, #275, Atlanta, Georgia 30096.

7. Employee Benefit Concepts, Inc. is a Michigan corporation. Exhibit B (EBC LARA Profile). Willoughby is EBC's President and CEO. *See* EBC Chapter 11 Petition (Exhibit C hereto), at 30. Willoughby is also a Director of this Michigan

corporation. *See* Exhibit B (LARA Profile); *see also* Exhibit D (EBC Company Resolution and Consent). Willoughby is also the current Resident Agent of record, with a resident agent address of 28800 Orchard Lake Road, Suite 140, Farmington Hills, Michigan 48334. *See* Exhibit B (LARA Profile). EBC is alleged to be wholly owned by Group Resources Acquisitions, LLC ("GRA"). Exhibit E (Willoughby 9/17/2024 Declaration) at ¶ 4. Defendant Willoughby owns 75% of GRA and Defendant Obermeyer owns the remaining 25%. *Id.* At ¶ 2. EBC provided services to the Plan from at least 2008 to present, and years ago GRI or one of its affiliated entities acquired EBC, making the new branding: "Employee Benefit Concepts, a Group Resources® company." EBC (and later EBC/Group Resources) was engaged pursuant to the Plan and ERISA and entered into a series of Administrative Services Agreements ("ASA"s) with Ciena on behalf of the Plan. *See*, *e.g.*, Exhibit F-1 (2024 ASA); F-2 (2023 ASA); F-3 (2008 ASA). At all relevant times, Defendant Obermeyer was the chief financial officer and executive vice president of EBC; and Defendant Willoughby was its President and CEO and Director. Exhibit E, Willoughby Decl. at ¶ 4; Exhibit B (LARA Profile); D (EBC Company Resolution and Consent). Upon information and belief, EBC was administratively dissolved on or about July 15, 2021, by the State of Michigan Corporations Division of the Michigan Department of Licensing and Regulatory Affairs, for EBC's failure to file annual reports.

8. At all relevant times, Defendant David A. Obermeyer ("Obermeyer") was the Executive Vice President and Chief Financial Officer of Group Resources and its affiliated entities, including, but not limited to, EBC, a Michigan corporation, from October 2002 until his alleged termination and departure from GRI/Group Resources in or around March 2024. *See*, *e.g.*, Exhibit G-1 and G-2 (LinkedIn Profiles), and G-3 (2024 Annual Registration of GRI). On information and belief, Obermeyer has a residential address of 94911 Habersham Walk, Gainesville, Georgia, 30504.

9. Further, at all relevant times, EBC/Group Resources, with Willoughby as CEO and 75% owner of EBC and Obermeyer as its chief financial officer, executive vice president, and 25% owner of EBC, regularly transacted business within the state of Michigan with many Michigan-based clients, including, but not limited to, Plaintiffs, and several municipalities and government entities within the state of Michigan. By way of example, EBC's Chapter 11 bankruptcy petition lists the following 16 Michigan-based municipal entities and schools with which EBC/Group Resources has ongoing client services agreements:

a. City of Auburn Hills;

b. City of East Lansing;

c. City of Flat Rock;

d. City of Lapeer;

e. City of Owasso;

f. Eastpointe Community Schools;

g. Monroe Public Schools;

h. Warren Consolidated Schools;

i. Warren Education Association;

j. Warren Woods School;

k. Washtenaw Inter Sch. Dist.;

l. Wayne County Community College;

m. Wayne Westland Community Schools;

n. West Bloomfield Public Schools;

o. Wyandotte Public Schools; and

p. Ypsilanti Community Schools.

Exhibit C (EBC Chapter 11 Petition) at 16–19. These entities, in addition to Plaintiffs, are also listed as EBC's creditors in its Chapter 11 bankruptcy Petition. *Id.* at 30–32.

10. Notably, neither Willoughy nor Obermeyer were silent partners in EBC (or the rest of Group Resources). As CEO and CFO and President and Executive Vice President, Willoughby and Obermeyer oversaw and directed EBC's business relationships and transactions within the state of Michigan, including with and for numerous Michigan clients, including Ciena and the Plan. Obermeyer carried out

functions with respect to payments for Ciena and the Plan and most, if not all, of EBC's other Michigan-based clients for years. *See, e.g.*, Exhibit H, 8/16/2020 Email Regarding Release of Funds (directing the release of $4,569.53 to Warren Consolidated Schools, $9,608.51 to University of Detroit Mercy, and $8,039.15 to Washtenaw Interm School District).

11. Further, at all relevant times, and pursuant to EBC's Chapter 11 filing, EBC has maintained a leased office space in Michigan. Exhibit C (EBC Chapter 11 Petition) at 11. EBC/Group Resources at all relevant times, including as of the date of this filing, has had employees at one or more offices in Michigan.

12. Pursuant to MCL 600.705(6), this Court possesses personal jurisdiction over Defendants Obermeyer and Willoughby, as they acted at all relevant times as owners, directors, managers and/or officers of EBC, which is a Michigan corporation; and also otherwise purposefully availed themselves of the privilege of acting in the state of Michigan, served numerous clients in Michigan, had an office and employees in Michigan and caused massive harm to the Plan and its thousands of Michigan participants and beneficiaries.

13. To be sure, each Defendant purposefully availed himself or itself of the privilege of acting in Michigan or caused a consequence in Michigan. Each cause of action arises from Defendants' activities in (including causing consequences in) Michigan. And the acts of Defendants or consequences caused by Defendants have

a substantial enough connection with Michigan to make the exercise of jurisdiction over each Defendant reasonable.

14. At all relevant times, Defendant William Andrew Willoughby aka W. Andrew Willoughby aka Andy Willoughby ("Willoughby"), is and has been an officer, director or member with GRI and its affiliated entities (all Group Resources entities, including all named as Defendants in this lawsuit), and is currently the GRI President, corporate Secretary, and Chief Executive Officer. *See, e.g.*, Exh. G-3 (2024 Annual Registration of GRI). Willoughby holds the same or similar roles for the other Group Resources entities. On information and belief, Willoughby has a residential address of 3571 Johnston Road, Winston, Georgia 30187.

