UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| CIENA HEALTHCARE MANAGEMENT, INC., *et al.*, | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-12362 -MAG-DRG |
| v. | ) | Judge Mark A. Goldsmith<br>Magistrate Judge David R. Grand |
| GROUP RESOURCES INCORPORATED, *et al.*, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT W. ANDREW WILLOUGHBY'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ..... ii

STATEMENT OF ISSUES PRESENTED ..... viii

INTRODUCTION ..... 1

PROCEDURAL BACKGROUND ..... 3

ALLEGATIONS OF THE COMPLAINT AND ADDITIONAL FACTS THE COURT MAY CONSIDER ..... 4

THE LEGAL STANDARD ..... 6
- Standard For Motion Under Rule 12(b)(6) ..... 6
- Standard Regarding Fifth Amendment ..... 7
- Standard For Motion Under Rule 12(b)(2) ..... 8

ARGUMENT ..... 10
- A. The Complaint States a Claim as to All Counts that are Against Willoughby, Requiring Denial of the Motion on 12(b)(6) Grounds ..... 10
  - 1. Breaches Of Fiduciary Duty Pursuant to ERISA Section 502(a)(2) and (a)(3) (Counts I, II and III) ..... 10
  - 2. Conversion (Count V) ..... 14
  - 3. Aiding And Abetting, And Civil Conspiracy (Counts VII and VIII) ..... 15
- B. Resolving All Factual Disputes In Plaintiffs' Favor, Plaintiffs Make A Prima Facie Showing Of Personal Jurisdiction As To Willoughby. ..... 16
  - 1. ERISA Has Nationwide Reach, Covering Willoughby ..... 16
  - 2. Michigan's Long-Arm Statue Reaches Willoughby In At Least Three Separate Ways, Each Of Which Is Sufficient For Michigan Jurisdiction Over Him ..... 17
  - 3. Jurisdiction Over Willoughby Easily Satisfies Due Process. ..... 21
    - i. Purposeful Availment ..... 21
    - ii. Relation To Forum State ..... 22
    - iii. Reasonableness of Exercising Jurisdiction ..... 24

CONCLUSION ..... 25

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Columbia Cos. Ins. Co.*,
486 N.W.2d 351 (Mich. Ct. App. 1992)....................15

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
503 F.3d 544 (6th Cir. 2007)....................23

*Albrecht v. Treon*,
617 F.3d 890 (6th Cir. 2010)....................6

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016)....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008)....................7

*Baxter v. Palmigiano*,
425 U.S. 308 (1976)....................8

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield*,
97 F.3d 822 (5th Cir.1996)....................17

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
768 F.3d 499 (6th Cir. 2014)....................23, 24

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002)....................23

*Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*,
212 F.3d 1031 (7th Cir. 2000)....................17

*Bradley v. Smith*,
No. 22–11457, 2023 WL 6302999 (E.D. Mich. Sept. 27, 2023)....................22, 24, 25

*Cholewa v. United States*,
581 F. Supp. 3d 871 (E.D. Mich. 2022) ........................................................8, 13

*Clements v. Aetna Life Ins. Co.*,
No. 11–10955, 2012 WL5820856 at*4 (E.D. Mich., March 21, 2012) ..............................................................................................13

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) ...................................................................9, 10, 22

*David P. Coldesina, D.D.S. v. Est. of Simper*,
407 F.3d 1126 (10th Cir. 2005) .......................................................................11

*Echelon Homes, LLC v. Carter Lumber Co.*,
694 N.W.2d 544 (Mich. 2005)..........................................................................15

*El Camino Res., LTD v. Huntington Nat. Bank*,
722 F. Supp. 2d 875 (W.D. Mich. 2010) ..........................................................16

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*,
545 F.3d 357 (6th Cir. 2008) ..............................................................................9

*F.T.C. v. Vocational Guides, Inc.*,
No. 01–0170, 2009 WL 943486 (M.D. Tenn. Apr. 6, 2009) ...............................8

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)...............................................................................21, 23

*Guardsmark, Inc. v. BlueCross and BlueShield of Tennessee*,
169 F.Supp.2d 794 (W.D. Tenn., 2001) ............................................................13

*Guyan Int’l, Inc. v. Pro. Benefits Adm’rs, Inc.*,
689 F.3d 793 (6th Cir. 2012) .......................................................................11, 14

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*,
751 F.3d 740 (6th Cir. 2014) ..............................................................................11

*Iron Workers Dist. Council of Southern Ohio & Vicinity Benefit Tr., v. Matheny & Sons Gen. Contracting, LLC*,
No. 21–81, 2021 WL 4132315 at*2 (S.D. Ohio, Sep. 10, 2021) .......................17

*Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*,
352 F.Supp.2d 794 (E.D. Mich. 2004) (overruled in part on other grounds) ....................11

*IUE AFL–CIO Pension Fund v. Herrmann*,
9 F.3d 1049 (2d Cir.1993) ....................17

*Lefkowitz v. Turley*,
414 U.S. 70 (1973)....................7

*Lexon Ins. Co. v. Devinshire Land Dev., LLC*,
573 F. App'x 427 (6th Cir. 2014) ....................9

*Ley v. Visteon Corp.*,
543 F.3d 801 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)....................7

*Lyngaas v. Ag*,
992 F.3d 412 (6th Cir. 2021) ....................23

*MAG IAS Holdings, Inc. v. Schmuckle*,
854 F.3d 894 (6th Cir. 2017) ....................21, 22, 23

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)....................10

*Medical Mut. of Ohio v. deSoto*,
245 F.3d 561 (6th Cir. 2001) ....................17

*Miller v. AXA Winterthur Ins. Co.*,
694 F.3d 675 (6th Cir. 2012) ....................9

*Nedschroef Detroit Corp. v. Bemas Enters LLC*,
106 F. Supp. 3d. 874 (E.D. Mich. 2015) ....................15

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495 (6th Cir. 2003) ....................7

*Parker v. Bain*,
68 F.3d 1131 (9th Cir. 1995) ....................11

*Rondigo, L.L.C. v. Twp. of Richmond*,
641 F.3d 673 (6th Cir. 2011) ....................................................................7