15. Defendant GR Holdings, L.L.C. is a Georgia limited liability company organized in 1998, of which outside general counsel Philip H. Weener is resident agent and Willoughby is a member. GRHOL's principal office address is 2675 Breckinridge Blvd, Ste 300, Duluth, GA, 30096

16. Group Resources Acquisitions, LLC is a Georgia limited liability company organized in 2014, of which Group Resources outside general counsel Eric Nathan is resident agent and Willoughby and Obermeyer are members. Defendant Willoughby owns 75% of GRA and Defendant Obermeyer owns the remaining 25%. Exhibit E, Willoughby Declaration at ¶ 2. GRA's principal office address is 2675 Breckinridge Blvd, Ste 300, Duluth, GA, 30096.

17. Group Resources of Iowa, LLC is a Georgia limited liability company organized in 2013, of which Group Resources outside general counsel Eric Nathan is resident agent and Willoughby a member. GRIA's principal office address is 2675 Breckinridge Blvd, Ste 300, Duluth, GA, 30096.

18. Group Resources of Texas, L.L.C., is a Georgia limited liability company organized in 1997, of which Group Resources outside general counsel Eric Nathan is resident agent and Willoughby a member. GRTX's principal office address is 2675 Breckinridge Blvd, Ste 300, Duluth, GA, 30096.

19. Group Resources of Jamaica, LLC is a Georgia limited liability company organized in 2018, of which Group Resources outside general counsel Eric Nathan is resident agent and Willoughby is a member. GRJAM's principal office address is 2675 Breckinridge Blvd, Ste 300, Duluth, GA, 30096.[3]

20. In 2023, Obermeyer organized Obermeyer Wealth Management, LLC via filing with the State of Georgia on June 1, 2023. OWM is a Georgia limited

---

[3] For ease of reference, and to be consistent with how the entities hold themselves out to the world, Defendants Group Resources Incorporated ("GRI"), GR Holdings, L.L.C. ("GRHOL"), Group Resources Acquisitions, LLC ("GRA"), Group Resources of Iowa, LLC ("GRIA"), Group Resources of Texas, L.L.C. ("GRTX"), Group Resources of Jamaica, LLC ("GRJAM") and Employee Benefit Concepts, Inc. ("EBC") are collectively referred to herein as "Group Resources." *See, e.g.*, https://www.groupresources.com/ and https://www.groupresources.com/Service/Medical%20and%20Dental%20Claims%20Administration/Administration.html (last visited October 23, 2024) (Exhibit I hereto).

liability company, of which Obermeyer is resident agent and organizer, and upon information and belief, a member (directly or through one or more other entities). OWM's listed principal office address was originally, upon information and belief, a formerly abandoned or unfinished commercial property in Gainesville, Georgia (2120 Chicopee Mill Road, Gainesville, GA, 30504) and is now listed as 94911 Habersham Walk, Gainesville, Georgia, 30504.[4] *See* Exhibit J-1 (LLC overview); J-2 (Annual Registration, July 17, 2024).

21. In 2018, Obermeyer formed and organized a Georgia limited liability company now known as Southern Oak Design & Build LLC ("SODB"). Its principal office is listed as 2120 Chicopee Mill Road, Gainesville, GA, 30504 (an approved Group Resources remote office location for Obermeyer), and Obermeyer is a member and the registered agent of this LLC. *See* Exhibit K.

22. Upon information and belief, OWM (via its agent and sole member, Obermeyer), SODB, Group Resources and Obermeyer stole assets and/or knowingly received stolen assets belonging to Ciena and the Plan by transferring funds from

[4] *See, e.g.*, https://www.showcase.com/2120-chicopee-mill-rd-gainesville-ga-30504/27431222/ (last visited September 9, 2024). Obermeyer at some point renovated this space at 2120 Chicopee Mill Road, and it became an approved, official remote office location for him (approved by Willoughby and others at Group Resources), to perform Obermeyer's "CFO duties" for all Group Resources entities (including EBC). From this space, Obermeyer also served his OWM and SODB entities, at a minimum. Obermeyer also held at least 206 boxes of Group Resources company and/or client files at that location, with the full knowledge and blessing of Willoughby and Group Resources.

Ciena's FBO account to one or more other accounts, usually in the name of Group Resources at first, and then directly and/or indirectly into OWM's or SODB's bank account(s) (or otherwise used Ciena or Plan assets to enrich themselves), and made payments to third parties, which caused significant harm to Ciena and the Plan and its numerous participants and beneficiaries in Michigan. Willoughby later admitted that Obermeyer improperly and unlawfully sent funds from Group Resources (after funds were taken wrongfully by Group Resources from the Plan), directly to SODB (and/or paid for items on SODB's behalf). Upon information and belief, Obermeyer did the same with respect to OWM. At all relevant times, Willoughby knew or should have known about all of this.

23. Pursuant to MCL 600.705, 600.711, 600.715, 600.735 and applicable law, this Court has personal jurisdiction over Defendants.

24. Defendants, by and through their affiliated companies, misappropriated or otherwise received and improperly took possession of, Plan assets to the detriment of Ciena and the Plan.

## **Jurisdiction and Venue**

25. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and applicable law, as this is a civil action arising under the laws of the United States for injunctive relief, other equitable relief and damages as a result of Defendants' violations of ERISA.

26. Specifically, Group Resources, Willoughby, and Obermeyer were during the relevant time ERISA fiduciaries. *See, e.g., Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012). Court have summarized: "[C]aselaw requires a focus on the actual duties and actions of the defendant when determining whether it was a fiduciary; whether the plan specifically designates defendant a fiduciary is not dispositive." *Clements v. Aetna Life Ins. Co.*, No. 11–10955, 2012 WL 5820856, at *5 (E.D. Mich. Mar. 21, 2012) (citing *Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir. 1998)). Pursuant to ERISA, a "fiduciary not only includes persons specifically named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plans management, administration, or assets." *Mich. Affiliated Healthcare Sys.*, at 549. Where an employee is required to interpret policies and make judgments regarding approval and denial of claims, such an employee is exercising discretionary authority and is considered a fiduciary under ERISA. *See Clements*, at *4.