*Rosenberg v. Rosenberg Bros. Special Account*,
351 N.W.2d 563 (Mich. Ct. App. 1984)...........................................................16

*S.E.C. v. Smart*,
678 F.3d 850 (10th Cir. 2012) ....................................................................8

*Schneider v. Hardesty*,
669 F.3d 693 (6th Cir. 2012) ....................................................................9

*Sentinel Tr. Co. v. Namer*,
No. 98–5183, 1998 WL887287, at*3 (6th Cir. Dec. 9, 1998)..............................8

*Serras v. First Tenn. Bank Nat'l Ass'n*,
875 F.2d 1212 (6th Cir. 1989) ..............................................................9, 19, 25

*SFS Check, LLC v. First Bank of Delaware*,
774 F.3d 351 (6th Cir. 2014) ....................................................................23

*Sifers v. Horen*,
385 Mich. 195, 188 N.W.2d 623 (1971).........................................................19

*Smith v. Provident Bank*,
170 F.3d 609 (6th Cir. 1999) ....................................................................10

*Srein v. Frankford Tr. Co.*,
323 F.3d 214 (3d Cir. 2003) ....................................................................10

*Sullivan v. LG Chem, Ltd.*,
79 F.4th 651 (6th Cir. 2023) ..............................................................18, 20

*Trustees of Iron Workers' Loc. No. 25 Pension Fund v. Mun. & Indus. Storage, Inc.*,
No. 10–12502, 2011 WL 1515047 (E.D. Mich. Mar. 24, 2011)........................12

*United States v. $148,840 in U.S. Currency*,
521 F.3d 1268 (10th Cir. 2008) ....................................................................8

*Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*,
No. 19–508, 2021 WL 10428708 (E.D. Tenn. Apr. 28, 2021)...........................23

*Weiner v. Klais & Co.*,
108 F.3d 86 (6th Cir. 1997) ....................................................................7

**Statutes**

29 U.S.C. § 1002(21)(A)...........................................................10, 13

29 U.S.C. § 1104(a)(1)..................................................................14

29 U.S.C. § 1106(b)(1 ..................................................................14

29 U.S.C. § 1109(a) ......................................................................14

29 U.S.C. § 1132(e)(2)..................................................................17

29 U.S.C. § 1451(d)'s ...................................................................17

M.C.L. § 566.34 ..........................................................................15

M.C.L. § 600.705 .........................................................................18

M.C.L. § 600.705(2) .....................................................................19

M.C.L. § 600.705(3) .....................................................................20

M.C.L. § 600.705(6) .....................................................................20

M.C.L. § 600.715(2) .....................................................................20

M.C.L. § 600.2919a ......................................................................15

**Rules**

E.D. Mich. LR 7.1 ..........................................................................4

E.D. Mich. LR 7.1(a)(1)...................................................................4

Fed. R. Civ. P. 12(b)(2).................................................................8, 9

Fed. R. Civ. P. 12(b)(6)....................................................................6

**Other Authorities**

State of Michigan, Department of Licensing and Regulatory Affairs; *available at* https://cofs.lara.state.mi.us/SearchApi/Search/Search# (last visited Nov. 23, 2024)....................................................................20

## STATEMENT OF ISSUES PRESENTED

Should the Motion be denied as to 12(b)(6) (failure to state a claim as to Willoughby) where Willoughby was the top officer of Employee Benefit Concepts, Inc. ("EBC") and all Group Resources entities, approved and oversaw strategies and work for adjudicating claims and appeals, was aware of the fake check registers and resulting long delays on claims, exercised discretionary authority, control or responsibility to adjudicate (and in some cases deceptively withheld instruction to pay) medical, vision, and dental benefit claims and appeals under the Plan, and/or indisputably exercised authority or control respecting management or disposition of Plan assets – thus making Willoughby a proper Defendant under Counts I, II and III; and where Plaintiffs have sufficiently alleged claims against Willoughby under Counts V, VI, VII, VIII and IX?

**Ciena and the Plan answer:** **Yes.**

**Willoughby presumably answers:** **No.**

**This Court should answer:** **Yes.**

Should the Motion be denied as to Rule 12(b)(2) (personal jurisdiction as to Willoughby) where ERISA confers nationwide jurisdiction and the case was filed where the Plan is administered in Southeast Michigan? And alternatively, where Plaintiffs make at least a prima facie showing that Willoughby at all relevant times has been a top officer and agent of a Michigan corporate defendant (EBC), traveled to Michigan a dozen times to meet with Ciena, had numerous and significant contacts with Michigan, including with Ciena and the Plan for over a decade leading up to this Complaint, and all of the claims of the Complaint and all harms alleged arise from or are related to those contacts and his actions or inactions with respect to the torts alleged; and where by his affirmative acts and/or failure to monitor others breached numerous duties and caused injuries in Michigan due to his conduct, and where the exercise of jurisdiction over Willoughby is reasonable?

**Ciena and the Plan answer:** **Yes.**

**Willoughby presumably answers:** **No.**

**This Court should answer:** **Yes.**

## INTRODUCTION

Willoughby is on the run. Rather than answer the First Amended Complaint ("Complaint") (ECF No. 40), he is now invoking the Fifth Amendment to questions about the theft of Plan assets and the failure to pay Plan claims, and is trying to run from this Court's authority and avoid compliance with the Court's Preliminary Injunction. The Complaint amply states claims against Willoughby on each count directed toward him. Willoughby exercised at least some authority or control respecting management or disposition of Plan assets, making him a fiduciary and thus a proper defendant under Counts I, II and III. And the Complaint also states plausible claims against Willoughby on all other claims (conversion, accounting, aiding and abetting, civil conspiracy, and voidable transactions). By his conduct, Willoughby participated with Obermeyer in the allocation and disposition of Plan funds, approved and oversaw the payment of claims (or withholding of same), and was aware of the fake check registers and resulting long delays on claims (and in many cases, nonpayment). As alleged, he took or diverted Plan assets and allowed others to do so, or assisted them with his acts or omissions, which were willful; and he took steps to deter Ciena and the Plan from discovering his misconduct.