27. At all relevant times, Group Resources, Willoughby and Obermeyer exercised discretionary control over Plan assets or maintained and exercised the authority to adjudicate and approve or deny claims (in whole or in part) and appeals, or both. This included, among other things, performing or delegating to others medical necessity determinations, experimental and investigational determinations,

and appeals, and which claims could be paid and how much and when. *See*, *e.g.*, Exhibit I (Group Resources website "Medical and Dental Claims Administration") ("When you choose Group Resources to administer your health plan . . ." and touting their personnel's "experience in claims adjudication" and "experienced claims management and administration.")[5]; Exhibit L (3/2/2020 Email re Ciena Phone Dialogue). The "Ciena Phone Dialogue" contains an email thread where employees of Group Resources, along with Defendants Willoughby and Obermeyer, exchanged instructions Willoughby approved regarding answering phone calls from providers and plan participants related to Plaintiffs. The instructions reference an "auditing" process for claims that contains multiple stages of review and an "escalation process." *See* Exh. L. *See also* Exhibit A (Plan), at Section 16 ("Benefits under this Plan shall be paid only if the Plan Administrator or the underlying insurance carrier/Claims Administrator decides, in its discretion, that a Participant or Beneficiary is entitled to them."; and "The respective various Claims Administrators shall have the responsibility and discretionary authority to process and pay claims provided under the Plan.").

28. Accordingly, as claim administrator(s) for the Plan and/or as those who controlled and/or had discretion over Plan assets, as described above and otherwise

---

[5] *Available* at https://www.groupresources.com/Service/Medical%20and%20Dental%20Claims%20Administration/Administration.html (last visited October 23, 2024).

described herein, Group Resources, Willoughby and Obermeyer were at all relevant times fiduciaries of the Plan, and this Court has original subject matter jurisdiction over Plaintiffs' ERISA claims against them pursuant to 28 U.S.C. § 1331.

29. This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367(a) and applicable law, as to all Defendants, and even as to any Defendant who may not have been an ERISA fiduciary, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

30. Venue is proper in this Court under ERISA Section 502(e)(2) [29 U.S.C. § 1132(e)(2)] and applicable law because the Plan (which is self-funded) is administered in Southfield, Michigan, many of the Plan participants and beneficiaries affected by Defendants' breaches are located in this judicial district, multiple breaches of duty occurred affecting Plan assets that had been held in this judicial district, EBC at least previously had its principal offices in this judicial district, and Group Resources has its/their "Detroit Sales and Service Office" in this judicial district, on Haggerty Road in Plymouth, Michigan.[6]

31. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) and applicable law, in that a substantial part of the events or omissions giving rise to

---

[6] *See, e.g.*, "Group Resources | Locations," *available at* https://www.groupresources.com/page-13/Locations/Locations.html (last visited October 23, 2024).

the claims asserted herein occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is or was situated in this judicial district, and because Ciena and EBC ("a Group Resources® company") are Michigan corporations that entered into an Administrative Services Agreement for the Plan (which is self-funded and administered in Southfield, Michigan), and the present or former employees of Ciena who are the Plan participants at issue (and who have been harmed by unpaid or delayed claims) were associated with Michigan locations of Ciena, and most of the medical or dental providers at issue are located in Michigan. Moreover, Defendants GRI (itself and/or via its affiliates), Group Resources, Obermeyer, and Willoughby have conducted a regular, continuous, and systematic portion of their business in this judicial district, and the events giving rise to the claims asserted in this case arose or had their effects in this judicial district.

**Background Facts**

32. Group Resources, Willoughby, and Obermeyer were Plan fiduciaries, by their conduct. To be sure, Group Resources and their officers, directors or members, including Willoughby and Obermeyer, exercised practical control over the Plan's money/assets throughout the last six years or more, though any entities formed more recently technically had a lesser duration of involvement.

33. Group Resources most recently has used one or more clearing houses to process claims – including Change Healthcare – a unit of UnitedHealth Group, to

process claims.

34. But at all relevant times, GRI and/or Group Resources has had a "for the benefit of" bank account for the Plan, most recently with First Horizon Bank, a business checking account with the account name/holder listed as: "GROUP RESOURCES INC[,] FBO [meaning, "for the benefit of"] CIENA HEALTHCARE[,] 2675 BRECKINRIDGE BLVD STE 300, DULUTH, GA, 30096-8953," as shown below, for example:

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

00001752 TFTSTRMT030124093610 05 000000000 089 E
GROUP RESOURCES INC
FBO CIENA HEALTHCARE
2675 BRECKINRIDGE BLVD STE 300
DULUTH GA 30096-8953

35. In late 2023 and early 2024, Ciena became aware of an unusual, high number of employee issues concerning medical or dental providers not being paid, or having payments delayed.

36. Ciena asked Group Resources to investigate these claims in late 2023 and early 2024, and various "explanations" were provided by Willoughby and Group Resources.

37. In the preceding and successive months, more of these issues continued to come to Ciena's attention, and the situation became dire, with the result that: (a)

even more Plan participants or beneficiaries were having issues; (b) some were being refused treatment; (c) some were facing collections; and (d) these or other Plan participants or beneficiaries were facing denial of financing, damage to credit or other financial hardships.[7]

38. Due to continued issues, Ciena personnel visited Group Resources to inspect its operations in March 2024. During this inspection trip, Willoughby and Group Resources confirmed that Ciena's Plan funds were "not where they should be."

39. On April 9, 2024, Ciena and the Plan sent a letter to Willoughby and outside general counsel for Group Resources stating that an EBC executive "may have misappropriated millions of dollars of Ciena's funds" and demanded indemnification and documents from EBC/Group Resources. *See* Exhibit M.