In case any doubt remains, Willoughby's decision to invoke the Fifth Amendment over 130 times during his October 22 deposition ends the inquiry and subjects him to adverse findings on Plaintiffs' claims. Either way, Plaintiffs have

stated claims against Willoughby on each count against him.

Because of the ERISA claims and this Court's federal question jurisdiction over the case, the Court has personal jurisdiction over Willoughby because of ERISA's nationwide jurisdictional reach.

While not a necessary analysis due to ERISA's broad reach, the traditional limited jurisdiction analysis also shows Plaintiffs make at least a *prima facie* showing of personal jurisdiction over Willoughby. Willoughby meets at least three prongs of Michigan's long-arm statute (transacting business in Michigan, committing a tort/breach of duty with effects in Michigan, and being an officer of a Michigan corporation). Willoughby also easily meets the due process test. His contacts with Michigan, via the platform of which he availed himself under Michigan corporation Employee Benefit Concepts, Inc. ("EBC"), and his work, visits, calls, emails, and acts and omissions in those roles with respect to Ciena and the Plan, were extensive and not attenuated. His breaches of duty and willful conduct caused severe consequences in Michigan, his officer status gave him the platform and authority from which he committed his misdeeds, and he assisted others in doing likewise. The claims of the Complaint at least relate to Willoughby's contacts with Michigan; and the exercise of jurisdiction over Willoughby should be no surprise to him and is reasonable. The Motion should be denied.

## PROCEDURAL BACKGROUND

Plaintiffs filed this case September 10, 2024, and the Court entered a TRO and then a Preliminary Injunction. The Court found Plaintiffs likely to succeed on the merits of the original Complaint under ERISA and related claims, irreparable harm, and that relief balanced the equities and was in the public interest. *See, e.g.*, TRO (ECF No. 6), at 1–2 (PageID 201–02); Preliminary Injunction and Order Granting Expedited Discovery (ECF No. 12, PageID.231–32, at ¶¶ 1–2). Plaintiffs took Willoughby's deposition on October 1 and 22.[1] Plaintiffs filed this Complaint

---

[1] Notably, in his October 22 deposition, Willoughby invoked the Fifth Amendment 134 times. *See* Exh. A hereto, Tr. at 184, 194, 199, 202, 219, 222, 230, 232–34, 236–38, 240, 241–42, 244–47, 260–62, 264–69, 271–73, 279, 283–84, 286–87, 293–98, 300–02, 304–06, 312–15, 327–37, 343–62 & Exh. A1–10 (including, but not limited to, on net transfers out of the Plan FBO account of over $17M from 2021 forward alone, money flowing via transfers to numerous Group Resources accounts, fake check registers Group Resources, Obermeyer and Willoughby presented to Ciena, 10 examples [A1–10] of deliberately fake check numbers presented to Ciena with long-delayed later checks issued, about which he had actual or constructive knowledge, accounts held by Defendant OWM, scripts on how to deal with unpaid claims and upset providers, deliberately to delay their and Ciena's discovery or questions). *Compare* Complaint, ECF No. 40, PageID.463, 464–66, 467, at ¶ 38 (Willoughby admitted Ciena's Plan funds were "not where they should be."); ¶ 43 (over $17M in net improper transfers out of the Plan FBO account); ¶ 44 (fake check registers presented to Ciena and the Plan by Willoughby and Obermeyer for years); ¶ 45 (same); ¶ 46 (active participation, some knowledge by all Defendants); ¶ 50 (Willoughby slow-walking the process even as late as July 24, 2024 after discovery and admission of misappropriation, carefully limiting himself to with no deadline or timeline, paying (and asking Ciena to fund again) those claims "brought to light" or that which "our reconciliations" might show were delayed or never in fact paid in the first place).

October 23, 2024, and this Motion to Dismiss from Willoughby followed.[2]

## ALLEGATIONS OF THE COMPLAINT AND ADDITIONAL FACTS THE COURT MAY CONSIDER

Defendants were all officers, agents or affiliates of the claims administrator for the self-funded ERISA Plan. *See* Compl. (ECF No. 40, PageID.446–79), at ¶¶ 1, 3, 4, 5, 7–14, 16–18, 20–28, 45, 48–52, 54, 55, 61–63, 69–77, 81–87, 92–96 & Exh. A thereto, at § 16 (ECF No. 40-2, PageID.510) (Plan Administration) ("Benefits under this Plan shall be paid only if the Plan Administrator or the underlying insurance carrier/Claims Administrator decides, in its discretion, that a Participant or Beneficiary is entitled to them."; and "The respective various Claims Administrators shall have the responsibility and discretionary authority to process and pay claims provided under the Plan."). Willoughby at all times was the top officer of the EBC/Group Resources entities. *See also* ECF No. 40, PageID.449–53, ¶¶ 7, 9, 10; ECF No. 40-6, PageID.556 ¶ 8; ECF No. 40-12, PageID.609.[3]

As President & CEO of EBC, a Michigan corporation, Willoughby established and maintained an office in Plymouth, Michigan, with Michigan employees. *See* Exhibit B.[4] Group Resources purchased EBC in 2012, and under

[2] Willoughby's Motion violates LR 7.1, which mandates that moving parties attempt to seek concurrence before filing a motion. *See* E.D. Mich. LR 7.1(a)(1).
[3] At all relevant times, Willoughby was a member or director and the top officer of each of the Group Resources Defendants, including EBC. *See, e.g.*, ECF No. 14 (Motion to Compel, for Contempt, *etc*.), at 7–8 & n.4, PageID.252–53.
[4] *Formerly* at www.groupresources.com/locations (visited and pulled Sept. 9, 2024).

EBC and Group Resources, Willoughby served Ciena and the Plan from that moment until now. Most recently, EBC's Michigan clients in addition to Ciena and the Plan included five Michigan cities and 11 Michigan schools/school districts. *See* ECF 40 at ¶ 9, PageID.451–52. Beginning in 2019, Willoughby signed or affirmed the ASAs with Ciena and the Plan. *See*, *e.g.*, Exhs. C & D hereto.