40. Counsel for EBC/Group Resources responded, stating that EBC would cooperate with Ciena in providing "relevant records" and that counsel for EBC/Group Resources "believe[d]" EBC/Group Resources had "already shared bank records" but not describing what accounts and not committing to indemnification for the misconduct, and instead stating: "EBC will honor its

[7] While limited, mostly older claims, have been paid by GRI via "reissued" checks over the summer of 2024, even as recently as August 28, 2024, a significant Michigan medical provider contacted Ciena about numerous unpaid claims, and is seeking action against Ciena or may refuse to serve Plan participants or beneficiaries until the balance is paid.

obligations under the various contracts . . . [including the ASA].” *See* Exhibit N.

41. On April 30, 2024, Willoughby emailed Ciena responding in part to a demand from Ciena for information concerning outstanding claims that had not been paid, and stated: “A police report has been filed, as has an insurance claim. We are awaiting the results of investigations and instructions from both Gwinnett County and our insurer.”

42. Initial analysis by or for Ciena of the bank records, at the end of April and early May 2024, revealed an astounding series of losses and transfers to the following unknown accounts:

| Account numbers - last 4 | Account numbers as appearing on bank statements |
|---|---|
| x0038 | DDA *0038 |
| x0666 | CHECKING 000020002230666 |
| x0751 | CHECKING 000000002250751 |
| x0769 | CHECKING 000000002250769 |
| x0777 | DDA *0777 |
| x0801 | DDA *0801 |
| x0918 | DDA *0918 |
| x1824 | CHECKING 000020002011824 |
| x1832 | CHECKING 000020002011832 |
| x1891 | CHECKING 000020002011891 |
| x2243 | CHECKING 000020002012243 |
| x2251 | CHECKING 000020002012251 |
| x2262 | DDA *2262 |
| x2270 | CHECKING 000000002232270 |
| x2278 | CHECKING 000020002012278 |
| x3742 | CHECKING 000020002483742 |
| x3823 | CHECKING 0000020002483823 |
| x4521 | CHECKING 000020002124521 |
| x4688 | CHECKING 000020002124688 |
| x5336 | CHECKING 000220003195336 |
| x6629 | CHECKING 000000002226629 |
| x7038 | CHECKING 000020001877038 |
| x7046 | CHECKING 000020001877046 |
| x7264 | CHECKING 000020002187264 |
| x7275 | DDA *7275 |
| x7283 | CHECKING 0000020001877283 |
| x7291 | CHECKING 000020001877291 |
| x7313 | CHECKING 000020001877313 |
| x7402 | CHECKING 000020001877402 |
| x8443 | DDA *8443 |

43. Transfers out, to at least 19 of these accounts, totaled over $17M since 2021; and millions more prior to 2021.

44. Group Resources, Willoughby and Obermeyer for years gave Ciena

lists of provider check payments via check register reports, which were inaccurate – or better said, false. Recent analysis of newly-provided bank statements from the FBO account (which statements showed checks that have cleared) compared with the hundreds of detailed check register reports that had been provided since 2021 by Group Resources, Willoughby and Obermeyer to Ciena revealed $14.1M in known claims for Plan participants or beneficiaries that had not been paid by EBC/GRI out of the FBO account, from 2021 to August 2024 (apparently, this is nearly 40% of known checks listed on these check registers that had been provided over time by Group Resources, Willoughby and Obermeyer to Ciena). Defendants are refusing to provide records sufficient to show the unpaid claims, about which they are well aware.

45. To be sure, Defendants engaged in a sophisticated scheme to defraud and steal from the Plan, and its participants and beneficiaries, and to delay and knowingly fail to pay claims so they could profit from Plan funding sent by Ciena – over which funding Defendants had discretion and which was intended by Ciena and the Plan and under ERISA for the exclusive purpose of paying claim. This scheme involved Defendants creating false check registers to give Ciena the impression thousands of claims were being paid that in fact were not, and when providers or others complained loudly enough, some checks, but far from all, ultimately were issued and paid, using a check number similar to the one listed on the fake check

registers, but a completely distinct check number; and these were often issued over a year after the original, alleged (fake) check register date that had been presented originally for that alleged payment that had never actually been issued.

46. Defendants at all relevant times either actively participated in this scheme or knew or should have known about this scheme.

47. And the promised cooperation by Willoughby and Group Resources came to a halt. On May 3, 2024, Steven Miller ("Miller") of Ciena emailed Willoughby demanding information on **the account owners** of the transfers (of over $17M since 2021), among other things:

> "As we have been reviewing the bank records that you forwarded to us, we have found a number of accounts to which money was transferred, but we do not know who received or sent the money. Please provide us with the name of the owner of each of the accounts listed in the attached spreadsheet."
>
> [attaching an Excel with the above list of 30 bank accounts, and asking for the information by the end of the day May 6, 2024].

48. On May 6, 2024, Willoughby responded with a mere four files of "deposit summaries" prepared by Group Resources for deposits ***into*** the Ciena "FBO bank account" held by Defendants; but Willoughby shut down any inquiry as to the other 30 accounts, and **refused** to provide the name of the owner of each of the 30 accounts, but admitting malfeasance by one or more Defendants and stating:

> "As you are aware, we know there has been misappropriation associated with this account and we have filed a claim with our insurance carrier and are awaiting further instructions regarding prosecution. Until we get further in that investigation, there is no additional information I can provide you relating

to this account."

49. On May 9, 2024, Miller responded to Willoughby: "We are disappointed by your refusal to provide us with the information that we requested and ask that you reconsider. Also, we would like to know what law enforcement agency or agencies that you are currently working with on this issue. Please provide that information as soon as possible." *See* Exhibit O (email chain). Willoughby failed to do so.

50. On July 24, 2024, Willoughby updated Ciena via email with limited provider payment information: "As of Monday, July 22, 2024, we have reissued 1,196 checks, totaling $584,998.08, with original check dates prior to 1/4/24. We will continue to work through this reissue process as claims that were not issued are brought to light by either members, providers, Cynthia or yourself as well as those we are able to determine were unissued in the course of our reconciliations."