Willoughby visited Michigan at least a dozen times to meet with Ciena, including its Benefits Manager, Cynthia Daffin. *See* Exh. E (Daffin Decl.), at ¶ 5.[5] He oversaw a Michigan office of EBC/Group Resources for many years until now, including the employees there; regularly traveled to Michigan for business with EBC/Group Resources, including to meet with Ciena, emailed with Ciena's Michigan representatives about the Plan, services and funding, and engaged in phone calls about the same.[6] *See* Exh. E (Daffin Decl.), at ¶¶ 4, 5.

Willoughby, Obermeyer and their companies exercised authority or control respecting management or disposition of the Plan's assets. *See* Compl., at ¶¶ 22, 27, 28, 31, 37, 38, 39, 42–48, 57, 62 (Willoughby aware if not participated), 63, 64, 65. *See also* Exh. F [Exh. 6 to 10/1/2024 Dep. of Willoughby] (text messages where Willoughby directs Obermeyer with respect to the disposition of Plan funds, "I'll try

[5] Willoughby admitted to visiting Michigan on more than 10 occasions to meet with EBC clients. Exh. A (Willoughby Tr.) 123:20–124:4.

[6] Willoughby admitted that he spoke with Cynthia Daffin, Ciena's Benefit Manager for the Plan, located in Michigan, on the phone on average twice a month, so about 24 times a year. Exh. A (Willoughby Tr.) 126:17–23.

to provide some direction on priority of releases [to pay or not to pay claims] later today."; and remarks about the amounts of payments/checks coming in from Ciena, what he or Obermeyer should do with the funds, what amounts in claims should be paid or not paid, and what transfers could be made to cover other needs).[7] It is in this context over $29M (net) from 2016 forward was removed from the Plan FBO account by Defendants, under Willoughby's watch. *See* Decl. of A. Fletcher, CPA CFE (ECF No. 58-3), at ¶¶ 4, 9, 11, 12, 13, 14, 15 and Attach. A&B thereto.

## THE LEGAL STANDARD

### *Standard For Motion Under Rule 12(b)(6)*

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

---

[7] Willoughby's texts with Obermeyer are extensive and reveal numerous instances from 2018 forward of Willoughby and Obermeyer, together exercising "practical control over [the Plan's] money." *See, e.g.*, Exhibit F (excerpts of 491 pages of texts, highlighted). Willoughby's emails also are instructive. *See* Exhibit G-1 to G-6 (Willoughby emails, some internal, and some external, to or from Ciena personnel such as Ms. Daffin (all in Michigan), regarding Ciena funds, funding of the FBO Account for claims, claims on hold reports, and related matters).

A court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (court may consider plan documents); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (a court may consider public records); *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (materials that are public records "or are otherwise appropriate for the taking of judicial notice."). "[T]he court may also consider other materials that are integral to the complaint . . ." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) (citation omitted), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48–50 (2011).

***Standard Regarding Fifth Amendment***

The Fifth Amendment allows an individual to not "answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). But "to prevent a party from converting the Fifth Amendment privilege from its intended use as a shield against compulsory self-incrimination into an offensive sword," "a district court may strike conclusory

testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause." *S.E.C. v. Smart*, 678 F.3d 850, 854–55 (10th Cir. 2012) (citing *United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1277 (10th Cir. 2008)). "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Cholewa v. United States*, 581 F. Supp. 3d 871, 887 (E.D. Mich. 2022) (citations omitted); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (same). Invoking the Fifth Amendment in a deposition can properly result in adverse inferences and findings on the merits of the claims at issue. *See, e.g.*, *F.T.C. v. Vocational Guides, Inc.*, No. 01–0170, 2009 WL 943486, at *18 (M.D. Tenn. Apr. 6, 2009); *Sentinel Tr. Co. v. Namer*, No. 98–5183, 1998 WL887287, at*3 (6th Cir. Dec. 9, 1998) (affirming grant of preliminary injunction and findings that plaintiff was likely to succeed on the merits after defendant invoked the Fifth Amendment at his deposition; where defendant "declined to answer several questions"). When confronted with detail about the breaches of duty, Willoughby did not merely invoke the Fifth on "several questions," but 134 times. A legal finding is proper that Plaintiffs have stated plausible claims against Willoughby.

***Standard For Motion Under Rule 12(b)(2)***

When presented with a motion to dismiss for lack of personal jurisdiction

under Rule 12(b)(2), a district court has three procedural options: (i) decide the motion on the basis of written submissions and affidavits alone; (ii) permit discovery in aid of the motion; or (iii) conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Regardless of which course of action is chosen, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).

Under the first option, the Plaintiffs' burden, which is "relatively slight," consists of a prima facie showing that personal jurisdiction exists. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008); *Schneider*, 669 F.3d at 697. The plaintiff may make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014) (citations omitted). The district court views the pleadings and affidavits in the light most favorable to the plaintiff, *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675 (6th Cir. 2012), and does "not weigh the controverting assertions of the party seeking dismissal," *Estate of Thomson*, 545 F.3d at 360; *see also Serras*, 875 F.2d at 1214. This prevents a defendant "from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*,

89 F.3d 1257, 1262 (6th Cir. 1996). Dismissal is only appropriate "if all the specific facts which the plaintiff [ ] alleges collectively fail to state a prima facie case for jurisdiction." *Id*.

## ARGUMENT

### A. The Complaint States a Claim as to All Counts that are Against Willoughby, Requiring Denial of the Motion on 12(b)(6) Grounds.

#### 1. Breaches Of Fiduciary Duty Pursuant to ERISA Section 502(a)(2) and (a)(3) (Counts I, II and III)

ERISA casts a broad net regarding who is a fiduciary. The statute provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan **<u>or</u>** exercises **<u>any</u> authority or control** respecting management or disposition of its **assets**, . . ., or (iii) he has **<u>any</u> discretionary authority or discretionary responsibility** in the administration of such plan. . . .

*See* 29 U.S.C. § 1002(21)(A) (emphases added).