51. On July 29, 2024, Defendants issued to their clients a video and FAQ document, emailed by Willoughby, "concerning what appears to be significant criminal activity targeting Group Resources financials by a now former employee…." The FAQ document states: "Approximately three months ago a trusted source alerted us to the possibility of an executive team member committing criminal financial acts and we began an investigation. The results of that investigation led to immediate termination and kicked off a comprehensive response

strategy involving our legal teams, CPAs and insurance carriers." *See* Exhibit P (FAQ document). In the one-minute, 38-second video, Willoughby states in part: "[O]ur company has been the victim of criminal acts, committed by a member of our executive team" and promising "regular updates and additional resources in the weeks ahead" and asking clients: "in the meantime, I ask for your patience and understanding."




52. The unnamed "member of the executive team" on which Willoughby, GRI and EBC have sought to "pin" everything, is longtime CFO Obermeyer:



53. On August 18, 2024, Willoughby emailed Ciena (and presumably other clients) stating: "We have been the victims of financial crimes, and we acted swiftly, including terminating the individual responsible. We are actively collaborating with legal and insurance teams, as well as law enforcement, to pursue recovery. Our primary focus has been supporting our employees and clients… The impact of this situation is significant, and as a result, Group Resources will not continue as a full-service third-party administrator beyond November 1, 2024. I encourage everyone to avoid rumors and speculation. Instead, if you have concerns or questions, please reach out to me directly. I'm more than willing to answer your questions and provide any information I can."

54. On August 19, 2024, Ciena sent a letter to Willoughby terminating the ASA between Ciena and EBC/Group Resources effective 11:59 p.m. on September 30, 2024.

55. On September 3, 2024, Miller had a conversation with Willoughby in which Willoughby indicated that by October 1, 2024, Group Resources would cease to operate beyond a mere skeleton staff; and before November 1, 2024, even less than that.

56. On September 4, 2024, Miller emailed Willoughby with another demand for information and records on the 30 accounts, asking for the information by close of business on Friday, September 6; and on September 5, 2024, Willoughby

finally agreed to begin to cooperate. *See* Exhibits Q, R (Sept. 4 and 5 email chains).

57. But only partial and limited information was received, on September 5, 2024. Partial information reveals among the 30 accounts, involvement of accounts identified by Willoughby as "Group Resources of Jamaica," some iteration of "ACQ-GR," "Group Resources Operating Account," "Acquisitions LLC GR Check Clearing," "ACQ - GR Select," "ACQ-Overhead," and other accounts, including two Willoughby claimed he could not identify, and over a dozen that were "claims accounts for other clients [of Group Resources]."

58. Plaintiffs brought this action on September 10, 2024, and sought, and was granted, a Temporary Restraining Order ("TRO") and expedited discovery against all Defendants. (ECF No.1, Verified Complaint; ECF No. 4, Ex Parte Motion for Temporary Restraining Order, Preliminary Injunction and Expedited Discovery; ECF No. 6, Temporary Restraining Order an Order Granting Expedited Discovery) This Court set a hearing on Plaintiffs' Motion for Preliminary Injunction for September 16, 2024. (ECF No. 6, Temporary Restraining Order an Order Granting Expedited Discovery).

59. On September 13, 2024, Defendants EBC, GRA, and GRIA filed Chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Northern District of Georgia. Defendant GRI later filed Chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Northern District of Georgia on September

16, 2024. This action then became subject to an automatic stay with respect to Defendants EBC, GRA, GRIA, and GRI (the "Bankrupt Defendants") only.

60. After the conclusion of the hearing on Plaintiffs' Motion for a Preliminary Injunction, at which none of the Defendants appeared despite receiving actual notice, this Court entered a Preliminary Injunction and Order Granting Expedited Discovery (ECF No. 12) ("Order").

61. Pursuant to the Order, all Defendants, except for the Bankrupt Defendants, were required to comply with Plaintiffs' discovery requests and produce documents responsive to Plaintiffs' requests for production within 3 business days. (ECF No. 234, PageID.234)

62. Among the documents produced by Defendant Willoughby were documents showing that Defendant Willoughby was likely aware of Defendant Obermeyer's grave embezzlement and, at least, neglected to monitor his actions or chose to turn a blind eye, if not participated in the embezzlement himself.

63. By way of example, one of the documents produced by Defendant Willoughby is a bank statement for a bank account number ending in 5259 owned by OWM (the "OWM Account"). Exhibit S (OWM June 2023 First Horizon Bank Statement). On January 23, 2024, Obermeyer forwarded an email to Willoughby listing several accounts that were in overdraft, including the OWM account. Exhibit T (Email re Transfers) (including account ending in 5259). Thus, at a minimum,

Willoughby knew that Obermeyer and his company, OWM, had a bank account with First Horizon Bank unrelated to Group Resources which he used to funnel funds out of Group Resources' accounts and Ciena's FBO account.

64. In addition, initial investigation has revealed thousands of alleged checks for provider or member payments, that Defendants falsely represented to Ciena and the Plan as having been issued and paid, were in fact not paid. For a three-year period from early 2021 to early 2024, for example, approximately 68,000 checks were allegedly written to pay Plan claims, but only 38% or so actually hit the bank and cleared the bank. While some later payments may have been made, the gap is significant, and Defendants have failed and refused despite numerous queries, to provide true and meaningful information or records to show all claims in fact received by them, against all check actually paid out.

65. And Ciena and the Plan are still missing $20,000,000 or more that was improperly transferred by Defendants out of the Plan FBO account to other bank accounts controlled by Defendants.

66. In light of the above and in light of the imminent closure of Group Resources, and the admitted criminal conduct by a 22-year executive of Group Resources and the transfers of $17M in Plan assets to unknown accounts just since 2021, the threat for further dissipation or Plan loss is real and cannot be undone or held against further losses without Court intervention.

67. Unless Defendants are immediately and fully restrained and ordered to return all Plan funds within their possession, custody or control, and all records surrounding same under their possession, custody or control, and barred from further dissipation, Ciena and the Plan face an imminent, irreparable and extensive threat to business and Plan assets. Moreover, Defendants should be required to comply with additional remedies and indemnify the Plan and Ciena against any peripheral or resulting claims by other entities.