The Plan assets test is extremely light. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985) ("[ERISA's] draftsmen were primarily concerned with the possible misuse of plan assets...."). *See also Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) ("the definition of a fiduciary under ERISA is a functional one"; because bank "controlled Plan assets" it was an ERISA fiduciary); *Srein v. Frankford Tr. Co.*, 323 F.3d 214, 221–22 (3d Cir. 2003).

The Sixth Circuit has explained, in a case very similar to this one:

> [A]lthough an entity must exercise discretionary control over managing a plan in order for that entity to become a fiduciary, an entity that

> exercises ***any*** authority or control over disposition of a plan's assets becomes a fiduciary. . . . So **the threshold for becoming a fiduciary is lower for entities handling plan assets** than for entities managing the plan. . . . An entity such as a third-party administrator becomes an ERISA fiduciary when it exercises "practical control over an ERISA plan's money." . . .. Because the third-party administrator in *Briscoe* "had the power to write checks on the plan account ... and exercised that power," it was "an ERISA fiduciary to the extent that it did so."

*Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012) (several internal citations omitted) (emphases added). *See also Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 746 (6th Cir. 2014) (BCBSM an ERISA fiduciary due to its custody of the funds and "discretion to pay claims.").[8]

The same holds true for individuals, not just companies or banks, who exercise or assert control over plan assets. *See, e.g.*, *David P. Coldesina, D.D.S. v. Est. of Simper*, 407 F.3d 1126, 1133–34 (10th Cir. 2005). *See also Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F.Supp.2d 794, 804–05 (E.D. Mich. 2004) (overruled in part on other grounds) (company president acted in a fiduciary capacity under ERISA with respect to plan assets); *Parker v. Bain*, 68 F.3d 1131, 1140 (9th Cir. 1995) (company co-owner individual defendant, to prevent his company "from financial ruin," stole funds from his company's pension plan and

---

[8] The fact that the ASAs disclaim fiduciary status does not override this. *See, e.g.*, *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012) ("a contract purporting to limit fiduciary status does not 'override[ ] [a third-party administrator's] functional status as a fiduciary.'") (citation omitted). Defendants cannot "contract around" their duties under ERISA. *Hi-Lex*, 751 F.3d at 746 & n.7.

transferred the funds into his company's general account; and was an ERISA fiduciary; admitted he "directed employees of the company to 'cash in' certain assets of the Plan," and "directed employees of the company to 'transfer' assets of the Plan to [company's] general operating account."); *Trustees of Iron Workers' Loc. No. 25 Pension Fund v. Mun. & Indus. Storage, Inc.*, No. 10–12502, 2011 WL 1515047, at *4 (E.D. Mich. Mar. 24, 2011) (75% owner of company had control over the unpaid contributions, and thus was an ERISA fiduciary; wrongfully decided to use company revenues to pay operating expenses instead of fringe benefit contributions).

The Complaint plausibly alleges Willoughby, Obermeyer and their companies exercised authority or control respecting management or disposition of the Plan's assets. *See* Complaint, at ¶¶ 22, 27, 28, 31, 37, 38, 39, 42-48, 57, 62 (Willoughby aware if not participated), 63, 64, 65. *See also* Exh. F (text messages; *see supra*).

Even if Willoughby himself did not make transfers, Obermeyer did so on Willoughby's watch and with his approval or at his direction, and Willoughby, at a minimum, breached his fiduciary duties under ERISA by failing to monitor Obermeyer. *See* Complaint, ECF No. 40, PageID.463–70 at ¶¶ 39–57.

Moreover, on October 22, when confronted with many instances of this, both in the texts and as to the documented summary of net transfers from the Plan FBO account of over $17M from 2021 forward alone, Willoughby invoked the Fifth Amendment repeatedly, on each column, line, and each point of detail. *See* Exhibit

H (FBO Account Transfer Document – Ex. 33 to Willoughby Dep.); Exh. A (Willoughby Tr. 326:6–334:23). This refusal to testify about the $17M in net transfers out of the Plan FBO account, especially in light of (and with a deposition held pursuant to) a Preliminary Injunction and Order Granting Expedited Discovery after the Court has already found Plaintiffs likely to succeed on the merits, should mean Willoughby cannot then challenge the plausibility of Plaintiffs' contentions that he "exercise[d] any authority or control respecting management or disposition of [the Plan's] assets." *See* 29 U.S.C. § 1002(21)(A); *Cholewa v. United States*, 581 F. Supp. 3d 871, 887 (E.D. Mich. 2022).[9]

[9] Additionally, a claims administrator such as EBC/Group Resources is an ERISA fiduciary where they have discretionary control over adjudicating claims and appeals. "[W]here a plan employee is required to interpret complex policies, apply elaborate rules, and make judgments, he is exercising discretionary authority. If a plan employee has the final authority to accept or deny benefit payments in cases where a dispute exists, he is a fiduciary." *Clements v. Aetna Life Ins. Co.*, No. 11–10955, 2012 WL5820856 at*4 (E.D. Mich., March 21, 2012) (*quoting Guardsmark, Inc. v. BlueCross and BlueShield of Tennessee*, 169 F.Supp.2d 794, 800 (W.D. Tenn., 2001)). The Plan provides EBC/Group Resources this responsibility, ability, discretion and authority. *See* ECF No. 40-2, PageID.510 at § 16. As the Complaint alleges, Group Resources, Willoughby and Obermeyer not only exercised control over Plan assets, they also maintained and exercised the authority to adjudicate and approve or deny claims and appeals, which gives fiduciary status. *See* ECF No. 40, PageID.458, 473–74 at ¶¶ 26, 69–71.