## Causes of Action

### COUNT I –
### BREACHES OF FIDUCIARY DUTY
### (29 U.S.C. § 1132(a)(2))
### (Group Resources, Willoughby, and Obermeyer)

68. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

69. By reason of their exercise of authority and control over the Plan assets and processing, adjudicating and paying claims and handling appeals, pursuant to the ASA and the Plan, Group Resources, Willoughby, and Obermeyer were at all relevant times fiduciaries of the Plan within the meaning of ERISA, 29 U.S.C. § 1001, et seq. *See*, *e.g.*, Exhibit A (Plan), at Section 16 ("The respective various Claims Administrators shall have the responsibility and discretionary authority to process and pay claims provided under the Plan.").

70. Group Resources, along with its officers and agents, Obermeyer and

Willoughby, and affiliated entities, performed fiduciary duties under the ASA and the Plan using a DBA or trade name of "Employee Benefit Concepts a Group Resources® company" which duties included the management, movement, deposit, and expenditure of Plan assets.

71. Among other things, Group Resources, Willoughby, and Obermeyer processed, adjudicated and paid claims under the Plan and otherwise exercised discretion over the payment of claims and the management of Plan assets.

72. As set forth above, in connection with Group Resources', Willoughby's, and Obermeyer's performance of duties under the ASA, Defendants misappropriated, misused, diverted, mismanaged, and otherwise absconded with Plan assets and failed to remedy same.

73. Defendants' actions as set forth herein, including, but not limited to, the misappropriation and diversion of Plan assets to their personal use and/or for the benefit of Defendants or their affiliates, constituted breaches of Group Resources', Willoughby's, and Obermeyer's fiduciary duties under ERISA.

74. As a result of Group Resources's failure to pay medical and prescription benefits, the participants in the Plan have been denied medical benefit coverage and face impairment of their credit and the threat of denial of medical treatment in the future. As such, there is risk of immediate and irreparable injury, loss or damage to the Plan and to Plan participants.

75. Group Resources, Willoughby, and Obermeyer, in whole or in part, breached fiduciary duties under ERISA by, among other things: (1) knowingly participating in, or knowingly undertaking to conceal, acts or omissions of other Defendants, knowing such acts or omissions were a breach; (2) by their failure to comply with section 1104(a)(1) of the ERISA title in the administration of their specific responsibilities which give rise to their status as a fiduciary, thereby enabling other Defendants to commit a breach; and/or (3) having knowledge of breaches by other Defendants, without making reasonable efforts under the circumstances to remedy the breaches.

76. Moreover, upon information and belief, Group Resources, Willoughby, and Obermeyer breached ERISA by maintaining the indicia of ownership of certain Plan assets outside the jurisdiction of the district courts of the United States. *See*, *e.g.*, 29 U.S.C. § 1104(b).

77. Group Resources's, Willoughby's, and Obermeyer's conduct constitutes breaches of fiduciary duties under ERISA, 29 U.S.C. §§ 1104, 1105 and 1109 and otherwise, and entitles Plaintiffs to the relief set forth in or available under 29 U.S.C. §§ 1132(a)(2) and (a)(3).

78. Plaintiffs are entitled to injunctive relief, including a temporary restraining order, enjoining Defendants, along with their employees, agents, and representatives, from withdrawing, transferring, moving or converting any funds

from any accounts associated with the Plan or ever receiving Plan funds, whether via internal transfer or otherwise.

79. Plaintiffs are also entitled to an accounting, and an order requiring Defendants, along with their employees, agents, and representatives, to turn over all Plan assets, along with all documents and records sufficient to show the status of all presently unpaid claims submitted under the Plan.

**COUNT II –**
**BREACH OF FIDUCIARY DUTY AND OTHER RELIEF**
**(29 U.S.C. § 1132(a)(3))**
**(Group Resources, Willoughby, and Obermeyer)**

80. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

81. Group Resources, Willoughby, and Obermeyer, by and through their officers, employees, and agents, were fiduciaries of the Plan within the meaning of ERISA.

82. By reason of their positions within or associations with the various Group Resources entities, and their exercise of authority, discretion and control over Plan assets, Group Resources, Willoughby, and Obermeyer were fiduciaries of the Plan within the meaning of ERISA.

83. As a result of Group Resources's failure to pay medical and prescription benefits, the participants in the Plan have been denied medical benefit coverage and face impairment of their credit and the threat of denial of medical treatment in the

future. As such, there is risk of immediate and irreparable injury, loss or damage.

84. Group Resources's, Willoughby's, and Obermeyer's conduct constitutes a breach of fiduciary duty under ERISA, 29 U.S.C. § 1109, and entitles Plaintiffs to the relief set forth in 29 U.S.C. § 1132(a)(3).

85. Plaintiffs are entitled to injunctive relief, including a temporary restraining order, enjoining Defendants from withdrawing, transferring or moving any funds from any FBO accounts and any other accounts that received transfers from the FBO accounts and further enjoining Defendants to turn over all Plan assets and Plan documents and reports that relate to the status of Plan claims, and ordering Defendants to assist as needed with the orderly processing of all remaining claims for all dates of service through September 30, 2024.

86. In addition, the Court should order specific performance of the reimbursement or return to the Plan (or Ciena) of all identifiable funds improperly transferred from the Plan account(s) controlled by Defendants.

87. Due to Defendants' refusal to provide information about the First Horizon Bank Accounts, and any other accounts controlled at any time by Defendants that contain or contained Plan assets, which requests have been denied or delayed, Plaintiffs are entitled to an equitable order of accounting and such other relief as maybe just and equitable.

88. The Court should appoint a special master to collect information and

quantify any harm to Plan participants or beneficiaries over time, including as to unpaid claims, in any way caused by Defendants due to their breaches and other misdeeds, and require Defendants to compensate or make whole, via surcharge or other similar remedy, the Plaintiffs or the appropriate Plan participants or beneficiaries for same.