Sheila Autry, VP of Claims Administration for EBC (and Group Resources; a 30-year employee), was a company officer and led all claims adjudication under Willoughby's leadership and oversight. *See* ECF No. 40-4, PageID.543. Autry testified EBC/Group Resources would adjudicate claims and interpret the Plan and policy as they did so. *See* Exh. I hereto (Tr.) at 19:2-20:4; they would "look[] to the plan to see whether to approve or deny [the] claim," classified certain claims as pending until they could "determine there's no third party liability, and made

ERISA requires fiduciaries to act "solely in the interest of the [Plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Moreover, ERISA prohibits a fiduciary from "deal [ing] with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). Defendants blatantly violated these statutory commands by using Plan assets for their own purposes. This has led to millions of dollars of unpaid claims and the concomitant harm to Plan participants, including collection actions, denials of medical service and other financial hardships. As in *Guyan*, "[t]his is a classic case of self-dealing." 689 F.3d at 798–99. And, to be sure, Defendants (at least Willoughby) concede the misconduct occurred. The breaches involved fraud, theft, dissipation of Plan assets, lack of oversight, and acts that amount to a concerted effort by multiple fiduciaries to deprive Ciena, the Plan and its participants of hard-earned money. With all of this admitted conduct and permissible inferences, Ciena and the Plan have plausibly alleged claims against Defendants for numerous breaches of fiduciary under ERISA.

**2. Conversion (Count V)**

Common law conversion is "any distinct act of domain wrongfully exerted

---

medical necessity determinations. *See id.*, at 19, 20, 60, 61 (affirming that "it's up to [EBC/GR] to determine whether something was medically necessary"), 63, 66.

Defendants not only exercised control over the Ciena/Plan FBO bank account, but they also had/exercised the responsibility, ability, and discretion to process, approve, and deny claims, and make determinations as to qualification and medical necessity, for example, in the process. Defendants thus had a fiduciary duty under 29 U.S.C. § 1109(a) with respect to claims administration.

over another's personal property in denial of or inconsistent with the rights therein." *Nedschroef Detroit Corp. v. Bemas Enters LLC*, 106 F. Supp. 3d. 874, 886 (E.D. Mich. 2015). Actual knowledge is required for statutory conversion. M.C.L. § 600.2919a; *Echelon Homes, LLC v. Carter Lumber Co.*, 694 N.W.2d 544, 549 (Mich. 2005). Plaintiffs have alleged Defendants (including Willoughby) knew what they were doing when assisting one another in taking or receiving the stolen Plan assets and causing harm to Ciena and the Plan.[10] *See* ECF No. 40, PageID.463–73. ¶¶ 39–67. For this reason, the Court has rightly already ordered the return of the stolen assets. *See* ECF No. 12, PageID.232 at ¶ 2.

**3. Aiding And Abetting, And Civil Conspiracy (Counts VII and VIII)**

A civil conspiracy is the "combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cos. Ins. Co.*, 486 N.W.2d 351, 354 (Mich. Ct. App. 1992). All individuals who, "in pursuance of a common plan to commit a tortious act, actively take part in it and

[10] Accounting (Count VI) is more in the line of a remedy rather than a substantive claim and is available under ERISA as part of the Section 502(a)(3) relief courts are permitted or encouraged to implement as noted above; and should also be available (alternatively) for the conversion, civil conspiracy and aiding and abetting claims against Willoughby. Count IX relates more to judgment related or post-judgment issues; but Plaintiffs have indeed plausibly alleged Willoughby received or participated in one or more voidable transactions (Complaint, ¶¶ 132–34). *See* M.C.L. 566.34 (Transfer with intent to defraud.).

further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him." *Rosenberg v. Rosenberg Bros. Special Account*, 351 N.W.2d 563, 575 (Mich. Ct. App. 1984). Under an aiding-and-abetting claim, liability is premised upon not agreement, but action in furtherance of a common purpose. *El Camino Res., LTD v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 900 (W.D. Mich. 2010). Plaintiffs have alleged Willoughby and the other Defendants are liable for their complicity in purpose of misappropriating and mishandling Plan assets – whether by agreement or by action – which renders them liable. *See* ECF No. 40, ¶¶ 39–67, PageID.463–73. Willoughby is liable under both theories for conspiring to misappropriate Plan assets, covering it up, delaying or refusing to pay claims, and defrauding Plaintiffs and Plan beneficiaries of the Plan funds needed to pay their claims. Willoughby has known of these transfers of assets for many months at least, acted to cover up for other Defendants and to delay, and has not been forthcoming about his and others' misdeeds, while rushing to close his companies' doors and avoid accountability. Plaintiffs plausibly state claims against Willoughby here also.

### B. Resolving All Factual Disputes In Plaintiffs' Favor, Plaintiffs Make A Prima Facie Showing Of Personal Jurisdiction As To Willoughby.

#### 1. ERISA Has Nationwide Reach, Covering Willoughby.

Because this is an ERISA Complaint, to deny a challenge to personal jurisdiction the Court need only consider whether Willoughby has minimum

contacts with the United States. *See Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 567–68 (6th Cir. 2001). "Congress has the power to confer nationwide personal jurisdiction; and we hold that it conferred such jurisdiction under § 1132(e)(2) on the district court where the plan is administered." *Id.* at 567.[11] *See also Iron Workers Dist. Council of Southern Ohio & Vicinity Benefit Tr., v. Matheny & Sons Gen. Contracting, LLC*, No. 21–81, 2021 WL 4132315 at*2 (S.D. Ohio, Sep. 10, 2021).

As demonstrated *supra*, this Court has federal question subject matter jurisdiction over Plaintiffs' claims against Willoughby pursuant to ERISA. Therefore, like in *Medical Mutual*, this Court need only consider whether Willoughby of course has sufficient contacts with the United States. Willoughby is a resident of the State of Georgia and has been for many years. *See e.g.*, ECF No. 42-2, PageID.691. Thus, this Court has personal jurisdiction over Willoughby.

### 2. Michigan's Long-Arm Statue Reaches Willoughby In At Least Three Separate Ways, Each Of Which Is Sufficient For Michigan Jurisdiction Over Him.

Even if the ERISA claims did not provide jurisdiction over Willoughby, Plaintiffs still make a prima facie showing of personal jurisdiction under Michigan's

[11] Several other circuits agree. *See id.*, at 568 & n.4; *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000) (applying a national contacts test based on § 1132(e)(2)); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825 (5th Cir.1996) (same); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2d Cir.1993) (upholding 29 U.S.C. § 1451(d)'s national service of process provision as conferring nationwide jurisdiction under ERISA's Multiemployer Pension Plan Amendments Act).

long-arm statute and due process. "When a federal court's subject-matter jurisdiction is based on a federal question, the court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016); *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 668 (6th Cir. 2023) (both the Michigan long-arm statute and the due process clause must be analyzed and satisfied).