89. The Court should order Defendants to indemnify Plaintiffs against any future claims or losses related to Defendants' misconduct.

90. The Court should also order other appropriate equitable relief as allowable under controlling law, including, but not limited to, equitable restitution, surcharge, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust, and any and all other equitable remedies available under ERISA and applicable law.

**COUNT III –**
**BREACHES OF FIDUCIARY DUTIES**
**(Group Resources, Willoughby, and Obermeyer)**

91. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

92. Group Resources, Willoughby, and Obermeyer failed to perform their duties in a reasonably prudent fashion and the Plan was damaged as a result of their conduct.

93. Group Resources, Willoughby, and Obermeyer have breached their

fiduciary duties toward the Plan and its participants in violation of 29 U.S.C. §1109 and §1104(a).

94. Group Resources, Willoughby, and Obermeyer breached their fiduciary duties by, among other things, failing to adequately monitor their own officers, directors, members or agents such as Willoughby and Obermeyer, and other individuals or entities, if any, to whom discretion, management, authority or control of Plan claims or Plan assets was delegated.

95. Group Resources, Willoughby, and Obermeyer knew or should have known that the other fiduciaries were stealing Plan assets or otherwise misappropriating Plan assets for their own gain or other improper or criminal purposes.

96. Group Resources, Willoughby, and Obermeyer failed to monitor those given discretion, management, authority or control of Plan claims or Plan assets, and failed to take action to protect the Plan participants and beneficiaries from the consequences of their own and the other fiduciaries' failures.

97. Plaintiffs have been damaged in an amount to be determined at trial by Group Resources's, Willoughby's, and Obermeyer's breaches of fiduciary duty.

**COUNT IV –**
**BREACH OF CONTRACT**
**(Group Resources only)**

98. Plaintiffs reallege and incorporate by reference all preceding

paragraphs as if fully set forth herein.

99. On an annual basis during the period from approximately 2008 to 2024, Ciena and Group Resources, or their predecessor entities, entered into an Administrative Services Agreement (the "ASA" or collectively, the "ASAs") pursuant to which EBC and later Group Resources agreed to serve as Administrative Services Agent for the Plan and provide administrative services for the Plan and to Plan participants and beneficiaries including, but not limited to, to act as the claims administrator and to pay medical and prescription claims for Plan participants, as more fully set forth in the ASA(s) and the Plan documents.

100. EBC and other Defendants within Group Resources have materially breached the terms of the ASA(s) by diverting for their own benefit monies intended to pay claims, overcharging Plaintiffs' premiums, failing properly to administer and pay benefit claims, and failing to indemnify Plaintiffs.

101. As a direct consequence of EBC and other Defendants within Group Resources's breaches of contract, Ciena and the Plan have been exposed to potential liability and claims arising from the Plan and the failure to pay claims.

102. As a direct result of EBC and other Defendants within Group Resources's breaches of contract, Plaintiffs have been damaged in an amount to be determined at trial.

103. Plaintiffs are entitled to an award of attorneys' fees, expenses and costs

and other disbursements or liabilities, under the ASA(s), including Section I, ¶6. *See*, *e.g.*, Exhibit B-1 hereto, at page 3.

**COUNT V –**
**CONVERSION**
**(STATUTORY – MICH. COMP LAWS ANN § 600.2919(A) –**
**AND COMMON LAW CONVERSION)**
**(All Defendants)**

104. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

105. The Plan assets in the form of contributions from Ciena and from Ciena's covered employees paid by payroll deduction and delivered to Group Resources were delivered and earmarked for the specific intended purpose of being used to pay claims in accordance with the Plan.

106. Defendants knew at the time they accepted contributions from Ciena and covered employees the funds were to be used exclusively for their intended purpose, namely to pay claims in accordance with the Plan.

107. Instead of holding the contributed funds and other Plan assets in trust or otherwise for the Plan participants and beneficiaries, Defendants intentionally and wrongfully converted those monies to their own use, purpose and benefit and to the detriment of Plaintiffs.

108. Pursuant to Michigan statute, Mich. Comp. Laws Ann. § 600.2919a, Plaintiffs have suffered damages in an amount as will be proven at trial, including,

but not limited to, treble damages equal to three times the actual amount of damages sustained by Ciena, plus costs and reasonable attorneys' fees based on Defendants' conversion of Plan assets.

109. Upon information and belief, Defendants wrongfully asserted control over and obtained Plaintiffs' funds.

110. Such conduct was willful and knowing.

111. Upon information and belief, such conduct was done for Defendants' own use and possibly for the use of their affiliates and/or others.

112. Plaintiffs have been damaged by this conduct, and are entitled to an award of actual damages and treble damages, plus their attorney fees and costs.

113. Preliminary and permanent injunctive relief is required for the return of all available funds converted by Defendants, and to prevent further misuse or dissipation of Plan assets, and no adequate remedy exists at law for complete relief absent such injunctive relief.

**COUNT VI –**
**ACCOUNTING**
**(All Defendants)**

114. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

115. Due to the control exerted by Group Resources, Willoughby, Obermeyer, and the other Defendants over the First Horizon Bank Accounts, and

any yet-to-be-discovered additional bank or other depository accounts, it is impossible for Plaintiffs to ascertain the true state of affairs of the monies deposited into or transferred through the First Horizon Bank Accounts and the amount of monies and Plan assets that have been diverted from paying Plan participant claims.

116. Due to Defendants' refusal to provide information about the First Horizon Bank Accounts, and any other accounts that contain or contained Plan assets, which requests have been denied or delayed, Plaintiffs pray for entry of an equitable order of accounting and such other relief as maybe just and equitable.

**COUNT VII –**
**AIDING AND ABETTING**
**(All Defendants)**

117. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

118. Defendants' actions independently establish the wrongs complained of herein.

119. Upon information and belief, each Defendant knew of the wrongs committed by the other Defendant.

120. Upon information and belief, each Defendant provided substantial assistance to the other Defendant to effect the wrongs committed by each of the Defendants.