Michigan's Long-Arm Stature as to individuals provides, in relevant part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of **any** business within the state.
> (2) The **doing or causing an act to be done, or consequences to occur**, in the state resulting in an action for **tort**.
> (3) The **ownership, use, or possession** of real or tangible personal property situated within the state. . .
> (6) Acting as a **director, manager, trustee, or other officer** of a corporation incorporated under the laws of, or having its principal place of business within this state.

*See* Mich. Comp. Laws Ann. 600.705 (emphases added).

The Michigan Supreme Court has declared that the "transaction of any business within the state" is comprehensive: "The word 'any' means just what it says. It includes 'each' and 'every'.... It comprehends 'the slightest'." *Sifers v.*

*Horen*, 385 Mich. 195, 188 N.W.2d 623, 624 n. 2 (1971). *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1218 (6th Cir. 1989) (phone calls, letters and a single trip to Michigan easily sufficient personal jurisdiction over bank).

Willoughby satisfied this prong when he set up or managed leases or office space for EBC's/Group Resources offices in Michigan, marketed to, communicated with, negotiated with via email and phone and in person in Michigan, served long-time Michigan client Ciena, signed ASAs with Ciena, traveled to Michigan for business with Ciena and met with Daffin a dozen times, and routinely communicated with Ciena regarding the Plan, including with numerous calls and emails. *See* Exh E. (Daffin Decl.); Exh. G (Willoughby emails). Willoughby assisted in resolving, delaying or paying claims to Michigan providers on behalf of Plan participants, all located in Michigan. Willoughby also emailed Ciena (including Mr. Kahn, CFO of Ciena in Michigan), refusing to provide information on the admitted misappropriation of funds to the 30 bank accounts, as Willoughby further concealed and aided in delaying discovery of the nature and extent of the breaches and misappropriation. *See Compl.*, at ¶¶ 47– 49 & Exh. O thereto (PageID.637–38).

Willoughby also easily satisfies M.C.L. 600.705(2).[12] All of the breaches of

[12] "Michigan's long-arm statutes bring within their grasp individuals and corporations who, personally or through their agents ... commit a tort in Michigan ***or*** cause an act to be done that results in an action for tort in Michigan. Thus, § 600.715(2) encompasses a defendant's acts outside the state which have consequences inside the state." *Sullivan*, 79 F.4th at 668 (cleaned up).

fiduciary duty and all torts (conversion, aiding and abetting, and civil conspiracy) (all claims except for breach of contract, Count IV), are directed to Willoughby, had severe consequences in Michigan and trigger personal jurisdiction under § 2.[13]

While Willoughby admits he satisfies M.C.L. 600.705(6), he minimizes its breadth in covering his countless activities. To show the extent of these activities, for EBC, a Michigan corporation, Willoughby at all relevant times has served as resident agent (since 2015), director (since at least 2018), Sr. VP & COO (from 2012 to 2018), and then since at least 2019, President, Secretary and Treasurer:

| | | | | | |
|---|---|---|---|---|---|
| W ANDREW WILLOUGHBY | RESIDENT AGENT | 9405 HAGGERTY ROAD PLYMOUTH, MI 48170 | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |
| WILLIAM ANDREW WILLOUGHBY | DIRECTOR | SUITE 100, 3080 PREMIERE PKWY DELUTH, GA 30097 USA | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |
| WILLIAM ANDREW WILLOUGHBY | DIRECTOR | SUITE 300, 2675 BRECKINRIDGE BLVD DULUTH, GA 30096 USA | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |
| WILLIAM ANDREW WILLOUGHBY | PRESIDENT | SUITE 300, 2675 BRECKINRIDGE BLVD DULUTH, GA 30096 USA | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |
| WILLIAM ANDREW WILLOUGHBY | SECRETARY | SUITE 300, 2675 BRECKINRIDGE BLVD DULUTH, GA 30096 USA | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |
| WILLIAM ANDREW WILLOUGHBY | TREASURER | SUITE 300, 2675 BRECKINRIDGE BLVD DULUTH, GA 30096 USA | EMPLOYEE BENEFIT CONCEPTS, INC. | 800246795 | 237925 |

*See* LARA.[14] *See also* Compl., ECF No. 40, PageID.450 ¶ 7; ECF No. 40-6, PageID. 555, ¶¶ 4–5; Exhibit J hereto (Annual Reports of EBC, 2012–24 [Obermeyer signing 2012–14, then Willoughby]). At all relevant times, Willoughby was also CEO. He is at least 75% owner of EBC, through Defendant Group Resources Acquisitions, LLC or otherwise. ECF No. 40-6, PageID. 555, ¶¶ 4–5. The claims against

[13] The Court also may have personal jurisdiction over Willoughby pursuant to M.C.L. 600.705(3). Willoughby very likely used (if not owned or possessed), real or tangible personal property situated within Michigan, especially in connection with the EBC offices and his numerous visits there.

[14] State of Michigan, Department of Licensing and Regulatory Affairs; *available at* https://cofs.lara.state.mi.us/SearchApi/Search/Search# (last visited Nov. 23, 2024).

Willoughby all arose from the platform he had as a top officer of EBC, and his resulting Michigan contacts with Ciena and the Plan. *See* Exh. E (Daffin Decl.); Exh. G; Compl. ¶¶ 32–57 & Exh. O; Exh. F (texts with Obermeyer).

**3. Jurisdiction Over Willoughby Easily Satisfies Due Process.**

Personal jurisdiction over Willoughby is consistent with due process if he **purposefully availed** himself of the privilege of acting or causing a consequence in Michigan, if the cause(s) of action **arose from or relate to** his Michigan activities, and if his actions, or the consequences he caused, have a sufficiently substantial connection with Michigan so as to make the exercise of jurisdiction **reasonable**. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–26 (2021). These tests are easily met.