121. Upon information and belief, Defendants acted together, in concert, or

at the direction of each other, to wrong Ciena and the Plan, including the Plan's participants and beneficiaries.

122. Upon information and belief, Defendants knowingly aided and abetted one another in the misconduct and unlawful conduct outlined above.

123. As such, Defendants are jointly and severally responsible for each and every wrong committed.

124. Plaintiff Ciena has been damaged by this conduct, and is entitled to an award of actual damages and treble damages, plus its attorney fees and costs.

**COUNT VIII –**
**CIVIL CONSPIRACY**
**(All Defendants)**

125. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

126. Upon information and belief, Defendants have been, and are, engaged in a concerted action to divert and use Plan assets for their own personal use and/or for the benefit of Defendants or their affiliates in violation and breach of the ASA and fiduciary duties owed to Plaintiff under ERISA and federal common law, thereby causing damage to Plaintiffs.

127. Plaintiffs have no adequate remedy at law for Defendants' conspiracy because the damages Plaintiffs have suffered and will continue to suffer in connection with the above loss of Plan assets and failure to manage and pay medical

and dental claims of Plan participants and beneficiaries are incapable of exact proof.

128. Defendants, unless restrained, will continue to conspire to damage Ciena and the Plan and its participants and beneficiaries through the misappropriation and theft of Plan assets and other misconduct.

129. Accordingly, a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants from continuing to conspire, is needed to provide Plaintiffs meaningful relief.

130. Due to the misappropriation and theft of Plan assets and other breaches of contractual, ERISA, and other duties, including fiduciary duties owed to the Plan and Plan participants and beneficiaries, and due to other unlawful conduct Defendants have conspired to commit, Plaintiffs have suffered and continues to suffer damages.

**COUNT IX –**
**VOIDABLE TRANSACTIONS**
**MICH. COMP LAWS ANN § 566.34**
**(Michigan Uniform Voidable Transactions Act)**
**(All Defendants)**

131. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

132. Defendants or their agents or affiliates made transfers or incurred obligations that are voidable as to Plaintiffs.

133. Defendants or their agents or affiliates made the transfers or incurred

the obligations either:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Defendants or their agents or affiliates did either of the following:

(i) Were engaged or were about to engage in a business or a transaction for which the remaining assets of Defendants or their agents or affiliates were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that the Defendants or their agents or affiliates would incur, debts beyond the Defendants' or their agents' or affiliates' ability to pay as such debts became due.

134. Such transfers or incurred obligations as described above and herein are voidable as to Plaintiffs.

**RELIEF REQUESTED**

Ciena, on its own behalf and as Plan Administrator of and for the benefit of the Plan and the underlying Plan participants and beneficiaries, and the Plan, hereby pray for the following relief:

(a) Entry of a temporary restraining order, preliminary and permanent

injunction enjoining all Defendants, and their present and former officers, employees, representatives, and agents, from withdrawing, transferring or moving any funds from any FBO accounts and any other accounts that received transfers from the FBO accounts and further enjoining Defendants to turn over all Plan assets and Plan documents and reports that relate to the status of Plan claims, and ordering Defendants to assist as needed with the orderly processing of all remaining claims for all dates of service through September 30, 2024;

(b) The Court should order specific performance of the reimbursement or return to the Plan (or Ciena) of all identifiable funds improperly transferred from the Plan account(s) controlled by Defendants;

(c) The Court should appoint a special master to collect information and quantify any harm to Plan participants or beneficiaries over time, in any way caused by Defendants due to their breaches and other misdeeds, and require Defendants to compensate or make whole, via surcharge or other similar remedy, the Plaintiffs or the appropriate Plan participants or beneficiaries for same;

(d) The Court should order Defendants to indemnify Plaintiffs against any future claims or losses related to Defendants' misconduct;

(e) The Court should order Defendants to assign or otherwise ensure any funds or streams of payments received from insurance or other sources, relating to this matter or to the underlying conduct of Defendants with respect to the Plan

(including, but not limited to, claims or charges against Obermeyer or others or restitution or repayment received), are maintained for the payment of Plan claims;

(f) Entry of an order enforcing Plaintiffs' rights under the Plan and ERISA by ordering Defendants to turn over to Plaintiffs all assets of the Plan and all documents related to the Plan or its present or former assets, including banking records relating to any transfer, deposit, or distribution of any Plan assets or funds, whether in any of the First Horizon Bank Accounts or elsewhere, for the period of 2018 forward, and all financial records, including those relating to or recording the processing and status of payment of claims for Plan participants;

(g) Entry of a temporary restraining order, preliminary and permanent injunction preventing Defendants from further violating the terms of the Plan and ERISA;

(h) Entry of a Judgment awarding Plaintiffs compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, including treble damages for Defendants' conversion of Plan assets, plus prejudgment interest;

(i) Entry of an award against Defendants, jointly and severally, for Plaintiffs' attorneys' fees, expenses and costs and other disbursements arising from this action, as required or permitted by ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or the ASAs, and applicable law;

(j) Other appropriate equitable relief as allowable under controlling law,

including, but not limited to, equitable restitution, surcharge, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust, and any and all other equitable remedies available under ERISA and applicable law;

(k) Voiding certain transfers, or obligations incurred, by Defendants; and

(l) Such other and further relief as the Court may deem just.

Respectfully submitted,

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
David W. Centner (P43071)
Magy E. Shenouda (P85576)
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI 48226
(313) 309-4269/ (313) 965-8300
pwilhelm@clarkhill.com
dcentner@clarkhill.com
mshenouda@clarkhill.com
*Attorneys for Plaintiffs*

October 23, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

s/ Paul A. Wilhelm

Paul A. Wilhelm (P69163)
David W. Centner (P43071)
Magy E. Shenouda (P85576)
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI 48226
(313) 309-4269/ (313) 965-8300
pwilhelm@clarkhill.com
dcentner@clarkhill.com
mshenouda@clarkhill.com
*Attorneys for Plaintiffs*

Date: October 23, 2024