***i. Purposeful Availment***

To determine purposeful availment, the Court asks whether Willoughby "acted or caused a consequence in Michigan such that he invoked the benefits and protections of Michigan law," which ensures that Willoughby could have reasonably anticipated "being haled into court" in Michigan. And it ensures Willoughby "is not brought into a Michigan court solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *MAG IAS Holdings, Inc.*, 854 F.3d at 900 (finding Michigan personal jurisdiction over German citizen CEO, residing in Germany, who was in

place with the for only eight months who only traveled to Michigan twice). The Court can consider Willoughby's "contacts with Michigan in the aggregate." *See Bradley v. Smith*, No. 22–11457, 2023 WL 6302999, at *5 (E.D. Mich. Sept. 27, 2023) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996)).

As President and CEO, Willoughby continuously communicated with Ciena and the Plan about unpaid claims, amounts needed to replenish the FBO, and the services being provided. *See* Exh. E (Daffin Decl.), at ¶¶ 4, 5, 6, 7; Exh. A (Willoughby Tr.) 123:20–124:4; 126:17–23. It was Willoughby's hundreds of communications via phone and email as the "front-man" for EBC, Group Resources and Obermeyer, that helped stave off Ciena from any real inquiry into the misdeeds of Defendants. *See, e.g.*, Compl., ECF No. 40, PageID.464–69, at ¶¶ 41, 47–53. Every fake check register (178 sent from 2021 forward alone) was transmitted by Willoughby to Ciena, or under his leadership. ECF No. 40, PageID.465–66, ¶¶ 44–45; Exh. E (Daffin Decl.) ¶ 7; Exh. A, (Willoughby Tr.), at 255:24–257:2. Viewing the cumulative facts in Plaintiffs' favor, the Court should conclude Plaintiffs present a prima facie showing of purposeful availment as to Willoughby.

***ii. Relation To Forum State***

Second, the Court should consider whether Willoughby's contacts with Michigan "relate[ ] to the operative facts of this controversy." *See MAG IAS Holdings, Inc.*, 854 F.3d at 903. As clarified by the Supreme Court, "arise from"

and "relate to" are two separate standards, and if either is satisfied, this will support jurisdiction. *Ford Motor Co.*, 141 S. Ct. at 1026. Relatedness is a "lenient standard" that is satisfied when the cause of action is "at least marginally related to the alleged contacts" between the defendant and the forum. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (applying "lenient" standard). Put another way, causes of action that are "made possible by" or "lie in the wake of" defendants' contacts with the forum state arise from those contacts. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007).

The claims of the Complaint were made possible by or lie in the wake of Willoughby's contacts with Michigan or relate to Willoughby's contacts with Michigan. Each fake check register was sent to Michigan.[15] Each improper exercise of control over Plan assets or perpetuation of unpaid claims (while keeping Ciena

[15] The cases on which Willoughby relies are inapposite and do not help him. *See SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) (no personal jurisdiction where only contacts alleged were two phone calls – one in which defendant answered and one call he returned – and the alleged injury "happened before either of these telephone conversations" and thus could not have been caused by them). Willoughby also improperly relies on *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507 (6th Cir. 2014), in which all relevant underlying events occurred in Qatar, and the employer defendant was a Qatari corporation; and this case was abrogated at least in part by *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). *See Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, No. 19–508, 2021 WL 10428708, at *5 (E.D. Tenn. Apr. 28, 2021) (discussing the due process analysis, "the Supreme Court [in Ford Motor Co.] recently clarified that a court can find that it has personal jurisdiction without finding that the defendant's contacts with the forum caused the suit.").

and the Plan in the dark) arose out of or was related to and was made possible by Willoughby being an officer of a Michigan corporation (EBC) and/or communicating with Ciena via email and phone in Michigan; and each act of conversion, civil conspiracy and aiding and abetting also relates to Willoughby's contacts with the Plan, and caused consequences in Michigan to Plaintiffs.

***iii. Reasonableness of Exercising Jurisdiction***

Finally, Plaintiffs make at least a prima facie showing that Willoughby's actions, or the consequences he caused, have a sufficiently substantial connection with Michigan so as to make the exercise of jurisdiction reasonable. Courts consider "several factors at this stage: (1) 'the plaintiff's interest in obtaining relief'; (2) 'the interests of the forum State'; and (3) 'the burden on the defendant.'" *Bradley*, 2023 WL 6302999, at *6 (quoting *Beydoun*, 768 F.3d at 508).

Willoughby's Michigan roles, transactions, and activities were vast, continuous, and caused great harm in Michigan, which is ongoing. Due process is easily satisfied due to Willoughby's numerous transactions in the State, his acts or omissions that amounted to tort causing massive harm to hundreds of vulnerable Plan participants in Michigan in Michigan, and due to his breaches of duty and other conduct that all occurred while a director, top officer (in numerous capacities), and agent of a Michigan corporation, including over at least six years as CEO and President. Pursuant to these transactions, acts or omissions, or pursuant to his work

in the roles noted above and in the Complaint, Willoughby helped perpetrate a massive heist of Plan assets against a Michigan client and Michigan-based ERISA Plan, with hundreds of Michigan residents affected by his misdeeds. *Serras*, 875 F.2d. at 1218 (negotiations with Michigan residents, a relationship established with benefits to defendant, and exposing the plaintiffs to harms as residents of Michigan "easily sufficient to meet the reasonableness requirements."). And "Michigan has an interest in protecting its residents from fraud, extortion, and conversion…." *Bradley*, 2023 WL 6302999, at *7. Exercising jurisdiction over Willoughby is reasonable.

**CONCLUSION**

The Motion should be denied.

Respectfully submitted,

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
David W. Centner (P43071)
Magy E. Shenouda (P85576)
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI 48226
(313) 309-4269/ (313) 965-8300
pwilhelm@clarkhill.com
dcentner@clarkhill.com
mshenouda@clarkhill.com
*Attorneys for Plaintiffs*

Date: November 27, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, I electronically filed the foregoing paper using the Court's ECF system, which will send notification of such filing to all counsel of record.

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
Clark Hill PLC