# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIENA HEALTHCARE MANAGEMENT,
INC., et al,
Plaintiffs,

-vs- Case No. 2:24-CV-12362-MAG-DRG

GROUP RESOURCES INCORPORATED,
et al,
Defendants.
_______________________________________/

DEPONENT: WILLIAM ANDREW WILLOUGHBY - VOLUME 2
DATE: Tuesday, October 22, 2024
TIME: 10:45 a.m.
LOCATION: CLARK HILL, PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan
REPORTER: Karen Fortna, CRR/RMR/RPR/CSR-5067
JOB NO: 34356

Fortz Legal Support
www.FortzLegal.com
844.730.4066

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIENA HEALTHCARE MANAGEMENT,
INC., et al,
Plaintiffs,

-vs- Case No. 2:24-CV-12362-MAG-DRG

GROUP RESOURCES INCORPORATED,
et al,
Defendants.
________________________________________/

DEPONENT: WILLIAM ANDREW WILLOUGHBY - VOLUME 2
DATE: Tuesday, October 22, 2024
TIME: 10:45 a.m.
LOCATION: CLARK HILL, PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan
REPORTER: Karen Fortna, CRR/RMR/RPR/CSR-5067
JOB NO: 34356

APPEARANCES:

CLARK HILL, PLC
By: Mr. Paul A. Wilhelm
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
313.309.4269
pwilhelm@clarkhill.com
Appearing on behalf of the Plaintiffs

HICKEY, HAUCK, BISHOFF,
JEFFERS & SEABOLT, PLLC
By: Ms. Stefanie R. Reagan
One Woodward Avenue, Suite 2000
Detroit, Michigan 48226
313.964.8600
sreagan@hhbjs.com
Appearing on behalf of the Defendants

WEENER, NATHAN, PHILLIPS, LLP
By: Ms. Renee A. Morgan (VIA TELEPHONE)
5887 Glenridge Drive NE, Suite 275
Atlanta, Georgia 30328
770.392.9004
rmorgan@wnpllp.com
Appearing on behalf of the Defendants

# I N D E X

W I T N E S S


| | |
|---|---|
| WILLIAM ANDREW WILLOUGHBY | PAGE |
| Continued examination by Mr. Wilhelm | 107 |

Page 181

**A. Not that I recall.**
Q. And you have a copy of that letter somewhere?
**A. Yes, sir, as does counsel.**
Q. And then what is the other -- who are the other clients who've indicated they are considering legal action or however you put it?
**A. I don't recall specifically.**
Q. How many?
**A. Three or four.**
Q. Can you name any of them?
**A. No, sir, I cannot.**
Q. Who could?
**A. I don't know that anyone could name it at the moment.**
Q. Well, who was involved in the -- but you had -- if you looked in your records and emails, you would be able to name them?
**A. Yes, sir, possibly.**
Q. Do you know the combined amount of those potential disputes?
**A. Not without knowing the companies; no, sir.**
Q. What's the highest -- after Ciena, what's the highest number that you're aware of that may be in dispute that these clients may have been claiming?
**A. I don't recall specifically.**

Page 182

Q. Okay. How about generally, can you give me an estimate?
**A. I don't have an estimate.**
Q. Has anyone claimed -- other than Ciena, has anyone claimed over seven figures?
MS. REAGAN: Object to form.
**THE WITNESS: No, sir, no one has claimed anything other than Rovin.**
BY MR. WILHELM:
Q. Okay. Other than Ciena?
**A. Other than Ciena; yes, sir.**
Q. Have any of these clients asked you for information?
MS. REAGAN: Object to form.
**THE WITNESS: In what regard?**
MR. WILHELM: To like investigate, asking -- like, "We're looking into some stuff and we're asking for information from you."
MS. REAGAN: Object to form.
MR. WILHELM: I'm paraphrasing, but anything --
**THE WITNESS: Not asking anything in that reference. I've provided information relating to claims paid and accumulators so they can transition to the new administrator and provide a report, but**

Page 183

**in reference to the rest, no, sir.**
BY MR. WILHELM:
Q. In connection with your bankruptcy and I think in other submissions -- I'm paraphrasing -- but is it fair to say you did an investigation or you were involved in an investigation about Obermeyer's conduct in which you have said there's a claim against Obermeyer from the Group Resources group of at least 8.1 million?
MS. REAGAN: Object to form.
**THE WITNESS: Yes, sir; that's correct.**
BY MR. WILHELM:
Q. All right. And have you done -- that's what you said at least as of mid September. Has that number changed from your perspective or been more -- do you have a more precise number now?
**A. No more precise. It has not significantly changed.**
Q. Okay. Has anyone -- to your knowledge, have you done an assessment of how much money was taken from Ciena?
**A. No, sir.**
Q. To your knowledge, have you done an assessment or anyone at Group Resources done an assessment on how much remains in unpaid claims for the Ciena plan?

Page 184

MS. REAGAN: I'm going to object to form and foundation and instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on advice of counsel and a pending investigation, I'm going to exercise my Fifth Amendment right to not answer that question.**
MR. WILHELM: I'm just asking if you have done an assessment of the amount of unpaid claims on the Ciena claim.
MS. REAGAN: Same objection. Same instruction.
MR. WILHELM: You're invoking the Fifth Amendment on that? The witness is invoking the Fifth Amendment on that question?
**THE WITNESS: Based on the advice of counsel and the pending investigation, I'm invoking my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. What pending investigation?
**A. Based on a conversation with the FBI, I cannot have further discussions about that investigation.**
Q. A conversation that who had with the FBI?
MS. REAGAN: Object to form. Do you

Page 193

improper objection.
You're not objecting based on privilege, you're not objecting based on trade secrets. It's totally improper and it's a speaking objection that needs to be stricken and disregarded. The witness can answer.
MS. MORGAN: I appreciate your input, however my objection still stands. You're asking a party to do something that they are not required to do under federal law and my objection stands. Thank you. You may proceed to continue asking questions.
If you continue to ask him the same thing in questions, I will continue to reiterate. I'll just say "Same objection as before," that a party has no duty to create a summary for another party that may have --
MR. WILHELM: Counsel, your speaking --
MS. MORGAN: -- when they have produced the raw data.
MR. WILHELM: Counsel, your speaking objections are improper.
BY MR. WILHELM:
Q. Mr. Willoughby, I asked you earlier and I'm summarizing, but have you all done an investigation

Page 194

into the amount of unpaid claims on the Ciena plan?
MS. REAGAN: Object to form and also instruct the client to invoke his Fifth Amendment right.
**THE WITNESS: Based on the advice of counsel and a pending investigation, I'm exercising my right under the Fifth Amendment to not answer the question.**
BY MR. WILHELM:
Q. Will you do such an investigation?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I cannot commit to that at this time.**
BY MR. WILHELM:
Q. Why not?
MS. REAGAN: Object to form. I'm just going to say it's unclear exactly what you're asking the witness to do. Are you asking the witness to provide documents and records?
MR. WILHELM: Counsel, I'm asking -- the question speaks for itself and I'll ask it again.
MS. REAGAN: Well, it doesn't speak for itself, Paul, and I'm not going to have a client commit to something that is literally impossible for him to do.

Page 195

BY MR. WILHELM:
Q. Will Group Resources or you commit to doing an investigation on all unpaid claims on the Ciena plan?
MS. REAGAN: Object to form.
MS. MORGAN: Object to form. Same objection as previously stated.
MR. WILHELM: Go ahead.
**THE WITNESS: No.**
BY MR. WILHELM:
Q. Why not?
**A. At this time we're not able to provide that.**
Q. It's more about willingness or -- I asked you would you be willing to and you said no and now you're saying you're not able to. Which is it?
**A. It's both.**
Q. You're neither willing or able?
**A. Not willing at this time based on advice of counsel.**
Q. All right. And then able. What's your basis for saying able? You don't have enough staff?
**A. Time limits and staffing, yes.**
Q. What's your -- are you under some time pressure?
MS. REAGAN: Object to form. Argumentative.

Page 196

BY MR. WILHELM:
Q. Do you have plans to resign from Group Resources at the end of the month?
MS. REAGAN: Object to form. Argumentative.
**THE WITNESS: No, sir, I do not.**
BY MR. WILHELM:
Q. What's the time issue that you're mentioning?
**A. There are many issues going on with shutting down the operations, winding down the operations.**
Q. So you're busy winding up operations while you have two injunctions against you and are subject to expedited discovery and a preliminary injunction, so --
MS. REAGAN: Object to form.
MR. WILHELM: -- you kind of can't be bothered; is that the idea?
MS. REAGAN: Object to form. Argumentative. I don't know if there's a question there.
**THE WITNESS: Was there a question?**
MR. WILHELM: Is that the idea?
**THE WITNESS: What the idea?**
MR. WILHELM: That you can't be bothered.
MS. REAGAN: Object to form.

Page 197

Argumentative. Misstates the witness's testimony.
**THE WITNESS: No, it's a function of how many hours are available in any given period to get things accomplished.**
BY MR. WILHELM:
Q. Okay. Well, if that's the case, how much time do you need?
MS. REAGAN: Object to form.
**THE WITNESS: I do not know.**
BY MR. WILHELM:
Q. Would you look at that and get back to us?
MS. REAGAN: Object to counsel.
MR. WILHELM: Through your counsel.
MS. REAGAN: Paul, do you want to --
MR. WILHELM: You can't interrupt the witness. You can't --
MS. REAGAN: I'm not trying to interrupt.
MR. WILHELM: Don't make a speaking objection, counsel.
MS. REAGAN: I'm objecting because it's unclear to me specifically what you're asking for, the scope, the time period, the types of documents, the information --
MR. WILHELM: Counsel, that's an improper speaking objection. I'm sorry.

Page 198

I just asked, will you get back to us through your counsel, sir, on that front?
**THE WITNESS: I will discuss it with counsel.**
MR. WILHELM: Have your counsel get back to us then one way or another, okay?
**THE WITNESS: We'll discuss.**
MS. REAGAN: We'll get back to you.
MR. WILHELM: Thank you.
BY MR. WILHELM:
Q. In your affidavit, sworn declaration, I call it, I think that's why I call it, you indicate in paragraph 16, which is on page 10 of 20 of that ECF filing, docket 7, September 19, 2024, is the date of the filing. At the end it says you signed it on September 17, 2024.
So I'm going to paragraph 16 of that document, page 4. Do you see that, sir?
**A. Yes, sir.**
Q. It says, "In addition to taking client funds, Mr. Obermeyer also took debtors' revenues for himself." And also paragraph 15, right above that, "Mr. Obermeyer's embezzlement involved taking client funds from debtors and their clients, putting those funds in GRA and GR Iowa accounts" --

Page 199

**A. Where are you? I'm sorry.**
Q. Paragraph 15. "...and then using those GRA and GR Iowa accounts to withdraw funds in cash," et cetera, et cetera. Do you see that?
**A. Yes, sir.**
Q. Have you all done an assessment of how much in client funds were stolen?
**A. No, sir.**
Q. Have you done an assessment of how much of Ciena plan funds were stolen?
MS. REAGAN: Object to form. I'm going to instruct the witness not to answer on the basis of the Fifth Amendment.
**THE WITNESS: On the advice of counsel and based on a pending investigation, I'm exercising my right under the Fifth Amendment to not answer the question.**
MR. WILHELM: I'm just asking if you've done an investigation into it.
MS. REAGAN: Same objection. Same instruction.
MR. WILHELM: You're refusing to answer under the Fifth Amendment?
**THE WITNESS: On the advice of counsel, based on a pending investigation, I'm exercising my**

Page 200

**right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Do you know what other clients were stolen from other than Ciena?
MS. REAGAN: Object to form. Foundation.
MR. WILHELM: Because it says "clients," plural. Do you know which ones other than Ciena?
**THE WITNESS: Not -- not by name.**
BY MR. WILHELM:
Q. How many?
**A. I would estimate 10 to 15.**
Q. And of that 10 to 15, what percentage was stolen from Ciena?
**A. I do not know.**
Q. You're not sure?
**A. No, sir; I'm not.**
Q. If your bankruptcy counsel indicated that he thought maybe half of it was Ciena, would you have any reason to disbelieve that?
MS. REAGAN: Object to form. Asked and answered.
**THE WITNESS: I do not know.**

Page 201

BY MR. WILHELM:
Q. You don't have any reason to disbelieve that or you don't know whether he said that; what is your testimony, sir?
**A. I wouldn't have a reason to disbelieve that.**
Q. Okay.
**A. But I don't know that that's the number.**
Q. What number do you think it is?
**A. I do not know.**
Q. You haven't bothered to try to find out?
**A. Rude.**
MS. REAGAN: Object to form. Argumentative.
MR. WILHELM: Sir, you're subject to a federal lawsuit claiming millions in stolen assets from an ERISA benefit plan and you haven't bothered to try to find out what your alleged partner and CFO did under your watch and you find my asking you that rude?
MS. REAGAN: Object to form. Argumentative. Intimidating and harassing --
MR. WILHELM: I think you should check yourself, sir.
**THE WITNESS: It was not the asking that was rude, it was the characterization that was**

Page 202

**rude. That's why I said rude.**
BY MR. WILHELM:
Q. So why haven't you looked into how much money was stolen from the Ciena plan?
MS. REAGAN: Object to form. I'm going to instruct the witness not to answer based upon the Fifth.
**THE WITNESS: Based on advice of counsel and a pending investigation, I'm exercising my right to not answer that question under the Fifth Amendment.**
BY MR. WILHELM:
Q. We received a number of texts in this case between yourself and Mr. Obermeyer and I asked you about some of those at your October 1st deposition. I wanted to share with you an excerpt from one to see if you agree with the statement.
On July 3rd, you sent a text to Obermeyer and I believe Janie Jackson and possibly another person. "Ladies, some good news for the holiday" -- July 3, 2024. "Intact has approved a payment of 200,000 while they continue their investigation/determination." Does that sound right to you, that that was around the time you learned that the 200,000 had been approved?

Page 203

**A. It would not have been with Dave Obermeyer as you said.**
Q. I'm sorry?
**A. You said it was with David Obermeyer and Janie Jackson.**
Q. Maybe it wasn't with Obermeyer, but Janie Jackson and yourself and maybe Sheila Autry. So I may need to correct what I said. This may not have been from you.
**A. I can guarantee there was no conversation with Obermeyer in July.**
Q. Okay. Well, let me sort of reset the table on this text because it may have been produced by Ms. Autry, so any confusion is my fault on that.
All right. So back to the question, though. You sharing that information with Ms. Autry and Ms. Janie Jackson, does that sound like around the right time, July 3, 2024, where you learned about the 200?
**A. To be honest, I stopped listening when you said Dave Obermeyer, so if you can repeat the question.**
Q. Did you learn about the payment of 200,000 around July 3rd of this year?
**A. Based on that; yes, sir.**
Q. You have no reason to dispute that that was the

Page 204

time at least that you sent that text?
**A. No, sir, I do not.**
Q. All right. And then Ms. Autry sent a response, "Honestly, I think this is big. They would have never fronted one cent if this was to be denied. I think this is a sign of more to come. I am claiming 2 million."
And then you responded, "It will not be 2 million. They are very clear there is no coverage for client funds."
Do you see that?
**A. I don't see it. You have it in front of you.**
Q. Sorry. Well, do you recall sending that?
**A. Not specifically.**
Q. Okay. Do you believe that to be a true statement that with that crime policy, there's no -- the insurance company took the position there is no coverage for client funds?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: What was the question at the end of that? I'm sorry.**
BY MR. WILHELM:
Q. Do you agree that the insurance company took the position that there is no coverage for client funds?

Page 217

**Octavia, O-C-T-A-V-I-A, Young.**
Q. And how about HEZ -- do I have that right?
**A. Yes, sir. Sheila Autry, Gail, G-A-I-L McDougall, David McDougall, Josette Fusilier, F-U-S-I-L-I-E-R, Denise Bresky.**
Q. Where else have your employees gone, if you know?
**A. One went to Benefit Support in Gainesville, one went to US Benefits, one has gone to The Benefit Group. I believe that's the only ones I'm aware of where they have gone.**
Q. Okay. Turning to July 3, 2024, in this exhibit, at the bottom there's a "Ditto" and an American flag sent by Janie Jackson.
**A. Okay.**
Q. Actually, next page, please.
**A. Next page back?**
Q. Next page of July 3, which is below. You write to Janie and Sheila, "Ladies, some good news for the holiday. Intact has approved a payment of 200,000," et cetera. Do you see that?
**A. Yes, sir.**
Q. That's the part -- this is the same section I was questioning you about earlier.
**A. Okay.**
Q. So I'm just giving you the document now.

Page 218

**A. Thank you.**
Q. And then going north of that, to the prior page, July 5, this is where you write, "It will not be 2 million. They are very clear there is no coverage for client funds." Do you see, sir?
**A. Yes, sir.**
Q. And you wrote that to Sheila and Janie?
**A. Yes, sir.**
(Marked for identification: Deposition Exhibit No. 11.)
BY MR. WILHELM:
Q. All right. Okay. I'm handing you our next exhibit, Exhibit 11. I'll ask you to take a look at that and let me know when you're ready.
Do you recognize that document, sir?
**A. Yes, sir.**
Q. What is it?
**A. It's an email from Dave Obermeyer to myself.**
Q. January 2024, correct?
**A. Yes, sir.**
Q. Someone at First Horizon in the middle, copying Bobbie Whitt Docher -- there she is -- along with Dave Obermeyer about transfers. She writes, "Good morning." Sylvia Espinoza writes, "Please see below the transactions clearing the accounts

Page 219

today," 0793, 44,000 and change for Ciena -- or with respect to Ciena -- and then two other accounts below that.
And then it says, "Also, the following account" -- I think there's a typo; it should be accounts, plural -- "are in the overdraft report this morning." Do you see that?
**A. Yes, sir.**
Q. And it lists four accounts associated with David Obermeyer or Group Resources, right?
MS. REAGAN: Object to form. Foundation. I'm going to instruct the witness not to answer questions regarding this document or the amounts stated in there and assert the Fifth Amendment privilege.
MR. WILHELM: Well, it's the witness' to assert.
**THE WITNESS: Based on the advice of counsel and a pending investigation, I'm exercising my right under the Fifth Amendment to not answer this question.**
MR. WILHELM: Well, I was just wondering if you could tell me if those four accounts are associated with Group Resources or not, the ones that are in overdraft.

Page 220

MS. REAGAN: If he can answer whether those are Group Resources accounts, he can confirm whether that's Group Resources.
**THE WITNESS: I believe they are Group Resources accounts. I do not believe that they would have emailed him about personal accounts on a Group Resources email thread. And those accounts -- at least two of which are in the list that were provided by your client.**
BY MR. WILHELM:
Q. So at least the bank was under the impression from you all that these were Group Resources accounts?
MS. REAGAN: Object to form. Foundation.
MR. WILHELM: Go ahead.
**THE WITNESS: Based on this email, it would appear that they were questioning these as Group Resources accounts; yes, sir.**
BY MR. WILHELM:
Q. So what was the Fifth Amendment problem? What were you refusing to answer under the Fifth Amendment?
**A. The question relating specifically to account 0793 for Ciena.**
MR. WILHELM: Okay. Let's go ahead to our next exhibit, Exhibit 12.

Page 221

(Marked for identification:
Deposition Exhibit No. 12.)
BY MR. WILHELM:
Q. I'll ask you to take a look at that and let me know when you're ready.
Do you recognize this document, sir?
**A. Yes, sir.**
Q. All right. And who is Denise, please?
**A. I believe --**
Q. Well, let me back up.
You recognize this document, right?
**A. Yes, sir.**
Q. And what is it?
**A. It's an email from Sheila Autry to Dave Obermeyer and myself.**
Q. Thank you.
And who is Denise referenced in line 1, please, of the body?
**A. Denise Bresky.**
Q. Who is she, please?
**A. She was in our provider service unit.**
Q. Okay. She was interfacing with Ciena?
**A. She was interfacing with providers.**
Q. Okay. Providers that have been -- for which claims have been submitted under this Ciena plan, right?

Page 222

**A. All plans.**
Q. Right, but in this case, she's talking about Ciena, right?
**A. Yes, sir.**
Q. All right. So Denise approached Sheila concerned that Denise would be -- "...would have over 200 claims on the Ciena escalation list for this week and wondered if there was a better way to handle." What's she talking about there, sir?
MS. REAGAN: Object to form and foundation and also instruct the client not to answer and assert his Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel and a pending investigation, I'm exercising my right under the Fifth Amendment to not answer this question.**
(Marked for identification:
Deposition Exhibit No. 13.)
BY MR. WILHELM:
Q. Exhibit 13. So May 11, 2022 appears to be the date of the document. Do you recognize this document, sir?
MS. REAGAN: Object to form.
**THE WITNESS: It appears to be an email from Sheila Autry to Dave Obermeyer.**

Page 223

BY MR. WILHELM:
Q. Okay. Have you ever seen this document before, before today, if you know?
**A. I don't recall.**
Q. All right. But in any event, you know who Sheila Autry and David Obermeyer are, right?
**A. Yes, sir.**
Q. I'll ask you about this. Do your best.
Dave says to Sheila, "Doesn't it seem like our meetings are nothing but problems and negative energy?" I assume he means company meetings, right?
MS. REAGAN: Object to form. Foundation. The witness isn't on this email chain.
MR. WILHELM: Go ahead, if you know.
**THE WITNESS: I don't know. We didn't have regular company meetings, so I'm not sure what it's in reference to.**
BY MR. WILHELM:
Q. Well, he says "our meetings." Maybe he's talking about the leadership team, which is you, Dave and Sheila, right?
MS. REAGAN: Objection to form and foundation.
MR. WILHELM: Go ahead.

Page 224

**THE WITNESS: I don't know what he's speaking of.**
BY MR. WILHELM:
Q. Were you the top three folks at Group Resources on May 11, 2022, you, Dave and Sheila?
**A. There was a fourth.**
Q. Who was the fourth?
**A. Jennifer Potts.**
Q. Okay. So maybe the four of you were the leadership team at that time; fair to say?
**A. The four of us were the leadership team at that time.**
Q. Okay. So was he talking about a leadership team meeting?
**A. I don't know.**
Q. Okay. Sheila responds and apparently agrees with him and says, "Yes, especially today. Andy is preoccupied." That's you, right?
MS. REAGAN: Object to form and foundation.
MR. WILHELM: Go ahead.
**THE WITNESS: Yes, sir.**
BY MR. WILHELM:
Q. She goes on to say, "I understand from Jennifer" -- that's Jennifer Potts, right? -- "that Andy has a

Page 229

member I've highlighted?" right?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: Yes, sir.**
BY MR. WILHELM:
Q. Ryan then forwards it to Dave Obermeyer and to you basically asking for your input, right?
MS. REAGAN: Object to form and foundation.
**THE WITNESS: Yes, sir.**
BY MR. WILHELM:
Q. And then Dave responds, "What's outstanding to this particular member?" Ryan responds, "32,000." I'm paraphrasing, but that's what he says there.
Then above, you respond to Ryan, "Ryan, just spoke with Dave. Go ahead and release the 19 lines in the file you sent. Thanks," correct?
MS. REAGAN: I'll instruct the -- object to form. I'll instruct client to confirm that the document states what the document states and advise him not to answer further with regard to payment or release of claims or funds and assert the attorney-client privilege.
**THE WITNESS: That is what the document states.**
MR. WILHELM: There is no attorney-client

Page 230

privilege here, counsel.
MS. REAGAN: I'm sorry, the Fifth Amendment privilege.
MR. WILHELM: Are you asserting the Fifth Amendment for this -- with respect to this document, sir?
**THE WITNESS: I've affirmed what it says.**
BY MR. WILHELM:
Q. Well, this is talking about you -- clearly it's talking about you instructing Ryan and Dave to pay 19 lines of claims for this member that had been backlogged for some period of time, right, sir?
MS. REAGAN: I'm going to object and instruct the client -- the witness to assert his Fifth Amendment privilege.
**THE WITNESS: On advice of counsel and based on a pending investigation, I'm asserting my Fifth Amendment right to not answer the question.**
(Whereupon a break was taken from 1:35 p.m. to 1:42 p.m.)
MR. WILHELM: We're back on the record after a short break.

Page 231

BY MR. WILHELM:
Q. Mr. Willoughby, during the break, did you review any documents?
**A. I did not.**
Q. Did you speak to anyone other than counsel?
**A. I did not. I texted someone at the office about the email server being down, but nothing about this case, just to clarify.**
MR. WILHELM: Thank you, Mr. Willoughby.
(Marked for identification: Deposition Exhibit No. 15.)
BY MR. WILHELM:
Q. I'm handing you our next exhibit, which is 15. I'll ask you to take a look and let me know when you're ready. Okay?
**A. Yes, sir.**
Q. Do you recognize this document, sir?
**A. Yes, sir. It's an email to myself -- from myself to Dave Obermeyer.**
Q. All right. And below that, an email from Sheila Autry to Obermeyer and then from Dave to you, correct?
**A. Yes, sir.**
Q. It starts out Sheila asking Dave -- she says, "Dave, I just got a call from Robin in the phone

Page 232

unit regarding checks for the above" -- that is Ciena. Ciena checks from 2019, in fact, which is two years prior -- "that are missing from Emdeon." What's Emdeon, please?
**A. Emdeon/Change Healthcare was the fulfillment vendor we used for checks in production.**
Q. That was also known as Change Healthcare at some point?
**A. Originally they were Emdeon and they became Change Healthcare.**
Q. It says, "The providers are calling back for status. Apparently this has been going on for about six weeks." Do you see that, sir?
**A. Yes, sir.**
Q. This is an example of unpaid claims, right, sir?
MS. REAGAN: Object to form. Foundation. Calls for a legal conclusion. And I'm going to instruct the witness not to answer any questions, asserting the Fifth Amendment.
**THE WITNESS: On advice of counsel and based on the investigation, I'm exercising my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. And I just want to clarify something. Based on

what investigation? Based on what investigation?
**A. With the FBI.**
Q. All right. So the next statement is, "Apparently this has been going on for about six weeks." Do you see that?
**A. Yes, sir.**
Q. She says, "Do we have an update or do you know what's going on?" right? She's asking Dave, correct?
**A. Yes, sir.**
Q. Dave forwards it to you, correct?
**A. Yes.**
Q. And then you respond to Dave and you say what?
**A. The email reads, "I know what has happened. We can discuss tomorrow."**
Q. Okay. Did you in fact know what happened?
MS. REAGAN: Object to form. I'm going to instruct the witness not to answer the question and assert the Fifth Amendment privilege.
**THE WITNESS: Based on advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. Did you, in fact, discuss it with Dave the next day?



MS. REAGAN: Same objection, same instruction.
**THE WITNESS: Again, based on advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**
(Marked for identification: Deposition Exhibit No. 16.)
BY MR. WILHELM:
Q. I'll hand you what's being marked as Exhibit 16. I'll ask you to take a look and let me know when you're ready.
Do you recognize this document, sir?
**A. I'm still reading. Yes, sir.**
Q. Okay. What is it?
**A. It's an email from Sheila Autry to myself and Dave Obermeyer.**
Q. Attaching what?
**A. Conversations for the benefit advisors and Tonya Dorsey referred to as the Ciena phone dialogue.**
Q. So it's not a conversation, it's basically talking points for what to say when you're dealing with calls about unpaid claims, right, sir?
**A. It's a document to respond to questions regarding claim status.**
Q. Claims that haven't been paid yet, right, sir?



MS. REAGAN: Object to form.
**THE WITNESS: It could be all types of claims, both paid and unpaid. I don't know what the calls would be relating to until they were taken.**
BY MR. WILHELM:
Q. Look in the middle of the dialogue. It says, "Important." Under that, "If the patient calls and indicates they are in collections" -- that would be because the provider hasn't been paid and the provider is suing them and sending them to collections, right, sir?
MS. REAGAN: Object to form. Foundation.
MR. WILHELM: Go ahead.
**THE WITNESS: It would indicate the provider has not recorded payment; that's correct.**
MR. WILHELM: Okay. I see. I see what you're trying to do here, but if --
MS. REAGAN: Object to --
BY MR. WILHELM:
Q. If they're going to collections, the provider believes it hasn't been paid yet, correct?
MS. REAGAN: Object to form and foundation. I'll instruct the witness not to answer on the basis of the Fifth Amendment



privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. Who was the author of this dialogue and the FAQs?
MS. REAGAN: Object to form and foundation.
MR. WILHELM: Go ahead, sir.
**THE WITNESS: It appears to have come from Sheila Autry.**
BY MR. WILHELM:
Q. Who was the author, sir?
MS. REAGAN: Object to form and foundation. Asked and answered.
**THE WITNESS: I do not know.**
BY MR. WILHELM:
Q. At the bottom -- is it possible that you participated in the authorship of this document, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness to not answer the question and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I exercise my right under the Fifth**

Page 237

**Amendment to not answer that question.**
BY MR. WILHELM:
Q. In fact, at the bottom it says -- with three stars -- "It is really important that the name of Ciena or Ciena Healthcare Management not be used when talking to providers. If a provider is calling, we really want to try and provide them with as little information as possible," right, sir?
MS. REAGAN: Object to form and foundation and same instruction.
**THE WITNESS: Based upon the advice of counsel, I exercise my rights under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. When Sheila sent you this document, she sent it to both you and Dave Obermeyer, right, sir?
**A. Yes, sir; that's what it says.**
Q. To your knowledge, did Dave Obermeyer place an objection to any of the content or tone of this dialogue or the FAQs that followed it?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I don't recall.**
BY MR. WILHELM:
Q. So to your knowledge, did you object to the tone or form or content of the dialogues or the FAQs that

Page 238

followed it?
MS. REAGAN: Object to form and foundation and same instruction to assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. When she says "the examiners" on line 2, who does she mean by that, please?
**A. The benefit advisors that process the claims.**
Q. The last sentence there, Sheila says to you and Mr. Obermeyer, "The provider unit ladies at least need that as an out to get the provider off the phone." Do you see where she says that?
**A. I see that; yes, sir.**
Q. Did you agree with that statement at the time?
MS. REAGAN: Object to form. I'll instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
(Marked for identification: Deposition Exhibit No. 17.)

Page 239

MR. WILHELM: I'm handing you the next exhibit, which is going to be Exhibit 17. Let me ask you to take a look at that document and let me know when you're ready. And again, the attachment here is being marked confidential under the anticipated protective order.
MS. REAGAN: Agreed.
**THE WITNESS: Yes, sir.**
MR. WILHELM: At least the attachment is, not the first page. So the question is -- and by the way, we may end up just redacting PHI. I don't think that whole attachment is confidential. I think that the name of the patient is and should be redacted appropriately, but the rest is not.
BY MR. WILHELM:
Q. With respect to this -- have you ever seen this document before, sir?
**A. Not that I recall.**
Q. All right. It's from Tonya Dorsey, the Ciena account manager at the time, right, sir?
**A. Yes, sir.**
Q. To Dave Obermeyer, your CFO at Group Resources, right?
**A. At the time; yes, sir.**
Q. It says, "Dixon EOB," and attached is an

Page 240

explanation of benefits, right, sir?
**A. Yes, sir.**
Q. That's what an -- EOB stands for explanation of benefits, right, sir?
**A. Correct.**
Q. And do you know why Tonya is asking Dave Obermeyer if this check has cleared?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I do not.**
BY MR. WILHELM:
Q. Do you know whether that check ever cleared?
MS. REAGAN: Object to form. Foundation. Instruct the client -- the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Did you know that Group Resources issued a bunch of checks that they represented to Ciena as having been made but in fact never reached their destination or never cleared?
MS. REAGAN: Object to form. Foundation. And instruct the witness not to answer and assert his Fifth Amendment privilege.

Page 241

**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**

(Marked for identification: Deposition Exhibit No. 18.)

BY MR. WILHELM:
Q. Exhibit 18. I'll ask you to take a look at this document and let me know when you're ready.
**A. Okay.**
Q. Do you recognize this document?
**A. It's an email from Sheila Autry to Dave Obermeyer and myself.**
Q. Attaching another EOB?
**A. Yes, sir.**
MR. WILHELM: Again, same as the last one with respect to redactions.
BY MR. WILHELM:
Q. And Mr. Willoughby, what is going on in this email chain, please?
MS. REAGAN: Object to form. And I will instruct the witness not to answer and assert his Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**

Page 242

BY MR. WILHELM:
Q. You can't even tell me what's going on in this email chain about getting a provider paid under an ERISA benefit plan?
MS. REAGAN: Object to form. Same instruction.
**THE WITNESS: Based on advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. I will ask you a more specific question and you can field this one if you're able. She says -- Sheila says to you, line 5 of the body of the top portion, she says, "Some people are nicer than others and it's only getting worse." What is she talking about there, sir?
MS. REAGAN: Object to form. Foundation. Same instruction.
**THE WITNESS: Based on advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
MS. REAGAN: Also, Paul, on confidential, I think that more than just the name needs to be redacted on these. Like account numbers, claim number, the nature of the service should also be

Page 243

redacted.
MR. WILHELM: We can talk about it after off the record.
MS. REAGAN: That's fine.
MR. WILHELM: I don't necessarily agree, but if it's PHI, I would agree, but I don't think the claim numbers are confidential.
**THE WITNESS: I would think provider name would be confidential if a person went to see a psychologist or oncologist and that was in the name.**
MR. WILHELM: We can talk about it after, but --
**THE WITNESS: Just my thought on that.**
MR. WILHELM: -- if the individual is named connecting to that provider, that would be one thing, but if it's just a provider, not necessarily.

(Marked for identification: Deposition Exhibit No. 19.)

BY MR. WILHELM:
Q. All right. The next one is 19. I'll ask you to take a look and let me know when you're ready.
Do you recognize this document, sir?
**A. I don't know that I've seen it before.**

Page 244

Q. Okay. So do you know why Dave is telling Sheila, "We should have never brought up what we did on Wednesday"? Do you know what they're referring to there?
MS. REAGAN: Object to form and foundation and instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**

(Marked for identification: Deposition Exhibit No. 20.)

BY MR. WILHELM:
Q. Next exhibit is 20. I'll ask you to take a look and let me know when you're ready.
Do you recognize this document, sir?
**A. Yes, sir.**
Q. All right. Cofinity was the provider network that you all were using for the Ciena plant at that time?
**A. And other plans; yes, sir.**
Q. Middle of the page, April 6, 2020, Sheila writes to you and Dave, "Andy, I received a status request from Cofinity related to checks over one year old." Do you see that?

Page 245

**A. Yes, sir.**
Q. Do you know what she's referring to there?
MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm going to assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. In fact, the next sentence says, "May I know where we are with this Ciena releases" -- I guess that means payment or check releases -- "because reissuing check" -- should be "checks," plural -- "exceeding one year affects the examiners and their workload?" Do you see that, sir?
MS. REAGAN: Object to form and foundation and instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on advice of counsel, I'm asserting my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And Ms. Autry then goes on to say, "I just checked" -- and she's the VP of claims and administration at that time for Group Resources, right, sir?

Page 246

**A. That is correct.**
Q. She says, "I just checked and have three, so I fear there are many." What is she referring to there, sir?
MS. REAGAN: Same objections and same instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Her last sentence says, "I'm asking so that I know how to do damage control on the inside," right, sir?
MS. REAGAN: Object to form and foundation. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer the question.**
MS. MORGAN: Can we break after that question, Paul?
BY MR. WILHELM:
Q. Do you know what damage control needs to be done -- needed to be done according to Ms. Autry?
MS. REAGAN: Same objection, same

Page 247

instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And very quickly, at the top you responded to Dave, not copying Sheila, and said, "Let's discuss in the morning and I will answer" -- meaning "I'll answer to Sheila" -- "and we'll come up with an answer between the two of us and instruct her as to how we want this to go," right, sir?
MS. REAGAN: Object to form. Misstates the email.
MR. WILHELM: No, it doesn't.
MS. REAGAN: And instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I assert my right under the Fifth Amendment to not answer that question.**
MR. WILHELM: We'll take a short break for Ms. Morgan's hearing and go off the record.
(Whereupon a break was taken from 2:02 p.m. to 2:48 p.m.)
MR. WILHELM: Back on the record after a short break for lunch.

Page 248

BY MR. WILHELM:
Q. Mr. Willoughby, during the lunch period, did you review any documents?
**A. I did not.**
Q. Did you speak to anyone other than your counsel?
**A. My wife.**
Q. Okay. What did you guys talk about?
**A. She just asked how the day was going, I asked how she was feeling, what time my flight was.**
Q. Anything else?
**A. No, sir.**
Q. All right. I asked you earlier about, I think, real estate, but do you own any land, sir, other than the home -- other than the land on which your home is built?
**A. No, sir.**
Q. Do you have any interest in any land?
**A. I do not.**
Q. Okay. Are you familiar that -- are you familiar with the fact that Obermeyer bought a piece of property in 2019 from Sheila Autry?
**A. Yes, sir.**
Q. And he paid with a Group Resources check?
**A. I found that out after fact; yes, sir.**
Q. Did you know that he told her at the time that he

Page 257

Q. At all times?
**A. Yes, sir.**
Q. How about Sheila Autry, was she involved in generating check registers?
**A. No, sir.**
Q. So just Dave and who at that time?
MS. REAGAN: Object to form. Go ahead.
**THE WITNESS: Most recently, Chelsea Autry.**
MR. WILHELM: Okay.
**THE WITNESS: There were others in back-up roles for that.**
BY MR. WILHELM:
Q. Before her, who was it?
**A. Kelie West, I believe.**
Q. Who else?
**A. Amelia Vega. I'm not sure prior to that. That goes back three or four years.**
Q. Okay. Are you familiar with how exactly Dave Obermeyer did prepare the check registers or generate the check registers with the assistance of others or by himself?
**A. I don't know that he generated the check registers. Others generated them that worked for him.**
Q. Under his direction?

Page 258

**A. Under his direction.**
Q. Okay. But are you familiar with instructions he may have given to those people about the check registers?
**A. No, sir.**
Q. Are you familiar with what the plan was with respect to the check registers and how they would be presented to the clients?
MS. REAGAN: Object to form. Asked and answered.
**THE WITNESS: No, sir.**
BY MR. WILHELM:
Q. Who is familiar with what I just said?
**A. Mr. Obermeyer would be, I believe.**
Q. Anybody else?
**A. I don't know.**
Q. The women that he supervised?
**A. Possibly.**
Q. Anybody else, as far as you know?
**A. No, sir, I don't know of anyone else.**
(Marked for identification: Deposition Exhibit No. 22.)
BY MR. WILHELM:
Q. Okay. I'll hand you what's been marked as Exhibit 22. Do you recognize this document, sir?

Page 259

**A. It's an email from Sheila Autry to myself, dated May 4, 2020.**
Q. Okay. Would you agree there's a number of emails here on the chain and there's an exchange back and forth; fair to say?
**A. Yes, sir.**
Q. So down below, from Denise Bresky to Sheila Autry -- and Denise was in what role, please?
**A. Provider services.**
Q. For Group Resources, right?
**A. Yes.**
Q. She says "Sheila" -- at the bottom of the page, "Sheila, I had a caller" -- maybe that's "a call" -- "regarding Ciena claims over one year. She and I had spoken many times. She is done with me. LOL" -- laugh out loud. "She would like a call from the president regarding these claims." Do you see that, sir?
**A. Yes, sir.**
Q. What was that referring to, sir?
MS. REAGAN: Object to form and foundation and instruct the witness to not answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my Fifth Amendment right to not answer that question.**

Page 260

BY MR. WILHELM:
Q. All right. Then you say -- Sheila then responds to -- Sheila forwards the email request from Denise to you and Dave Obermeyer, saying, "Andy, I've asked Tonya to put the checks for this tax ID on the immediate release list." So you guys had an immediate release list that you and Obermeyer knew about, sir?
MS. REAGAN: Same objection and same instruction.
**THE WITNESS: Based on the advice of counsel, I will exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Now sir, doesn't that mean there were unpaid claims that once providers started complaining loud enough to try to shut them up or buy more time, you would place these unpaid claims on an immediate release list?
MS. REAGAN: I'm going to object to the form and foundation and characterization of Mr. Wilhelm's -- the characterization of this email that Mr. Wilhelm has put on this and instruct the

Page 261

witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. Sheila says, "I will attempt to call her back, but I may not be good enough. These calls are coming more frequently. There has to be something we can do to persuade the group to release the old checks. Quite frankly, this is getting old."
What's she referring to, sir?
MS. REAGAN: Object to form and foundation and same instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my right under the Fifth Amendment to not answer these questions.**
BY MR. WILHELM:
Q. In fact, you knew exactly what she was referring to, didn't you, sir?
MS. REAGAN: Object to form. Argumentative. And same instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my Fifth Amendment right to**

Page 262

**not answer this question.**
BY MR. WILHELM:
Q. While it's clear from the email, sir, you said to Sheila in writing, copying Dave Obermeyer, taking responsibility and charge because you knew exactly what was going on and you said, "I'll be glad to call her tomorrow," right, sir?
MS. REAGAN: Object to form. Argumentative. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'm exercising my Fifth Amendment right to not answer this question.**
(Marked for identification: Deposition Exhibit No. 23.)
BY MR. WILHELM:
Q. I'm handing you our next exhibit, which is 23. I'll ask you to take a look and let me know when you're ready.
**A. Okay.**
Q. Okay. This email -- you recognize this document, sir?
**A. It's an email from Sheila Autry to myself and Dave Obermeyer.**
Q. All right. Dated January 27, 2022, right?
**A. Yes, sir.**

Page 263

Q. And who is Robin that's referenced in here in the subject line and the first line?
**A. Robin Jakucenis.**
Q. One of your employees at the time?
**A. Yes, sir.**
Q. Where is she nowadays?
**A. I don't know.**
Q. Did she separate employment?
**A. Yes, sir.**
Q. About when, please?
**A. End of September.**
Q. Of this year?
**A. Yes, sir.**
Q. How do you spell her last name?
**A. J-A-K-U-C-E-N-I-S.**
Q. Do you know where she went to work?
**A. I don't believe she has yet.**
Q. Okay. Where does she live, please?
**A. I don't know.**
Q. Georgia?
**A. Yes, sir.**
Q. Was she in the Duluth office?
**A. Yes.**
Q. Is she married?
**A. Yes.**

Page 264

Q. About how old is she? Estimate. I know that's a dangerous question.
MS. REAGAN: Object to form and foundation, just for the sake of Robin.
MR. WILHELM: Asking a woman's age --
**THE WITNESS: Fifties.**
MR. WILHELM: Just approximately.
**THE WITNESS: In her 50s, I believe.**
BY MR. WILHELM:
Q. So it says here -- what's this email about?
MS. REAGAN: Object to form. Foundation. And I'll instruct the witness to not answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on advice of counsel, I will exercise my right under the Fifth Amendment to not answer this question.**
BY MR. WILHELM:
Q. So you're exercising the Fifth Amendment, to be clear, about what Sheila Autry is stating to you in an email from 2022, sir?
MS. REAGAN: Object to form. Same instruction.
**THE WITNESS: I'm exercising my right under the Fifth Amendment, based on the advice of counsel, to not answer this question.**

Page 265

BY MR. WILHELM:
Q. In fact, Ms. Autry tells you and Mr. Obermeyer what she told Robin Jakucenis. She says, "I told her that Andy" -- Andy Willoughby, that is -- "had been working with Ciena and they had a plan to resolve their issues, but it would take some time. I let her know that I would help her with the calls for the ones she can no longer handle. Then I asked if more money would help her decide and she said that always helps," right, sir?
**A. That is what it reads.**
Q. What calls did she need help with?
MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. In the middle paragraph, it says -- this is stuff you knew about, sir, because it says, "Both of you know" -- not just about Obermeyer, but you too. Knew that Sheila had "struggled to keep people in that department and the sole reason was Ciena." And then she goes on to say it's the providers who

Page 266

are not getting paid is the issue. She says, "These providers back you into a wall and it's hard to get out of," right, sir?
MS. REAGAN: Object to form and foundation. Same instruction.
**THE WITNESS: Based on advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Sheila gets a little bit terse here because she's kind of defending her employee and her own dignity, if you will, and she says, "I can't blame them because I would be on someone's ass that owed me money since 2019," which was three years prior, right, sir?
MS. REAGAN: Object to form and foundation. Same instruction.
**THE WITNESS: Based on advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. So in conclusion, she says, "I didn't mean to make any promises that I couldn't back up" -- which is sort of interesting -- "but I figure that both of you would agree that a bit more money would be

Page 267

better than my having to take every call that wanted to speak with a supervisor."
So did you agree with paying Robin Jakucenis more money to sort of appease her having to deal with all these unpaid claims, sir?
MS. REAGAN: Object to form and foundation. Same instruction.
**THE WITNESS: Based on advice of counsel, I exercise my right under the Fifth Amendment to not answer that question.**
(Marked for identification: Deposition Exhibit No. 24.)
BY MR. WILHELM:
Q. I'll hand you what's been marked as Exhibit 24 and ask you to take a look and let me know when you're ready.
**A. Yes, sir.**
Q. Do you recognize this document, sir?
**A. It's an email from Daniel Barnes to Dave Obermeyer.**
Q. Okay. And below that, Sheila Autry and Janie Jackson forwarding to Dave Obermeyer and then forwarding to Daniel Barnes at First Horizon, right, sir?
**A. Yes.**
Q. So here Sheila is asking Janie about a check that

Page 268

for some reason provider is stating it didn't receive. It's check No. 238232 -- it's at the bottom of page 2 -- for the amount of $617.52, right, sir?
**A. That's what it says; yes, sir.**
Q. All right. Do you know anything about checks that were allegedly issued but didn't clear and a pattern of that happening, sir?
MS. REAGAN: Object to form. Foundation. I'll instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my rights under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And then above, Janie goes ahead and forwards it to -- she forwards Sheila's inquiry to Dave Obermeyer, your CFO. "Can you have your contact at the bank look into this one, please?" et cetera, right, sir?
**A. That's correct.**
Q. And then Mr. Obermeyer provides the account number, last four digits, right?
**A. Yes.**
Q. And in fact, just for reference, I'll show you a

Page 269

document I'll make an exhibit shortly, but this is the Ciena FBO account that he's referencing, right, sir?
**A. Yes, sir.**
Q. Ending in 0793, right?
**A. Yes, sir.**
MR. WILHELM: And for the record, I'm showing the witness a bank statement on business checking from First Horizon Bank, statement date 2-29-24.
BY MR. WILHELM:
Q. Mr. Barnes responds to Mr. Obermeyer, "This is the only item that came back with that check number, but it's with different amounts." Do you know what that's all about, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
(Marked for identification:
Deposition Exhibit No. 25.)
BY MR. WILHELM:
Q. I'm handing you what's been marked as Exhibit 25.

Page 270

I'll ask you to take a look and let me know when you're ready.
Do you recognize this document, sir?
**A. Yes, sir.**
Q. You recognize the questions and answers or you might call it a FAQ pamphlet that's two pages at the end of this exhibit?
**A. Yes, sir, I do.**
Q. In fact, at the top of that pamphlet it says it's from you, Andy Willoughby, right?
**A. Yes, sir, it does.**
Q. Dated July 24, correct?
**A. No, sir.**
Q. Excuse me. July 2024. I misspoke.
**A. That is correct, July 2024.**
Q. And this is emailed to Ciena on July 29, 2024, correct?
**A. Yes, sir.**
Q. From you, correct?
**A. Yes, sir.**
Q. At the top of that brochure, the first thing out of the -- first thing on the top of the brochure says, "In the spirit of full transparency," right, sir?
**A. Yes, sir.**
Q. Were you fully transparent with Ciena at this time

Page 271

on July 29, 2024?
MS. REAGAN: Object to form. Instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on advice of counsel, I assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. On the second page of that document, second paragraph, "Where does this investigation stand?" It says, "The investigation is ongoing and the situation remains fluid. To protect the integrity of this investigation, we have been advised to avoid discussing details at this time."
Who advised you to not tell clients the details that you knew about, sir?
MS. REAGAN: Object to form. Foundation. I'll caution the witness to not reveal attorney-client privilege and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right and not answer that question at this time.**
BY MR. WILHELM:
Q. And then, "What are you doing to prevent this from

Page 272

happening again?" This is what you wrote here, which you presented to clients. You said, "Working with our CPAs and legal team, we are putting processes and procedures in place to help ensure we're never in this position again," right, sir?
MS. REAGAN: Object to form. Same instruction.
**THE WITNESS: Based on advice of counsel, I'm exercising my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. In fact, what you did plan was a looming bankruptcy that you weren't telling anybody about, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness to assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. A bankruptcy that you had already put together and waited until Ciena sued you and filed the bankruptcy three days later just moments before a TRO deadline was due, right, sir?
MS. REAGAN: Object to form and to the

extent it misstates and mischaracterizes the testimony or evidence in this case. I'll instruct the witness not to answer and assert the Fifth Amendment privilege.

**THE WITNESS: Based on the advice of counsel, I'll exercise my Fifth Amendment right to not answer that question.**

(Marked for identification: Deposition Exhibit No. 26.)

BY MR. WILHELM:

Q. I'll hand you what's been marked as our next exhibit, 26. I'll ask you to look at this and let me know when you're ready.

**A. Yes, sir.**

Q. Do you recognize this document?

**A. It's collateral from Group Resources from either our website or sales brochure.**

Q. Okay. Were you involved in the drafting of this document or reviewing it?

**A. Yes, sir.**

Q. And do you believe it to be true and accurate from your standpoint?

**A. I'm sorry, the last part of your question was? I'm sorry, I was reading it.**

Q. Do you believe it to be true and accurate from your



standpoint?

**A. Yes, sir, that was our goals, absolutely.**

Q. And just for the record, your website -- I took the liberty of just pulling that up. It's still posted on your website, right, sir? And feel free to take a peek to make sure it's the same.

**A. Yes, sir.**

MR. WILHELM: For the record, that's grouppresources.com and it is under the tab "Medical and Dental Claims Administration." It brings up this document. Okay?

**THE WITNESS: Okay.**

MS. REAGAN: What was the tab?

MR. WILHELM: "Medical and Dental Claims Administration.

(Marked for identification: Deposition Exhibit No. 27.)

BY MR. WILHELM:

Q. All right. I'll have this marked as our next exhibit, 27.

All right. Do you recognize this document, sir?

**A. No, sir, I do not.**

Q. You recognize the bank, First Horizon, right?

**A. Yes.**



Q. The company name, Obermeyer Wealth Management LLC?

**A. I've seen that name; yes, sir.**

Q. What is that?

**A. It was a company established by Dave Obermeyer.**

Q. Okay. And that address, 2120 Chicopee Mill Road, that was a remote location at which he had his Group Resources monitors and did work there on behalf of Group Resources, right, sir?

MS. REAGAN: Object to form and foundation.

**THE WITNESS: It was a location from which he worked occasionally; yes, sir.**

BY MR. WILHELM:

Q. On behalf of Group Resources?

**A. When he was remote; yes, sir.**

Q. And you knew about that, right, sir?

MS. REAGAN: Object to form.

**THE WITNESS: That he was working?**

MR. WILHELM: That he was working there on Chicopee Mill Road.

**THE WITNESS: Yes, sir.**

BY MR. WILHELM:

Q. For how long did he do that, like when did he start working there, about what month?

**A. I don't recall.**



MS. REAGAN: Object to form and foundation.

BY MR. WILHELM:

Q. Was it pre-COVID?

**A. I don't believe so.**

Q. So more recent, like 2023 perhaps or 2022?

MS. REAGAN: Object to form. Asked and answered.

**THE WITNESS: I don't recall.**

BY MR. WILHELM:

Q. You don't keep track of when your CFO starts working in an industrial converted space from which he allegedly stole 8.1 million from you and unknown amounts from clients?

MS. REAGAN: Object to form. Foundation. Argumentative, to the extent it mischaracterizes testimony in evidence in this case.

**THE WITNESS: No, sir; I don't recall a date.**

BY MR. WILHELM:

Q. Back to the exhibit, that account number ending in 5259, you've seen that account number before, as far as you know?

**A. It's not a Group Resources account; I haven't seen it there.**

Page 277

Q. How do you know that?
**A. Because it does not appear in any list of Group Resources accounts provided by First Horizon or in the treasury management system.**
Q. How do you know that off the top of your head? You represented to us you have over 130 accounts associated with Group Resources. How do you know that 5259 has never been associated with Group Resources?
**A. There's not an account in that entire list that has Obermeyer's name in it.**
Q. That's just a list that you chose to provide.
MS. REAGAN: Object to form.
MR. WILHELM: You've made that assertion.
MS. REAGAN: Object to form. Argumentative.
**THE WITNESS: In the treasury management system I have available from First Horizon, there is no account with Obermeyer's name available to it. That treasury management is from Group Resources' account.**
BY MR. WILHELM:
Q. As of what date, sir, are you referring to?
**A. March 2024, when I obtained access.**
Q. How do you know that that four-digit account is not

Page 278

in the list of 130? You had a hard time remembering earlier today how many times you've been deposed, a number of certain transactions and so forth, and you can remember a four-digit code out of a list of 130 account numbers?
MS. REAGAN: Object to form to the extent it misstates prior testimony of the witness and argumentative.
**THE WITNESS: I know that the account name is not on that list of 130 account numbers and do not believe that it was ever listed under a -- that 5259 has ever appeared as an account number.**
BY MR. WILHELM:
Q. I'll hand you what's being marked -- or is Exhibit 11 and ask you to look at the middle of the page, the red highlights. It's an exhibit we looked at earlier.
**A. Uh-hum.**
Q. Read for me into the record the bottom of that list of overdraft accounts and the four digits, please.
**A. 5259.**
Q. 5259; is that right, sir?
**A. Yes, sir.**
MR. WILHELM: It looks like a perfect match.

Page 279

MS. REAGAN: Object to form and foundation. Argumentative. The witness was instructed not to answer questions with regard to this exhibit, asserting the Fifth Amendment privilege.
MR. WILHELM: So now you're invoking the Fifth on this?
**THE WITNESS: I do not --**
MS. REAGAN: Go ahead.
**THE WITNESS: I invoked it earlier on this document.**
MR. WILHELM: I'm just asking if this matches what's on that document, and it does. You already testified that it does.
MS. REAGAN: The documents speak for themselves. There's a "-5259" on Exhibit 11 and Exhibit 27 has a bank account number that ends in 5259.
BY MR. WILHELM:
Q. Is it your testimony, sir, that it's a different account?
**A. With regard to this document, I'm exercising my right under the Fifth Amendment to not answer the question.**
MR. WILHELM: For the record, the witness

Page 280

is referring to Exhibit 11.
(Marked for identification: Deposition Exhibit No. 28.)
MR. WILHELM: Let me hand you what's been marked as Exhibit 28. And I don't think it's as bad as it may seem, Mr. Willoughby.
Ms. Reagan, I think it's largely an attachment -- a couple of attachments or a package of attachments, so I just wanted to have you take a peek at this.
BY MR. WILHELM:
Q. After page 3 or 4 of this package, you'll see a cover sheet that says, "Intact Insurance - Management Liability - Primary," and it's a policy for Group Resources Acquisitions. Do you see that, sir?
**A. Yes, sir.**
Q. From you to -- this is an email on the cover, would you agree, from you to Dave Obermeyer, right, sir?
**A. Yes, sir.**
Q. Attaching at least four documents of a 2023 crime policy, a final policy that's indicated as D&O, and then a 2023 E&O primary policy package, do you see that, and then a 2023 cyber policy? Do you see all four of those, sir, on the attachments?

Page 281

**A. Yes, sir.**
Q. So in the email exchanges between you and Mr. Obermeyer, he's forwarding to you something from the account manager, Wanda Jackson; do you see that, sir?
**A. Yes, sir.**
Q. Mr. Obermeyer says to you on March 21, near the bottom of page 1, "I'm going through this to make changes accordingly. I am deleting Dallas. Can I delete Scottsdale as well?" He re-ups it to you on Friday the 24th and you respond to him on the 24th saying, "Thanks for sending that. It does make it easier to answer." Do you know what you're answering about there?
**A. Yes, sir. Epic was brokers on certain of our lines of coverages and was asking us about who wanted other coverage.**
Q. I see. So you said, "I know the D&O and employment practices are covered through the D&O policy. We have a separate cyber policy with DECUS." Do you see that?
**A. Uh-hum.**
Q. "We have a crime policy through Intact that I think covers all of that," right, sir?
**A. Yes, sir.**

Page 282

Q. And then you say, "I don't know about fiduciary liability though. It is not specifically covered by the crime policy."
What ended up being your response regarding fiduciary liability? Did you end up getting a policy, if you know?
**A. I don't recall.**
Q. Maybe you did, maybe you didn't?
**A. I don't recall.**
Q. Then you say to Mr. Obermeyer, "And I don't see it in the D&O. I've included all policies. Will you see if you see it anywhere?" You're referring to fiduciary liability, right, sir?
**A. I believe so; yes, sir.**
Q. Do you remember if he ever responded?
**A. I don't recall.**
Q. This is an exhibit that I'm not going to re-enter because it's already -- I will state for the record it's already Exhibit 6 to your deposition, I believe -- and if our court reporter can please confirm that at her convenience. We can correct the record if necessary, but I believe it's Exhibit 6.
On this document, because of the length of -- it's about 491 pages -- actually it is 491,

Page 283

you'll see in the branding at the bottom. I'll ask if counsel can look along with you as needed. I think we can go by date here. And for the record again, this is texts that you produced between yourself and Mr. Obermeyer and I wanted to ask you about a couple of them at least.
All right. So let's go to page 430. I'm sorry, page 423. There's a note from -- hang on one second.
I'm assuming the blue bubbles are from you and the gray are from Mr. Obermeyer in this entire document, right, sir?
**A. Yes, sir; I believe that's the case.**
Q. Okay. In the middle, on August 3rd, you say to Mr. Obermeyer, "116,000 from Ciena came in." $116,000 from Ciena came in. Do you know what that's referring to, sir?
MS. REAGAN: Object to form and foundation and instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And you respond -- you then followed up and said,

Page 284

"Can I send the 146,000 to Script Care for delivery tomorrow?" This is like four minutes after you sent him the money about -- the text about the money coming in from Ciena, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Okay. Page 429, sir. Bottom of the page.
By the way, how was your relationship with Tom Byrd at this time in August of 2023?
MS. REAGAN: Object to form.
**THE WITNESS: It was okay. It was okay.**
BY MR. WILHELM:
Q. It had been better in the past?
MS. REAGAN: Is there a question? I didn't hear a question.
MR. WILHELM: It had been better in the past?
MS. REAGAN: Object to form.
**THE WITNESS: Yes, sir.**
BY MR. WILHELM:
Q. Any particular reason why it had declined?

Page 285

A. **Just the passage of time. He had sold the business five years prior.**
Q. And he tried to continue to meddle in it from your standpoint?
MS. REAGAN: Object to form.
BY MR. WILHELM:
Q. He tried to show up to meetings that he didn't necessarily need to be at, right, sir?
MS. REAGAN: Object to form.
**THE WITNESS: He wanted to be more involved than he was and should be.**
BY MR. WILHELM:
Q. Okay. He still had a sense that he ran the show?
MS. REAGAN: Object to form and foundation.
**THE WITNESS: I can't speak to that, but...**
MR. WILHELM: At the bottom of this page --
MS. REAGAN: Which page are we on? I'm sorry.
MR. WILHELM: 429.
MS. REAGAN: Okay.
BY MR. WILHELM:
Q. "I sent you a note on the taxes for TB." That's

Page 286

Thomas Byrd, Thomas S. Byrd, right, sir?
A. **Yes, sir.**
Q. And then below that, you tell him, "Three Ciena checks totaling $154,000 came in." Do you see that, sir?
A. **Yes.**
Q. What was the purpose in your telling Mr. Obermeyer that at that time?
MS. REAGAN: Object to form and instruct the witness to assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. 433, September 7, at the top of the page. "$147,000 from Ciena. I'm going to release the $114,000 file I have been holding, okay?" Is that what you wrote, sir?
A. **That's what it says there; yes, sir.**
Q. Okay. Why were you telling Mr. Obermeyer that at the time?
MS. REAGAN: Object to form and instruct the witness to assert the Fifth Amendment.
**THE WITNESS: Based on advice of counsel, I exercise my right under the Fifth Amendment to**

Page 287

**not answer that question.**
BY MR. WILHELM:
Q. And then Obermeyer asks you, "Okay. Is more coming tomorrow?" You then respond, "Yes, I think 100 or 150." You mean thousand, correct, sir?
MS. REAGAN: Same objection, same instruction.
**THE WITNESS: Based on the advice of counsel, I will exercise my Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Well, in fact, the next bubble says, "Received $102,000 from Ciena just now," correct?
A. **That is what it says.**
Q. All right. Why were you telling Obermeyer about those amounts coming in at that time, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Next page, September 14, you asked Obermeyer, second bubble, "Have we paid the rent yet for September? Phil has emailed me about it," right,

Page 288

sir?
A. **Yes, sir.**
Q. Who is Phil in that bubble?
A. **Phil Weener.**
Q. Why is Phil Weener emailing you about paying rent?
A. **At that point he --**
MS. REAGAN: I'll just caution you not to reveal attorney-client privileged communications.
**THE WITNESS: Yes, ma'am.**
MS. REAGAN: To the extent that you can answer the question without doing that, please proceed.
**THE WITNESS: Thank you. He was part of the ownership group of the building that -- the company we leased the building from at that point.**
BY MR. WILHELM:
Q. Did that ever change?
A. **Yes.**
Q. When? Because this was just a year ago.
A. **They sold at some point in 2024.**
Q. I'm sorry, what?
A. **It sold at some point in 2024.**
Q. That group sold the building?
A. **Yes, sir.**

Page 293

**THE WITNESS: No, sir; I did not.**
BY MR. WILHELM:
Q. 443, four bubbles down, "$160,000 from Ciena came in. I will be releasing against that this afternoon," right, sir?
**A. That's what it says; yes, sir.**
Q. And this is on September 29, 2023. Did this mean you would be releasing a variety of, up until that point, unpaid claims against that money that just came in that afternoon?
MS. REAGAN: Object to form. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Next page, middle of the page, October 5, "$169,000 came in from Ciena. Octavia is off half day and Janie is remote. Is there a way I can deposit it or can it wait until tomorrow?" right, sir?
**A. Yes, sir.**
Q. These are plan funds, right, sir?
MS. REAGAN: Object to form and instruct the witness to assert the Fifth.
**THE WITNESS: Based on the advice of**

Page 294

**counsel, I assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Dave responds to you, "It can wait until tomorrow," right, sir?
**A. That's what it says.**
Q. October 12, page 445, you write to Obermeyer, "Hope your day is going well. Ignoring the money received yesterday, I have $117,000 to release against the $179,000" -- and I'm paraphrasing based on context -- "received on Tuesday. Is that okay?" He responds, "Okay," correct?
**A. That is what it says.**
Q. All right. And why are you telling Obermeyer about the money received yesterday and then $179,000 received on Tuesday at that time?
MS. REAGAN: Object to form and instruct the witness to assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Those are plan funds, right, sir?
MS. REAGAN: Same objection. Same

Page 295

instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right to not answer that question under the Fifth Amendment.**
BY MR. WILHELM:
Q. And you've determined at this time that you have $117,000 to release against unpaid plan claims at that time, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And then you asked Obermeyer for his approval or his signoff and he gave you the approval or the signoff, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Page 448, October 13, 2023, "The pruning work looks nice." And then below that -- this is from you to

Page 296

Obermeyer.
**A. 448?**
Q. 448.
**A. Okay. Bottom. Sorry.**
Q. At the bottom.
Below that, you write to Obermeyer, "We received 101" -- I assume $101,000 -- "from Ciena today. I'll send a file with $117,000 to Donna after 11:00 on Monday." That's what you wrote, right, sir?
**A. That's what it says; yes, sir.**
Q. And those were plan funds, right, sir?
MS. REAGAN: Object to form and instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'm asserting my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And the $117,000 at that time was payment to be issued for, until that time, unpaid claims, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of**

Page 297

**counsel, I'll assert my right under the Fifth**
**Amendment to not answer that question.**
BY MR. WILHELM:
Q. Page 455, October 26 -- I'll combine these. "$102,000 from Ciena, gave to Octavia." So you gave that money to Octavia, right, sir?
MS. REAGAN: Object to form and instruct the witness not to answer and assert his Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'll assert my rights under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Those were plan funds, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. The next day, "$203,000 from Ciena today," right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of**

Page 298

**counsel, I'll assert my right to not answer that question and exercise my Fifth Amendment right.**
BY MR. WILHELM:
Q. You asked Obermeyer in that same text, "How is South Beach?" right?
**A. Yes, sir.**
Q. He sent you a picture on the next page; do you see? What was he doing at South Beach at that time, sir?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I believe he was on vacation.**
BY MR. WILHELM:
Q. How much did he make per year in salary?
**A. I believe 110,000.**
Q. Did he take a lot of vacations in the last five years?
**A. Not particularly; no, sir.**
Q. Would you actually know if he did though?
**A. I would know what he told me only.**
Q. On 459, November 2, 2023, picture of what appears to be a jet-ski, a watercraft, whatever you want to call it. What's the best name for that?
**A. Jet-ski.**
Q. WaveRunner?

Page 299

**A. Jet-ski.**
Q. Yeah. So that's from Obermeyer to you, says, "One toy off the lake." Do you know how he paid for the jet-ski?
**A. I did not at that time.**
Q. Okay. Do you know now?
**A. Yes, sir.**
Q. And how was that?
**A. He was making payments for it using Group Resources funds.**
Q. 461. There's a Ford truck and what appears to be a pontoon recreational boat. Whose vehicles are those?
**A. Those are Dave Obermeyer's.**
Q. Did you know how he paid for those then?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I did not at the time.**
BY MR. WILHELM:
Q. Do you know now?
**A. I believe he paid for some payments for both of those vehicles with Group Resources funds.**
Q. Do you know how much total he spent on vehicles out of Group Resources' money or client money?
**A. I do not.**
Q. 464, towards the top. November 13, 2023. "On the

Page 300

Ciena front" -- this is you to Obermeyer -- "so far I've released 95 of the 400 released last week." Is that dollars or claims?
MS. REAGAN: Object to form and instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment not to answer that question.**
BY MR. WILHELM:
Q. "We'll be sending another 75 to Donna today." That's Donna who, please?
**A. Donna Chambers.**
Q. Who is she, please?
**A. She worked at Group Resources.**
Q. Okay. And what did that -- what was her job?
**A. She was involved in several areas with specific reimbursements, claim reimbursements and releasing of checks.**
Q. Okay. Including for Ciena?
**A. For many clients; yes, sir.**
Q. Including Ciena?
MS. REAGAN: Object to form. Instruct the witness not to answer and assert the Fifth Amendment.

Page 301

**THE WITNESS: Based on the advice of counsel, I will not answer that question, asserting my Fifth Amendment right.**
BY MR. WILHELM:
Q. "Need to send 103" -- Is that claims or thousand dollars? -- "to SCL tomorrow or Wednesday"?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right not to answer that question.**
BY MR. WILHELM:
Q. You say, "Have another 60 after that, but at holding for the next receipt. Will that work?" And Obermeyer responds, "More or less," right, sir?
**A. That is what it says.**
Q. And then below, you say, "Substitute 'am' for 'at' in the last sentence," so you meant to say, "But am holding for the next receipt," correct, sir?
**A. That is what that says; yes, sir.**
Q. Page 465, two bubbles from the top, second bubble says, "I have spoken with Kaplin this morning." That's Jeff Kaplin, your accountant?
**A. Yes, sir.**

Page 302

Q. He says, "I was just" -- Obermeyer says, "I was just fixing to email him in detail what that was and how we plan to use that money." Do you know what he's referring to there?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll exercise my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Next page, 466, please. In the middle of the page there's an image from Obermeyer of what appears to be a computer monitor and a list of files pulled up in the middle of the screen. Do you see that, sir?
**A. Yes, sir.**
Q. And is this Dave Obermeyer's remote location with nice wood floors or luxury vinyl and old industrial brick around it?
MS. REAGAN: Object to form. Foundation.
MR. WILHELM: Go ahead.
**THE WITNESS: I can't speak to the office flooring or walls, but that is apparently a picture of the computer in his office.**

Page 303

BY MR. WILHELM:
Q. Would you agree with me those are bricks as to the walls?
**A. They appear to be bricks; yes, sir.**
Q. And the floor is a wood or wood alternative?
**A. I can't --**
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I can't tell from this photo what it is.**
BY MR. WILHELM:
Q. It's not carpet, correct?
**A. I don't know.**
Q. Okay.
**A. I don't know.**
Q. Somebody with better eyesight can probably see that?
**A. Maybe.**
Q. But this is his Group Resources computer monitor, right, sir?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: Yes, sir.**
BY MR. WILHELM:
Q. All right. And in fact, he says, "Got my monitor working. I may buy myself one for the office and give up the two screens." So he means like his

Page 304

other office at Duluth at Group Resources?
**A. Yes, sir.**
MR. WILHELM: Okay.
MS. REAGAN: Object to form and foundation.
BY MR. WILHELM:
Q. Page 468, top of the text chain, December 11, 2023, "There should be $800,000 coming from Ciena tomorrow. We've been asked to hold depositing it until December 15, please," and Obermeyer says, "Okay," right?
**A. Yes, sir.**
Q. Do you understand why you're telling Obermeyer about that $800,000 at that time, sir?
MS. REAGAN: Object to form and instruct the witness to assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And in fact, Obermeyer replies to you saying, "We just got in about $336,000" -- and I'm correcting a typo here -- "Should we go and deposit that?" And you respond, "Yes, please," right, sir?
MS. REAGAN: Object to form. Instruct

Page 305

the witness not to answer based on the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Was that Ciena plan money, sir?
MS. REAGAN: Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
(Discussion off the record.)
BY MR. WILHELM:
Q. Up to February 8, 2024, sir, page 479. Third bubble down, "I'm glad we've seen some money coming from Ciena. I have one big check, $152,431.22, that I've got to send on Monday. That almost eats up all of Tuesday's receipts." Do you see that, sir?
**A. Yes, sir.**
Q. What's the one big check that you've got to send on Monday for, sir?
MS. REAGAN: Object to form and instruct the witness not to answer and assert the Fifth Amendment.

Page 306

**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And when you say you sent Donna a re-issue file containing that plus $30,000 or so, or you're about to send that tomorrow, what were you referring to, sir, a bunch of unpaid claims on the Ciena plan?
MS. REAGAN: Object to form. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And then Obermeyer responds, "Okay," right, sir?
MS. REAGAN: Object to form. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Did you and Mr. Obermeyer submit for employee retention tax credits at any time in the last five years or so?
**A. Yes, sir, we did.**

Page 307

Q. Is this in connection with COVID-related legislation or benefits?
**A. Yes, sir.**
Q. That were available to certain employers?
**A. Yes, sir.**
Q. Okay. What's the status of those requested credits or payments that might come into Group Resources from the IRS?
**A. Nothing has been received. As of September 30, it's still pending, to the best of my knowledge.**
Q. So that's a receivable that if it's approved and issued, you all might be receiving, correct?
**A. Yes, sir.**
Q. Okay. Do you know the amount total?
**A. I do not.**
Q. Is it above a million dollars?
**A. I do not believe so.**
Q. Above 500,000?
**A. In the aggregate, possibly.**
Q. Possibly between 500,000 and a million?
**A. Yes, sir.**
Q. Covering how many years?
**A. Whatever the appropriate period was for the filing. I don't recall specifically. I wasn't directly involved in it.**

Page 308

Q. Around 2020 to 2023 or 2022 maybe?
MS. REAGAN: Object to form.
MR. WILHELM: In that general timeframe?
**THE WITNESS: There was some period post-COVID that they were applicable to apply for.**
BY MR. WILHELM:
Q. Okay. To your knowledge, did Group Resources apply for every eligible quarter that it could have?
**A. I believe so.**
Q. And who was involved in making those filings happen?
**A. Jorns & Associates.**
Q. What's the name?
**A. Jorns, J-O-R-N-S.**
Q. Not Kaplin?
**A. No, sir.**
Q. Not the -- is it Rosenthal Kaplin? What's the name of the firm?
**A. Rosenthal & Kaplin.**
Q. Okay. So that firm was not involved?
**A. No, sir, they were not.**
Q. Jorns. What's the rest of the name?
**A. And Associates, I believe.**
Q. Where are they located?
**A. Houston, I believe.**

Page 309

Q. Who introduced you to them?
**A. Dave Obermeyer.**
Q. Okay. Who was involved in the filings from Group Resources?
**A. Janie Jackson gathered information, David Obermeyer, and I believe I signed some forms as well.**
Q. Yeah. So you reviewed what was compiled and submitted, right?
**A. At some point in the process; yes, sir.**
(Marked for identification: Deposition Exhibit No. 29.)
MR. WILHELM: Let me hand you what's been marked as our next exhibit, 29. I'll ask you to take a look and let me know when you're ready.
**THE WITNESS: Can we take a second so I can get some Tylenol out of my bag?**
MR. WILHELM: Yes. Off the record.
(Discussion off the record.)
MR. WILHELM: Back on the record.
BY MR. WILHELM:
Q. Mr. Willoughby, do you recognize this document, sir?
**A. Yes, sir.**
Q. What is it?

Page 310

**A. It's a bank statement dated February 29, '24, for the Ciena account at First Horizon ending in 0793.**
Q. All right. And this is an FBO account which stands for "For the benefit of," right, sir?
**A. Yes, sir.**
Q. And ultimately that account is for the benefit of the plan participants and beneficiaries in that ERISA plan, right, sir?
**A. Yes, sir.**
Q. So this is an account ending in 0793, right?
**A. Yes, sir.**
MR. WILHELM: For the record, the PHI ought to be redacted pursuant to the anticipated protective order.
BY MR. WILHELM:
Q. I wanted to note something, Mr. Willoughby, with respect to the checks. I noticed there appears to be a consistent signature if you look into this, starting at page 10 of this bank statement with check detail. It looks like there's a consistent signature throughout. Whose signature is that, please?
**A. Thomas Byrd.**
Q. And that is an electronic signature on which authority was given to the check printer to have

Page 311

his signature on that?
**A. Yes, sir.**
Q. He didn't physically sign each one?
**A. No, sir.**
Q. Was he even involved in approving the signing of these on a specific basis or was it because he delegated authority through you and Mr. Obermeyer to do that?
**A. He had delegated authority when he owned the company prior to 2018 and remained as a signer on the account.**
Q. And that carried through?
**A. Yes, sir.**
Q. I want to refer you to page 3. Just to set this up, on the left column on page 3, there's various dates, not in sequence necessarily, there's check numbers and then there's amounts. And it says in the middle, in the gray, "Checks Paid Summary," right, sir?
**A. Yes, sir.**
Q. Above that on 2-29, an online transfer to checking 2243 for $35,000, do you know what that's about, sir?
MS. REAGAN: Object to form and instruct the witness not to answer and assert the Fifth

Page 312

Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer the question.**
MR. WILHELM: And with respect to -- I'm not necessarily agreeing with your assertion, but I understand what you're saying.
BY MR. WILHELM:
Q. February 13, page 1, online transfer to checking ending in 2278, right, sir? $45,000. Do you see that?
**A. I do see that.**
Q. Do you know what that is for, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Do you know what -- do you know what "Acquisitions Group Resources Premium" meant in a summary that you gave to Steve Miller at Ciena?
**A. That's the name on the checking account.**
Q. Do you know why $45,000 is being transferred out of this FBO account to Acquisitions GR Premium?

Page 313

MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. How about your deposit account, "Acquisitions GR Deposit," what was that account supposed to be?
MS. REAGAN: Object to form and foundation.
**THE WITNESS: That's the name of the account. I don't know specifically.**
BY MR. WILHELM:
Q. Didn't you testify earlier that that's the account into which you deposited all manner of things, including the insurance check -- the insurance checks that were for a million total?
**A. Do you have an account number associated with that?**
Q. I'm not going to tell you what it is. It's called "Acquisitions GR Deposit."
**A. Without knowing the account number, I can't tell you.**
Q. Why?
**A. Because I don't have the entire table memorized.**

Page 314

Q. I wouldn't expect you to have 130 memorized. You identified in this deposition the deposit account as to where you put the million dollars and that you deposited a bunch of -- a whole variety of things into that. I'm just wondering if you know what that account was actually for.
**A. It was for deposits.**
Q. Okay. Of whatever you wanted to put into it?
MS. REAGAN: Object to form. Foundation. Argumentative. And to the extent counsel refuses to provide complete information for him to answer the question.
**THE WITNESS: I can't answer that question.**
BY MR. WILHELM:
Q. Well, was it okay for you to put client FBO money from a plan into that account?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. So let's look at the line on February 15, 2024.

Page 315

Withdrawal of $75,000 from the Ciena FBO account via online transfer to checking ending in 2243, right, sir?
MS. REAGAN: Object to form. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right to not answer that question.**
(Marked for identification: Deposition Exhibit No. 30.)
BY MR. WILHELM:
Q. In fact, I'm going to hand you what's being marked as Exhibit 30. Do you recognize this document, sir? It is admittedly an Excel that's kind of broken up in the way it's printed, but it includes notations on a variety of accounts, I believe 30 accounts.
**A. Yes, sir, I recognize this.**
Q. You recognize this as your filling out of cells in response to Steve Miller's query in early September of this year when you provided him with general descriptions of accounts?
**A. Yes, sir.**
Q. Okay. And I'm just going down to that list. That 2243 that we just covered, it's about the tenth one

Page 316

down give or take, and that lines up with -- which does that line up with, sir?
**A. "ACQ-GR Deposit."**
MR. WILHELM: I'm handing you what's being marked as our next exhibit.
THE REPORTER: Thirty-one.
(Marked for identification: Deposition Exhibit No. 31.)
BY MR. WILHELM:
Q. Do you recognize this document, sir?
**A. Yes, sir.**
Q. What is it?
**A. It's a letter from First Horizon Bank to Group Resources Acquisitions, dated February 12.**
Q. And that came into the office at Duluth, correct?
**A. Yes, sir.**
Q. Do you recall whether Obermeyer was working at the Chicopee Mill Road location that day or not?
**A. I do not.**
Q. Okay. And who opens mail directed to Group Resources Acquisitions at Duluth?
**A. It would be the receptionist at that time.**
Q. Okay. And who was that, please?
**A. I believe it was Ali Clark in February.**
Q. Okay. And she's no longer with Group Resources?

Page 325

**A. Yes, sir.**
Q. Do you recall that Steve Miller had reached out to you around February 28 of 2014 to set up a visit down in Duluth to come see you and see your operations?
**A. It was late February, yes, sir; I don't know the exact date, but yes, sir.**
Q. And then on February 29, you all agreed that he would come down on or about March 12th, correct?
**A. Yes, sir.**
Q. And so it's your testimony that the termination of Obermeyer -- the alleged termination of Obermeyer -- which was what date?
**A. It was a Sunday.**
Q. What date?
**A. I'm guessing that was the 10th of March if Thursday was the 7th. I believe it was March 10th. It was Sunday.**
Q. The calendar suggests that Sunday, March 10th -- that Sunday was March 10th.
**A. Okay. It was the 10th.**
Q. All right. And then so 10 days after you knew Steve Miller was coming to see you on site, you terminated Obermeyer just two days before Mr. Miller's visit, right, sir?

Page 326

MS. REAGAN: Object to form.
**THE WITNESS: That is correct.**
(Marked for identification: Deposition Exhibit No. 33.)
BY MR. WILHELM:
Q. I'll hand you what's being marked as our next exhibit, 33. And I don't suppose you necessarily recognize this document, sir, but I'll ask you to share with me about it if you're able.
I'll represent to you that this is a partial summary of transfers in and out of the FBO account that we just talked about of Ciena, account ending in 0793. And if you just look at the top, we talked about that "Acquisitions GR Deposit" account, 2243, right, sir? Do you remember talking about that?
**A. We did look at that; yes, sir.**
Q. And the exhibit that's the bank statement, which would be Exhibit 29, you and I discussed and you pled the Fifth regarding a couple of online transfers, including one to that account in the amount of $75,000 to 2243, right, sir?
**A. We discussed that; yes, sir.**
Q. So just for clarity sake, I'm representing to you that this "Transfer Out" column is a grand total of

Page 327

transfers out as identified in bank statements that you provided to Ciena for the years 2021, '22, '23, '24 of the grand total through whatever date the last statement was dealt with in 2024.
So my question to you is -- and by the way, the "Transfers Out" line 2 here in parentheses, that's money coming out of the FBO account into the respective Group Resources or other account indicated in the gray stripe above, okay, sir?
**A. Yes, sir.**
Q. All right. So the first column, 2021, represents over $2.3 million transferred out of the Ciena FBO account into "Acquisitions GR Deposit." Do you have any reason to dispute that total, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. How about for 2022? A total of over 4.3 million transferred out of the Ciena FBO account into the "Acquisitions GR Deposit" account.

Page 328

MS. REAGAN: Same objections. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. How about for 2023 and 2024 with 2.8 and 1.6 million plus, respectively?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Down below, there are client FBO accounts that you identified in the lower half of the document. I don't think you ever gave us the identities of those client FBOs, but do you know any of them or could you look them up?
MS. REAGAN: Object to form. Foundation. I'm going to instruct the client not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**

Page 329

BY MR. WILHELM:
Q. How about to the "GR Premium" account, transfers out of the Ciena plan account, the plan FBO account, in 2021 of $1.6 million plus; do you agree with that total, sir?
MS. REAGAN: Same objections. Same instruction.
**THE WITNESS: Based on advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Let me ask it a slightly different way. Do you have any reason to dispute that total as being true and accurate for 2021 under the "GR Premium" account?
MS. REAGAN: Object to form. Foundation. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And the total -- let's go down to the bottom, grand total -- to save time, Mr. Willoughby, if I ask you about any of these line items in here, are you going to plead the Fifth?

Page 330

MS. REAGAN: I would advise him and instruct him to plead the Fifth.
**THE WITNESS: Yes, sir. Based on the advice of counsel, I will plead the Fifth Amendment to not answer those questions.**
BY MR. WILHELM:
Q. So consider me to have asked about each and every line item and each and every column. You're pleading the Fifth on all of those?
MS. REAGAN: What would be the question?
MR. WILHELM: Do you agree with the totals as presented here in each column for each of these accounts?
MS. REAGAN: Object to form and foundation. It's a summary that I believe Mr. Wilhelm put together or his office put together and I'll instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
MR. WILHELM: That's not correct, counsel, for the record, but --
MS. REAGAN: Is it a summary?

Page 331

MR. WILHELM: It is what I've described it as and your statement is not -- your statement is not accurate.
BY MR. WILHELM:
Q. Mr. Willoughby, do you have any dispute with the -- do you have any reason to dispute the accuracy of any of these columns that are in parentheses as reflecting monies transferred out of the Ciena FBO account that ends in 0793?
MS. REAGAN: Object to form. Foundation. It's unknown who prepared this document and where all the information is exactly coming from. I'll also instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Let's go to the grand total, sir. Grand total taken out in 2023 from the Ciena FBO account, $4.4 million plus. Do you have any reason to dispute that fact, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of**

Page 332

**counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. How about 2022? Over 6.0 million transferred out of this Ciena FBO account that year, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. How about 2023? Over $5.6 million transferred out of the Ciena FBO plan account, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And in 2024, over $1.5 million transferred out of the Ciena FBO plan account, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of**

Page 333

**counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Sir, do you have any explanation for the over $17 million transferred out of the Ciena FBO plan account over just these four years alone?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer these questions.**
BY MR. WILHELM:
Q. Have you done an independent review to see for yourself how much money was transferred out of the Ciena FBO plan account these four years?
MS. REAGAN: Object to form. To the extent it's tied to this document, foundation. And instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. You gathered and compiled and -- you gathered and provided bank statements such as the one that we

Page 334

looked at in Exhibit 29 to folks at Ciena beginning earlier this year, right, sir?
**A. That is correct.**
Q. And you knew they were asking for bank statements and you were providing them, were you not?
**A. Yes, sir.**
Q. But you never did an independent review to look into these online transfers out of the account that -- if you look at the bank statements, it's pretty simple, they total up to these totals -- and you never did an independent review to see what the heck was going on?
MS. REAGAN: Object to form. Argumentative. Instruct the witness to plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
MS. REAGAN: Also, just to make the record clear, whenever I referred to "this document," I'm referring to Exhibit 33.
(Marked for identification: Deposition Exhibit No. 34.)
BY MR. WILHELM:
Q. I'm handing you what's being marked as our next

Page 335

exhibit, which is 34. Do you recognize this document, sir?
**A. It's an email from Dave Obermeyer to myself.**
Q. Okay. And it's March 5, 2024, just five days before you allegedly terminated him, right, sir?
**A. Five days before he was terminated.**
Q. And in this email, he totals four columns on the left that appear to be -- I can't make sense of it exactly, but there's a 3-5-2024 total totaling $168,442.64, right, sir?
**A. Yes, sir.**
Q. And then there's a claims funding total of the same and then fixed costs of 22,000 and change, right, sir?
**A. It's an estimated fixed cost, yes.**
Q. Do you know what the purpose of the email from Obermeyer to you was?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll exercise my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. I'll ask it a slightly different way. Was this so

Page 336

that you would know what Obermeyer was doing with respect to attempting to resolve unpaid claims under the Ciena plan?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Did you review this email when it came in?
**A. I don't recall.**
Q. All right. But you've seen it before today?
**A. I would believe so; yes, sir.**
(Marked for identification: Deposition Exhibit No. 35.)
BY MR. WILHELM:
Q. Next exhibit is Exhibit 35. I'll ask you to take a look. Similar setup, Mr. Willoughby, from Mr. Obermeyer to you just about a week prior on February 28. Do you see that, sir?
**A. Yes, sir.**
Q. Again, we have 2-28-24 totals, claims funding and fixed costs. Do you know what those amounts represented and were presented to you for, sir?
MS. REAGAN: Object to form. Foundation.

Page 337

Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. Was he -- was Mr. Obermeyer helping you build a case that you could present to Steve Miller when he showed up on March 12?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on advice of counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
MR. WILHELM: Okay.
MS. REAGAN: Can we determine how long he's been on the record for purposes of this deposition? It was supposed to be limited to seven and I believe the first one was two and we've been here for --
MR. WILHELM: We'll go off the record.
(Discussion off the record.)
MR. WILHELM: Back on the record.

Page 338

BY MR. WILHELM:
Q. Mr. Willoughby, are you familiar with some email identified as Sam Segal -- Sam Segal Law Firm or something to that effect?
**A. It doesn't ring any bells.**
MR. WILHELM: Okay. This can be marked as our next exhibit, 36.
(Marked for identification: Deposition Exhibit No. 36.)
BY MR. WILHELM:
Q. I'll ask you to take a look and let me known when you're ready to go.
Do you recognize this document, sir?
**A. I've never seen this.**
Q. Okay. So you don't recognize this document?
**A. No, I've never seen this.**
MS. REAGAN: Can I just --
MR. WILHELM: The name in the subject line --
MS. REAGAN: Can I just get clarification? Is this a whole collection of emails or is this one?
MR. WILHELM: It is my sincere belief this is literally emails in the manner provided by Renee Morgan regarding Obermeyer's inbox from Group

Page 339

Resources.
MS. REAGAN: Okay.
MR. WILHELM: In the manner found.
BY MR. WILHELM:
Q. So just going to the end of this, sir, at the end of the whole packet.
**A. You mean the very beginning, the earliest?**
Q. Earlier email. August 22, 2023, Dave Obermeyer writes, off his Group Resources email address, "Sam, has the 40 percent already been disbursed to Katie Benson? If so, when? Was this released in the name of Katie or was it also released to TC Davidson?" Do you know who Katie Benson is or was?
**A. No, sir.**
Q. How about TC Davidson?
**A. No, sir.**
Q. How about Sam Segal?
**A. No, sir.**
Q. Let's go to the next page forward, toward the bottom, August 22nd. "Yes, Luce is right about TC Davidson being exempted from the beneficiary by court order due to fraudulent transaction of 16 million he took off from my client, Mr. Jordan Benson." Do you see that?
**A. I do.**

Page 340

Q. Do you know who Jordan Benson is?
**A. I've seen Jordan Benson's name on a will.**
Q. Okay. When?
**A. After Mr. Obermeyer was terminated, I found it in his office.**
Q. Okay. What conclusion did you draw from that will or from anything about the Bensons?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: I don't know. It was baffling to me; still.**
BY MR. WILHELM:
Q. Okay. When you allegedly terminated Obermeyer, did anybody look into his -- did anybody investigate his emails and sort of try to look into how he allegedly committed the theft that you accused him of?
MS. REAGAN: Object to form. Foundation.
**THE WITNESS: When Mr. Obermeyer was terminated, we turned over his emails to the authorities so that they could do their research to determine what had occurred.**
BY MR. WILHELM:
Q. Okay. How about anybody at Group Resources or at the Weener Nathan Phillips firm? Did you guys perform an investigation to reach your own

Page 345

assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I will assert my Fifth Amendment right to not answer that question.**
BY MR. WILHELM:
Q. Here that payee is Milan B. Sata, DDS. That's a dentist, right?
MS. REAGAN: Form and foundation.
**THE WITNESS: It would appear to be; yes, sir.**
BY MR. WILHELM:
Q. In the amount of $162 for the employee dependent noted here on that highlighted red line, correct?
**A. Yes.**
MS. REAGAN: Object to form. The document states --
BY MR. WILHELM:
Q. Showing service date of December 3, 2020, right, sir?
MS. REAGAN: The document speaks for itself. Instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth**

Page 346

**Amendment and not answer that question.**
BY MR. WILHELM:
Q. On a statement date on page 2 of this packet, you will see a check dated December 8, 2023, which is almost three years later in the amount of $162; do you see that, sir?
MS. REAGAN: Object to form. Foundation. I'll instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And if you look at the check number on the check register on page 1 that's got the red circle around it or red box around it, it's check No. 231190, correct?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. But here on page 2, in a very clever manner,

Page 347

there's a very similar check number, but it's not the same. The second check with a prefix, extra two, showing 2231190. Do you see that, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And in fact, the third page shows that in fact this later check is dated November 2, 2023, check number is 2231190, for the amount of 162 to that provider in Flint, Michigan, and the check in fact was paid and cleared the bank on December 8, 2023, right, sir?
MS. REAGAN: Object to form and foundation. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
**Can we take a break? I just want to run to the bathroom.**
MR. WILHELM: For the record, that is -- just real quickly for the record and then we will

Page 348

take a break.
BY MR. WILHELM:
Q. For the record, that is 1,008 days after what the check register claimed the check date was, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment to not answer that question.**
MR. WILHELM: We'll take a quick break. Off the record.
(Whereupon a break was taken from 5:02 p.m. to 5:06 p.m.)
MR. WILHELM: Back on the record after a short break.
BY MR. WILHELM:
Q. Mr. Willoughby, during the break did you review any documents?
**A. I did not.**
Q. Speak to anybody other than your counsel?
**A. I did not.**
(Marked for identification: Deposition Exhibit No. 39.)

Page 349

BY MR. WILHELM:
Q. I'll hand you what's being marked as our next exhibit, Exhibit 39. I'll ask you to take a look and let me know when you're ready.
**A. Yes, sir.**
Q. All right. Similar format, Mr. Willoughby, so we can try to be efficient here, but the check register excerpt is from an original register provided to Ciena by Group Resources representing checks allegedly cut to all these providers; would you agree with that, sir?
MS. REAGAN: Object to form and foundation and instruct the witness not to answer and plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer the question.**
BY MR. WILHELM:
Q. In fact, in the highlighted alleged provider payment is a check number on the left of 245440. Do you see that number, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth**

Page 350

**Amendment to not answer the question.**
BY MR. WILHELM:
Q. Page 2 shows -- rather than a time around the date of service, which was May 25, 2021, there's ultimately a check being paid of a slightly different check number in that same amount of $96; do you see that, sir? Upper left of page 2.
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And in fact, that's the same -- on page 3 of the exhibit, same check number, 224544, as is shown in the First Horizon Bank statement excerpt shown on page 2 of this exhibit, correct?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And this amount actually did clear the bank, it was paid on June 10 in the amount of $96 -- that is

Page 351

June 10, 2024 -- correct, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. So in this case, it's 938 days between when the check register date -- between the check register date and check issue date; do you see that, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. And my prior example, I believe this is 1,008 days between check register date and the check issue date with slightly different check numbers, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth**

Page 352

**Amendment to not answer that question.**
(Marked for identification: Deposition Exhibit No. 40.)
BY MR. WILHELM:
Q. Exhibit 40. I'll ask you to take a look and let me know when you're ready.
**A. Yes, sir.**
Q. Similar format, original check register excerpt of a check register provided to Ciena representing checks allegedly cut to all these providers, right, sir?
MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and assert the Fifth Amendment privilege.
**THE WITNESS: Based on the advice of counsel, I assert my right under the Fifth Amendment to not answer the question.**
BY MR. WILHELM:
Q. And the red highlighted check in the middle here, sir, check No. 248308; do you see that, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my Fifth Amendment right and**

**not answer that question.**
BY MR. WILHELM:
Q. But on page 2, rather than this check being paid in September 9 or -- September 9, 2021, or thereabouts, this alleged check, you have a similar check number, but it's different, it's got another two in front of it for that same amount of $624.82, paid on January 3, 2023, and as you can see on page 3, that check was actually written or issued December 15, 2022, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And in fact, here you have 462 days between what the check register date is for that alleged provider payment and the actual check issue date, right, sir?
MS. REAGAN: Same objections. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment to not answer that question.**



(Marked for identification: Deposition Exhibit No. 41.)
BY MR. WILHELM:
Q. Forty-one, similar format, sir. Original check register excerpt of alleged provider payments that Group Resources provided to Ciena representing a variety of alleged provider payments allegedly on April 25, 2022, right, sir?
MS. REAGAN: Object to form and foundation and instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And this one you see again the same pattern. There's another beginning two prefix, so there's a new and different check number with an extra two as a prefix in that same exact amount, $4,250.64, that ultimately wasn't issued until February 16, 2023, and is paid on March 8, 2023, in that amount, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of**



**counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 42.)
BY MR. WILHELM:
Q. Exhibit 42. Again, similar format, original excerpt from an original check register provided to Ciena by Group Resources for alleged provider payments with alleged check dates of June 30, 2022. The bank statement shows this payment of $766.84 wasn't actually made until a check was issued with an additional two in front of it once again, very similar -- actually identical pattern. The check was issued on February 22 of this year, but paid June 10 of this year, right, sir?
MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and to plead the Fifth.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. In this one, there is 602 days between what the check register date shows for the alleged provider payment and when the ultimate check was actually



issued, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 43.)
BY MR. WILHELM:
Q. Mr. Willoughby, on this one, similar format, excerpt of the original check register showing alleged provider payments provided by Group Resources to Ciena representing alleged checks dated December 1, 2022, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and to assert the Fifth.
**THE WITNESS: Based on the advice of counsel, I will assert my Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And again, identical pattern here. The check ultimately wasn't paid until November 1 of 2023, on a check issued or dated October 12, 2023, but the check number is different. It's got that extra two

Page 357

again right up front. Would you agree or disagree with that, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on advice of counsel, I'll exercise my Fifth Amendment right and not answer that question.**
(Marked for identification: Deposition Exhibit No. 44.)
BY MR. WILHELM:
Q. I'll hand you what's being marked as our next exhibit, Exhibit 44. That last one was 43.
And similar pattern once again, an excerpt of the original check number provided by Group Resources to Ciena showing alleged provider payments of December 15, 2022, representing alleged checks cut to all these providers, but in fact this one that's highlighted to Oakwood wasn't paid until January 16 of 2024, correct, sir?
MS. REAGAN: Object to form and foundation. Instruct the witness not to answer and to assert the Fifth Amendment.
**THE WITNESS: Based on advice of counsel, I'll assert my Fifth Amendment right and not answer that question.**

Page 358

BY MR. WILHELM:
Q. And in fact, same exact pattern; once again that extra two comes out again on the check number on page 3 of this packet, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And for this one, it's 378 days between the date on the check register and the check issue date, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 45.)
BY MR. WILHELM:
Q. Exhibit 45. Once again, identical pattern, Mr. Willoughby. You'll be familiar with this from the prior examples. Excerpt of original check register showing alleged provider payments that

Page 359

was provided to Ciena by Group Resources representing alleged checks cut to these providers, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And again, same pattern, long delay, extra two in front of the real check in the amount of $119.84 payable to Henry Ford Health System, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment to not answer that question.**
BY MR. WILHELM:
Q. This check wasn't actually paid until February 23, 2024, on a check issued February 8, 2024, by Group Resources and that's a delay, a gap of 371 days between the date of the check register and the check issue date, right, sir?
MS. REAGAN: Same objection. Same

Page 360

instruction.
**THE WITNESS: Based on the advice of counsel, I'll assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 46.)
BY MR. WILHELM:
Q. I'm handing you what's being marked as Exhibit 46. Once again, an excerpt of the original check register provided by Group Resources to Ciena showing alleged provider payments to all of these providers representing that these checks had actually been cut to all these providers, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness not to answer and assert the Fifth Amendment.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. But in fact, the provider highlighted on page 1 is not paid until January 31, 2024, on a check issued January 18, 2024, and again, the check number has the same thing as the other examples with that

Page 361

additional two prefix, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And this particular series shows a gap of 294 days between the check register date and the check issue date, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 47.)
BY MR. WILHELM:
Q. Exhibit 47. Again, same pattern, same situation, Mr. Willoughby. Excerpt of the original alleged check register provided by Group Resources to Ciena showing alleged provider payments allegedly made on August 10, 2023, but in fact the highlighted provider wasn't paid until July 15, 2024, on a check issued February 15, 2024. And again, you

Page 362

have the extra two in front of this real check, right, sir?
MS. REAGAN: Object to form. Foundation. Instruct the witness to assert the Fifth Amendment and not answer.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
BY MR. WILHELM:
Q. And this one shows a gap of 189 days between the check register date and the check issue date, right, sir?
MS. REAGAN: Same objection. Same instruction.
**THE WITNESS: Based on the advice of counsel, I will assert my right under the Fifth Amendment and not answer that question.**
(Marked for identification: Deposition Exhibit No. 48.)
BY MR. WILHELM:
Q. Exhibit 48, please. Do you recognize this document, sir?
**A. Yes, sir.**
Q. What is it?
**A. A list of bank accounts held by the Group Resources**

Page 363

**companies as of a date and time.**
Q. As of what date and time?
**A. I do not know.**
Q. As of a date and time?
**A. A date and time.**
Q. Which of these are client FBO accounts, if you could, please?
**A. There is a column that indicates that on the -- beginning on page 4.**
Q. I see. So you believe that to be true and accurate, the ones that were indicated "Yes"?
**A. When that file was prepared, yes, sir, it's my belief they were true and accurately reflected that those were client claims accounts. I can't speak to the printout, but in the Excel file, I believe that's correct.**
Q. And who wrote those "Yeses" in there?
**A. I did.**
Q. Okay. Did you consult with anyone else other than counsel before doing that in terms of like somebody on your staff or at Group Resources?
**A. No, sir.**
Q. You were able to determine that on your own?
**A. Yes, sir.**

Page 364

Q. Okay. When did you make that -- when did you compile this Excel?
**A. I don't recall.**
Q. After this lawsuit was filed?
**A. I don't believe so.**
Q. Before?
**A. I would believe before; yes, sir.**
Q. Do you know who put in the highlights here, the yellow and green?
**A. I do not know. I may have.**
Q. Do you know what they represent?
**A. I do not.**
Q. Do you know who would?
**A. No, sir, I do not.**
Q. Is Steve Kemp still with you?
**A. No, sir.**
Q. Where is he now?
**A. He went to work for Aither Health.**
Q. How do you spell that?
**A. A-I-T-H-E-R Health.**
Q. Where are they located?
**A. They're based in Dallas, Texas, I believe.**
Q. Is he remotely working for them?
**A. Yes, sir.**
Q. Where does he live?

STATE OF MICHIGAN)
COUNTY OF OAKLAND)

Certificate of Notary Public

I do hereby certify the witness, whose attached testimony was taken in the above matter, was first duly sworn to tell the truth; the testimony contained herein was reduced to writing in the presence of the witness, by means of stenography; afterwards transcribed; and is a true and complete transcript of the testimony given. I further certify that I am not connected by blood or marriage with any of the parties, their attorneys or agents, and that I am not interested directly, indirectly or financially in the matter of controversy.

In witness whereof, I have hereunto set my hand this day at Clarkston, Michigan, State of Michigan.

I hereby set my hand this day, October 26, 2024.



Karen Fortna, CRR/RMR/RPR/CSR-5067
Notary Public, Oakland County, Michigan
My Commission expires 4/30/2025

# EXHIBIT A-1

CHECK REGISTER

Check Date: 01/28/21

GroupNr: 3419
Company: CIENA/REGENCY AT GRAND BLANC

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 231152 | ADVANCED DIAGNOSTIC IMAGING PC | 33.62 | | 10/17/20-10/19/20 |
| 231153 | HURLEY MENTAL HEALTH ASSOC | 109.21 | | 10/19/20-11/10/20 |
| 231154 | HOPE URGENT CARE OF BIRCH RUN | 120.23 | | 10/23/20-10/23/20 |
| 231155 | TEAM REHABILITATION GB LLC | 147.29 | | 10/14/20-10/14/20 |
| 231156 | TEAM REHABILITATION GB LLC | 219.30 | | 10/12/20-10/12/20 |
| 231157 | TEAM REHABILITATION GB LLC | 126.69 | | 10/12/20-10/12/20 |
| 231158 | TEAM REHABILITATION GB LLC | 198.70 | | 10/14/20-10/14/20 |
| 231159 | QUEST DIAGNOSTIC | 32.65 | | 09/16/20-09/16/20 |
| 231160 | ASCENSION MEDICAL GROUP GENESY | 508.10 | | 11/09/20-11/09/20 |
| 231161 | QUEST DIAGNOSTIC | 48.54 | | 08/07/20-08/07/20 |
| 231162 | ALEXANDER B. MALAYEV, MD | 41.23 | | 10/27/20-10/27/20 |
| 231163 | DEGARA APP PLLC | 488.45 | | 11/01/20-11/01/20 |
| 231164 | QUEST DIAGNOSTIC | 20.73 | | 11/03/20-11/03/20 |
| 231165 | QUEST DIAGNOSTIC | 55.00 | | 11/03/20-11/03/20 |
| 231166 | REGIONAL MEDICAL IMAGING PC | 24.20 | | 11/05/20-11/05/20 |
| 231167 | GRAND BLANC VISION CLINIC | 33.00 | | 10/05/20-10/05/20 |
| 231168 | GRAND BLANC VISION CLINIC | 33.00 | | 10/05/20-10/05/20 |
| 231169 | MCLAREN FLINT | 101.15 | | 11/02/20-11/02/20 |
| 231170 | REGENTS OF UNIV OF MI | 142.74 | | 10/08/20-10/08/20 |
| 231171 | HURLEY MEDICAL CENTER | 224.51 | | 09/23/20-09/23/20 |
| 231172 | HURLEY MEDICAL CENTER | 11.49 | | 09/23/20-09/23/20 |
| 231173 | MERIT DENTAL HOLLY | 158.94 | | 11/23/20-11/23/20 |
| 231174 | PARKWAY FAMILY MEDICINE PLLC | 65.17 | | 10/27/20-10/27/20 |
| 231175 | REGIONAL MEDICAL IMAGING PC | 37.64 | | 11/06/20-11/06/20 |
| 231176 | CLIO URGENT CARE PLLC | 35.00 | | 10/02/20-10/02/20 |
| 231177 | MCLAREN FLINT | 66.52 | | 10/21/20-10/21/20 |
| 231178 | MCLAREN REGIONAL MEDICAL | 132.79 | | 11/23/20-11/23/20 |
| 231179 | FAMILY CARE CHIROPRACTIC PLLC | 42.42 | | 10/17/20-11/14/20 |
| 231180 | FAMILY CARE CHIROPRACTIC PLLC | 42.42 | | 09/26/20-10/10/20 |
| 231181 | HILLSIDE CENTER FOR BEHAVIORAL | 63.15 | | 11/11/20-11/11/20 |
| 231182 | HOPE URGENT CARE DAVISON | 75.00 | | 10/29/20-10/29/20 |
| 231183 | INTERNAL MEDICINE HEALTH CENTE | 124.69 | | 10/26/20-10/28/20 |
| 231184 | INTERNAL MEDICINE HEALTH CENTE | 184.92 | | 10/26/20-10/26/20 |
| 231185 | QUEST DIAGNOSTIC | 189.40 | | 07/13/20-07/13/20 |
| 231186 | QUEST DIAGNOSTIC | 194.41 | | 07/13/20-07/13/20 |
| 231187 | QUEST DIAGNOSTIC | 470.91 | | 07/13/20-07/13/20 |
| 231188 | LIFETIME URGENT CARE PLLC | 75.00 | | 10/02/20-10/02/20 |
| 231189 | MILAN B. SATA, DDS | 55.00 | | 12/03/20-12/03/20 |
| 231190 | MILAN B. SATA, DDS | 162.00 | | 12/03/20-12/03/20 |
| 231191 | RACINE & ACKLEY DDS PC | 58.00 | | 11/13/20-11/13/20 |
| 231192 | RACINE & ACKLEY DDS PC | 243.20 | | 11/13/20-11/13/20 |
| 231193 | RACINE & ACKLEY DDS PC | 166.66 | | 11/13/20-11/13/20 |
| 231194 | HURLEY MENTAL HEALTH ASSOC | 95.00 | | 11/09/20-11/09/20 |
| 231195 | RACINE & ACKLEY DDS PC | 50.00 | | 11/13/20-11/13/20 |
| 231196 | SAMASANDRAPALYA KIRAN | 133.09 | | 10/29/20-10/29/20 |
| 231197 | SAMASANDRAPALYA KIRAN | 65.17 | | 10/08/20-10/08/20 |
| 231198 | VITALITY CHIROPRACTIC PC | 46.61 | | 10/13/20-10/13/20 |

EXHIBIT 38
depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

GROUP RESOURCES INC

BUSINESS CHECKING

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 12/29/23 |

CHECKS PAID SUMMARY (continued)

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 12/26 | 287131 * | $81.20 | 12/21 | 2246988 * | $57.50 | 12/19 | 2257829 * | $2,381.49 |
| 12/26 | 287132 | $81.20 | 12/26 | 2247457 * | $50.91 | 12/15 | 2258090 * | $423.46 |
| 12/19 | 287141 * | $220.00 | 12/26 | 2247819 * | $106.96 | 12/27 | 2258106 * | $68.77 |
| 12/27 | 287169 * | $114.37 | 12/05 | 2248257 * | $9,526.82 | 12/11 | 2258217 * | $100.02 |
| 12/28 | 287286 * | $226.05 | 12/19 | 2248428 * | $54.35 | 12/19 | 2258700 * | $221.08 |
| 12/19 | 287287 | $93.20 | 12/26 | 2248761 * | $106.96 | 12/08 | 2258932 * | $149.11 |
| 12/20 | 287322 * | $142.00 | 12/08 | 2249148 * | $183.00 | 12/26 | 2259077 * | $178.43 |
| 12/29 | 287381 * | $65.00 | 12/08 | 2249149 | $215.00 | 12/15 | 2259119 * | $68.63 |
| 12/19 | 287392 * | $45.20 | 12/04 | 2249689 * | $104.46 | 12/26 | 2259223 * | $23.57 |
| 12/19 | 287393 | $69.20 | 12/15 | 2249817 * | $74.99 | 12/15 | 2259436 * | $75.00 |
| 12/27 | 287450 * | $11.32 | 12/26 | 2250204 * | $106.96 | 12/15 | 2259755 * | $68.63 |
| 12/29 | 287468 * | $170.95 | 12/19 | 2250850 * | $7.95 | 12/08 | 2259876 * | $149.11 |
| 12/28 | 287475 * | $183.16 | 12/05 | 2250914 * | $7,236.11 | 12/15 | 2260176 * | $29.75 |
| 12/29 | 287477 * | $119.37 | 12/27 | 2250969 * | $56,161.39 | 12/19 | 2260240 * | $1,102.65 |
| 12/26 | 287600 * | $130.95 | 12/26 | 2251652 * | $8.18 | 12/15 | 2260630 * | $75.00 |
| 12/01 | 2207532 * | $252.75 | 12/19 | 2251678 * | $68.48 | 12/15 | 2260674 * | $74.99 |
| 12/11 | 2208972 * | $66.81 | 12/04 | 2251877 * | $101.15 | 12/08 | 2260836 * | $204.74 |
| 12/15 | 2210789 * | $11.30 | 12/12 | 2252029 * | $666.63 | 12/08 | 2260842 * | $114.40 |
| 12/26 | 2224567 * | $67.83 | 12/08 | 2252206 * | $133.65 | 12/01 | 2261207 * | $131.63 |
| 12/26 | 2225573 * | $130.92 | 12/08 | 2252207 | $58.32 | 12/08 | 2261583 * | $558.48 |
| 12/04 | 2225956 * | $133.09 | 12/08 | 2252208 | $127.63 | 12/26 | 2261749 * | $144.24 |
| 12/15 | 2229374 * | $652.69 | 12/08 | 2252209 | $116.79 | 12/11 | 2261783 * | $100.51 |
| 12/04 | 2229839 * | $133.09 | 12/26 | 2252347 * | $106.96 | 12/15 | 2261821 * | $210.51 |
| 12/15 | 2231188 * | $75.00 | 12/15 | 2253377 * | $75.00 | 12/08 | 2261979 * | $148.00 |
| 12/08 | 2231189 | $55.00 | 12/04 | 2253597 * | $133.09 | 12/08 | 2262321 * | $106.06 |
| 12/08 | 2231190 | $162.00 | 12/27 | 2253795 * | $20.91 | 12/26 | 2262353 * | $150.26 |
| 12/26 | 2233211 * | $69.18 | 12/15 | 2253969 * | $413.91 | 12/27 | 2262467 * | $69.99 |
| 12/26 | 2233254 * | $130.92 | 12/15 | 2254396 * | $82.84 | 12/01 | 2262468 | $133.09 |
| 12/04 | 2233275 * | $101.15 | 12/15 | 2254397 | $77.84 | 12/08 | 2262683 * | $1,497.60 |
| 12/08 | 2233516 * | $271.50 | 12/11 | 2254535 * | $12,616.80 | 12/22 | 2263287 * | $26.54 |
| 12/19 | 2233586 * | $126.28 | 12/15 | 2254678 * | $45.23 | 12/20 | 2263747 * | $104.22 |
| 12/04 | 2233612 * | $2,055.90 | 12/08 | 2255710 * | $150.00 | 12/08 | 2263792 * | $1,693.62 |
| 12/15 | 2234983 * | $53.32 | 12/08 | 2255711 | $65.00 | 12/05 | 2263902 * | $1,349.00 |
| 12/15 | 2234984 | $21.68 | 12/26 | 2255935 * | $28.90 | 12/08 | 2264035 * | $243.92 |
| 12/26 | 2235067 * | $139.74 | 12/15 | 2256230 * | $68.63 | 12/26 | 2264053 * | $130.92 |
| 12/15 | 2235341 * | $596.25 | 12/19 | 2256463 * | $16,439.04 | 12/22 | 2264207 * | $97.64 |
| 12/15 | 2235342 | $403.75 | 12/08 | 2256566 * | $1,338.48 | 12/22 | 2264208 | $235.53 |
| 12/26 | 2235793 * | $159.86 | 12/11 | 2256847 * | $53.93 | 12/27 | 2264218 * | $134.91 |
| 12/26 | 2236409 * | $69.19 | 12/11 | 2257190 * | $258.07 | 12/19 | 2264277 * | $98.00 |
| 12/15 | 2236439 * | $75.00 | 12/19 | 2257220 * | $2,536.63 | 12/26 | 2264422 * | $106.96 |
| 12/18 | 2236478 * | $3,042.81 | 12/15 | 2257372 * | $42.64 | 12/26 | 2264656 * | $11,915.05 |
| 12/26 | 2245318 * | $106.96 | 12/15 | 2257778 * | $68.63 | 12/15 | 2264738 * | $1,336.59 |

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM EHBP
PO Box 3970
Duluth, GA 30096

Check Number: 2231190
Check Date: 11/02/23

| AMOUNT |
|---|
| **$162.00 |

PAY One Hundred Sixty Two Dollars

TO THE ORDER OF
MILAN B. SATA, DDS
5468 S SAGINAW RD
FLINT MI 48507-4424

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈

CK 2231190 [redacted] PD 12/08 AMT $162.00

# EXHIBIT A-2

CHECK REGISTER

Check Date: 07/22/21

GroupNr: 3419
Company: CIENA/REGENCY AT GRAND BLANC

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 245427 | QUEST DIAGNOSTIC | 52.71 | | 06/08/21-06/08/21 |
| 245428 | QUEST DIAGNOSTIC | 64.60 | | 06/08/21-06/08/21 |
| 245429 | QUEST DIAGNOSTIC | 172.40 | | 06/08/21-06/08/21 |
| 245430 | MCLAREN REGIONAL MEDICAL | 19,614.95 | | 05/27/21-05/29/21 |
| 245431 | QUEST DIAGNOSTIC | 48.52 | | 06/08/21-06/08/21 |
| 245432 | ASCENSION MEDICAL GROUP GENESY | 101.15 | | 06/17/21-06/17/21 |
| 245433 | MEMORIAL MEDICAL ASSOCIATES | 70.37 | | 06/17/21-06/17/21 |
| 245434 | JOHN M. SUSHYNSKI, DDS | 251.25 | | 06/14/21-06/14/21 |
| 245435 | VITALITY CHIROPRACTIC PC | 61.59 | | 06/22/21-06/22/21 |
| 245436 | JENNIFER CAUDILL, MD | 69.18 | | 06/21/21-06/21/21 |
| 245437 | VITALITY CHIROPRACTIC PC | 149.67 | | 06/22/21-06/22/21 |
| 245438 | GREAT LAKES PSYCHOLOGY GROUP | 147.00 | | 06/21/21-06/21/21 |
| 245439 | VITALITY CHIROPRACTIC PC | 26.93 | | 06/24/21-06/24/21 |
| 245440 | DALE G. ANDREWS, DDS PC | 96.00 | | 05/25/21-05/25/21 |
| 245441 | HURLEY MENTAL HEALTH ASSOC | 101.41 | | 06/24/21-06/24/21 |
| 245442 | INDIRA ALLURU, MD PC | 101.15 | | 04/09/21-04/09/21 |
| 245443 | QUEST DIAGNOSTIC | 59.79 | | 06/09/21-06/09/21 |
| 245444 | HAMILTON COMMUNITY HEALTH NETW | 60.00 | | 03/17/21-03/17/21 |
| 245445 | NITA M. KULKARNI, MD | 101.15 | | 06/17/21-06/17/21 |
| 245446 | HURLEY MEDICAL CENTER | 67.14 | | 06/22/18-06/22/18 |
| 245447 | MICHIGAN INSTITUTE OF UROLOGY | 462.39 | | 06/04/21-06/18/21 |
| 245448 | ASCENSION MEDICAL GROUP GENESY | 310.34 | | 06/15/21-06/15/21 |
| 245449 | PHYSICIAN COVERAGE SERVICES | 15.95 | | 06/10/21-06/10/21 |
| 245450 | QUEST DIAGNOSTIC | 64.97 | | 06/10/21-06/10/21 |
| 245451 | QUEST DIAGNOSTIC | 41.56 | | 06/10/21-06/10/21 |
| 245452 | QUEST DIAGNOSTIC | 16.33 | | 06/10/21-06/10/21 |
| 245453 | PHYSICIAN COVERAGE SERVICES | 177.04 | | 06/10/21-06/10/21 |
| 245454 | QUEST DIAGNOSTIC | 39.45 | | 06/10/21-06/10/21 |
| 245455 | HAMILTON COMMUNITY HEALTH NETW | 60.00 | | 06/10/21-06/10/21 |
| 245456 | LABORATORY CORPORATION OF AMER | 12.30 | | 06/22/21-06/22/21 |
| 245457 | LABORATORY CORPORATION OF AMER | 3.71 | | 06/22/21-06/22/21 |
| 245458 | LABORATORY CORPORATION OF AMER | 82.04 | | 06/22/21-06/22/21 |
| 245459 | LABORATORY CORPORATION OF AMER | 23.73 | | 06/22/21-06/22/21 |
| 245460 | C. PATRICK GRAY, DDS,PC | 97.50 | | 06/21/21-06/21/21 |
| 245461 | ASCENSION MEDICAL GROUP GENESY | 193.81 | | 06/21/21-06/21/21 |
| 245462 | ASCENSION MEDICAL GROUP GENESY | 152.64 | | 06/21/21-06/21/21 |
| 245463 | MCLAREN MEDICAL GROUP | 65.17 | | 05/06/21-05/06/21 |
| 245464 | HILLSIDE CENTER FOR BEHAVIORAL | 189.03 | | 04/13/21-06/22/21 |
| 245465 | ASCENSION GENESYS HOSPITAL | 80.00 | | 04/21/21-05/12/21 |
| 245466 | EMP OF GENESEE COUNTY PLLC | 224.45 | | 04/16/21-04/16/21 |
| 245467 | UROLOGICAL SERVICES PC | 104.97 | | 06/11/21-06/11/21 |
| 245468 | GREGORY A. YASSICK, DDS | 78.00 | | 05/04/21-05/04/21 |
| 245469 | MCLAREN HEALTH PLA | 69.38 | | 04/04/21-04/04/21 |
| 245470 | MCLAREN FLINT | 65.17 | | 06/07/21-06/07/21 |
| 245471 | RACINE & ACKLEY DDS PC | 99.49 | | 06/25/21-06/25/21 |
| 245472 | THYROID AND DIABETES CLINIC | 239.55 | | 06/25/21-06/25/21 |
| 245473 | ASCENSION MEDICAL GROUP GENESY | 184.28 | | 04/15/21-04/15/21 |

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

GROUP RESOURCES INC

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 06/28/24 |

## CHECKS PAID SUMMARY (continued)

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 06/10 | 2245440 * | $96.00 | 06/10 | 2268473 | $207.00 | 06/05 | 2278630 * | $185.40 |
| 06/10 | 2249366 * | $126.00 | 06/07 | 2269439 * | $168.00 | 06/05 | 2278676 * | $150.06 |
| 06/10 | 2249806 * | $222.00 | 06/10 | 2270772 * | $42.42 | 06/05 | 2278677 | $131.30 |
| 06/11 | 2251415 * | $95.20 | 06/05 | 2271411 * | $112.07 | 06/05 | 2278782 * | $26.93 |
| 06/06 | 2252547 * | $772.26 | 06/06 | 2271462 * | $543.70 | 06/05 | 2278968 * | $1,120.96 |
| 06/10 | 2253110 * | $112.00 | 06/07 | 2274939 * | $283.84 | 06/10 | 2279186 * | $67.22 |
| 06/10 | 2256459 * | $23.00 | 06/06 | 2274941 * | $305.90 | 06/10 | 2279187 | $67.22 |
| 06/10 | 2257040 * | $408.73 | 06/06 | 2275299 * | $16,673.31 | 06/10 | 2279188 | $67.22 |
| 06/11 | 2257178 * | $141.75 | 06/05 | 2275405 * | $20.30 | 06/07 | 2279210 * | $168.00 |
| 06/18 | 2257626 * | $232.89 | 06/05 | 2275406 | $25.13 | 06/05 | 2279254 * | $2,818.15 |
| 06/10 | 2259814 * | $610.68 | 06/06 | 2275813 * | $118.11 | 06/07 | 2279276 * | $130.50 |
| 06/10 | 2259902 * | $69.18 | 06/24 | 2275905 * | $184.32 | 06/07 | 2279277 | $190.92 |
| 06/05 | 2260371 * | $87.99 | 06/05 | 2275956 * | $27.36 | 06/10 | 2279338 * | $127.79 |
| 06/07 | 2260740 * | $129.00 | 06/04 | 2276392 * | $536.87 | 06/05 | 2279410 * | $26.93 |
| 06/07 | 2260741 | $105.00 | 06/07 | 2277027 * | $253.49 | 06/10 | 2279490 * | $318.00 |
| 06/10 | 2261239 * | $32.80 | 06/05 | 2277148 * | $74.40 | 06/06 | 2279581 * | $57.67 |
| 06/06 | 2262608 * | $14.14 | 06/05 | 2277149 | $2.14 | 06/06 | 2279856 * | $239.41 |
| 06/10 | 2263121 * | $766.84 | 06/05 | 2277150 | $127.50 | 06/07 | 2279906 * | $305.74 |
| 06/18 | 2263273 * | $159.75 | 06/05 | 2277274 * | $12.79 | 06/06 | 2280110 * | $4,886.37 |
| 06/10 | 2266889 * | $95.00 | 06/05 | 2277275 | $136.57 | 06/12 | 2280286 * | $139.68 |
| 06/10 | 2266890 | $72.00 | 06/05 | 2277754 * | $26.93 | 06/07 | 2280876 * | $57.66 |
| 06/10 | 2266891 | $174.00 | 06/05 | 2278204 * | $12.79 | 06/10 | 2281011 * | $294.00 |
| 06/10 | 2266892 | $126.00 | 06/05 | 2278205 | $41.07 | 06/24 | 2281841 * | $225.00 |
| 06/05 | 2267756 * | $11.16 | 06/10 | 2278577 * | $170.00 | 06/11 | 2282018 * | $158.00 |
| 06/07 | 2268377 * | $283.90 | 06/10 | 2278578 | $136.00 | 06/06 | 2283357 * | $4,531.39 |
| 06/06 | 2268378 | $61,761.59 | 06/24 | 2278594 * | $59.00 | 06/03 | 3248097 * | $133.09 |
| 06/10 | 2268472 * | $348.00 | 06/10 | 2278605 * | $67.22 | 06/10 | 3261245 * | $11.50 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|---|---|
| 06/03 | $4,112,702.64 | 06/04 | $3,727,372.73 | 06/05 | $3,401,211.56 | 06/06 | $3,313,421.41 |
| 06/07 | $3,153,534.55 | 06/10 | $2,927,052.24 | 06/11 | $2,788,086.04 | 06/12 | $2,614,195.72 |
| 06/13 | $2,591,756.72 | 06/14 | $2,574,971.38 | 06/17 | $2,542,792.66 | 06/18 | $2,447,057.03 |
| 06/20 | $2,447,598.54 | 06/21 | $2,471,504.65 | 06/24 | $2,320,863.99 | 06/25 | $2,409,075.80 |
| 06/26 | $2,466,086.87 | 06/27 | $2,425,214.34 | 06/28 | $2,513,089.33 | | |

CIENA/REGENCY AT GRAND BLANC
Group Resources f/b/o CHM EHBP
PO Box 3970
Duluth, GA 30096

First Horizon Bank

2245440

Issue Date: 02/15/2024

AMOUNT
***$96.00

PAY ***Ninety Six Dollars and No Cents***

TO THE ORDER OF DALE G. ANDREWS DDS PC
2425 AUSTINS PKWY
STE 4
FLINT MI 48507

Authorized Signature

[redacted]07931"

CK 2245440 [redacted] PD 06/10 AMT $96.00

# EXHIBIT A-3

[redacted] [redacted] [redacted]

CHECK REGISTER

Check Date: 09/09/21

GroupNr: 3309
Company: CIENA/REGENCY OF LIVONIA

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 248302 | SOUTH OAKLAND GASTROENTEROLOGY | 214.98 | | 04/25/21-05/19/21 |
| 248303 | NOVI REHABILITATION PHYSICIANS | 65.17 | | 08/18/21-08/18/21 |
| 248304 | DEXTER K. FLEMMING, DDS | 568.00 | | 08/20/21-08/20/21 |
| 248305 | BEAUMONT LABORATORY | 88.87 | | 08/04/21-08/04/21 |
| 248306 | SYNERGY MEDICAL PC | 133.09 | | 08/16/21-08/16/21 |
| 248307 | DETROIT DENTAL CARE PC | 129.75 | | 08/17/21-08/17/21 |
| 248308 | REHABILITATION INSTITUTE | 624.82 | | 07/22/21-07/29/21 |
| 248309 | ST MARY MERCY HOSPITAL | 1,070.08 | | 08/26/21-08/26/21 |
| 248310 | HENRY FORD HOSPITAL | 164.21 | | 08/23/21-08/23/21 |
| 248311 | MICHIGAN HEALTHCARE PROFESSION | 3,742.23 | | 08/24/21-08/24/21 |
| 248312 | DOWNRIVER ENT PC | 9.04 | | 08/13/21-08/13/21 |
| 248313 | ASCENSION PROVIDENCE HOSP | 9,038.34 | | 05/27/21-06/02/21 |
| 248314 | NASSER TAGHAVI, MD | 69.18 | | 07/27/21-07/27/21 |
| 248315 | LIFETIME DC OF MICHIGAN | 79.89 | | 08/18/21-08/18/21 |
| | Total: | 15,997.65 | | |

EXHIBIT 40
depobook.com
10-22-24

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 01/31/23 |

GROUP RESOURCES INC

**CHECKS PAID SUMMARY**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 01/25 | 2245320 * | $219.02 | 01/04 | 2248669 * | $221.00 | 01/18 | 2251446 * | $108.86 |
| 01/06 | 2245376 * | $194.53 | 01/25 | 2248837 * | $415.72 | 01/06 | 2251492 * | $26.93 |
| 01/20 | 2245461 * | $193.81 | 01/17 | 2248950 * | $3,649.16 | 01/23 | 2251554 * | $1,548.46 |
| 01/31 | 2245564 * | $190.20 | 01/06 | 2248967 * | $22,730.27 | 01/17 | 2251572 * | $141.00 |
| 01/31 | 2245565 | $408.80 | 01/05 | 2248981 * | $18.15 | 01/13 | 2251615 * | $75.00 |
| 01/13 | 2246161 * | $314.49 | 01/05 | 2248982 | $155.97 | 01/25 | 2251666 * | $155.00 |
| 01/13 | 2246166 * | $42.68 | 01/24 | 2249077 * | $989.22 | 01/25 | 2251667 | $60.00 |
| 01/18 | 2246583 * | $1,514.80 | 01/13 | 2249363 * | $234.50 | 01/27 | 2251881 * | $388.47 |
| 01/26 | 2246595 * | $167.46 | 01/12 | 2249404 * | $61.20 | 01/09 | 2251907 * | $195.84 |
| 01/17 | 2246707 * | $660.00 | 01/17 | 2249464 * | $141.00 | 01/18 | 2251922 * | $372.75 |
| 01/17 | 2246708 | $141.00 | 01/11 | 2249507 * | $1,047.20 | 01/25 | 2251993 * | $149.67 |
| 01/23 | 2246849 * | $130.00 | 01/17 | 2249557 * | $99.00 | 01/17 | 2252055 * | $105.00 |
| 01/19 | 2246890 * | $69.18 | 01/05 | 2249757 * | $194.53 | 01/12 | 2252100 * | $1,342.00 |
| 01/19 | 2246901 * | $145.39 | 01/04 | 2249883 * | $69.18 | 01/27 | 2252125 * | $140.56 |
| 01/19 | 2247002 * | $69.18 | 01/11 | 2249976 * | $74.00 | 01/12 | 2252245 * | $36.16 |
| 01/04 | 2247100 * | $124.44 | 01/18 | 2250006 * | $333.87 | 01/24 | 2252644 * | $5,173.45 |
| 01/04 | 2247101 | $255.95 | 01/18 | 2250007 | $98.44 | 01/27 | 2252650 * | $210.84 |
| 01/17 | 2247208 * | $150.00 | 01/17 | 2250021 * | $100.00 | 01/09 | 2252736 * | $26.93 |
| 01/23 | 2247287 * | $63.38 | 01/23 | 2250183 * | $175.00 | 01/17 | 2252790 * | $141.00 |
| 01/17 | 2247426 * | $101.15 | 01/23 | 2250184 | $45.00 | 01/11 | 2252791 | $2,537.73 |
| 01/23 | 2247726 * | $698.68 | 01/23 | 2250185 | $65.00 | 01/17 | 2252841 * | $100.00 |
| 01/19 | 2247809 * | $220.04 | 01/23 | 2250186 | $100.00 | 01/17 | 2252852 * | $712.50 |
| 01/31 | 2247843 * | $92.00 | 01/23 | 2250187 | $130.00 | 01/10 | 2252886 * | $126.85 |
| 01/31 | 2247844 | $301.60 | 01/12 | 2250246 * | $231.51 | 01/25 | 2252968 * | $17,549.20 |
| 01/17 | 2247879 * | $141.00 | 01/12 | 2250247 | $247.30 | 01/30 | 2252976 * | $197.40 |
| 01/18 | 2247948 * | $145.00 | 01/31 | 2250372 * | $335.40 | 01/27 | 2253052 * | $224.01 |
| 01/18 | 2247949 | $115.00 | 01/13 | 2250438 * | $75.00 | 01/12 | 2253085 * | $65.17 |
| 01/10 | 2247989 * | $228.69 | 01/13 | 2250536 * | $75.00 | 01/10 | 2253278 * | $103.48 |
| 01/13 | 2248008 * | $106.96 | 01/24 | 2250581 * | $342.73 | 01/31 | 2253279 | $522.54 |
| 01/23 | 2248102 * | $213.92 | 01/24 | 2250582 | $1,998.15 | 01/18 | 2253300 * | $12,798.44 |
| 01/23 | 2248103 | $106.96 | 01/20 | 2250769 * | $75.00 | 01/24 | 2253301 | $11.02 |
| 01/19 | 2248230 * | $182.78 | 01/20 | 2250770 | $185.00 | 01/04 | 2253360 * | $176.24 |
| 01/25 | 2248235 * | $105.39 | 01/20 | 2250771 | $195.00 | 01/26 | 2253366 * | $3,600.00 |
| 01/31 | 2248255 * | $92.00 | 01/24 | 2250883 * | $3,684.99 | 01/10 | 2253571 * | $257.00 |
| 01/18 | 2248301 * | $153.00 | 01/09 | 2250937 * | $315.68 | 01/27 | 2253607 * | $210.84 |
| 01/03 | 2248308 * | $624.82 | 01/06 | 2250998 * | $4,327.98 | 01/27 | 2253608 | $70.28 |
| 01/05 | 2248343 * | $152.00 | 01/12 | 2251122 * | $7,419.78 | 01/12 | 2253729 * | $101.34 |
| 01/05 | 2248345 * | $152.00 | 01/17 | 2251191 * | $137.00 | 01/06 | 2253865 * | $200.00 |
| 01/05 | 2248347 * | $220.00 | 01/17 | 2251192 | $137.00 | 01/06 | 2253867 * | $200.00 |
| 01/05 | 2248348 | $181.00 | 01/17 | 2251291 * | $109.67 | 01/06 | 2253911 * | $60.27 |
| 01/05 | 2248349 | $198.00 | 01/23 | 2251307 * | $338.68 | 01/13 | 2253915 * | $106.96 |
| 01/26 | 2248416 * | $157.08 | 01/06 | 2251406 * | $43.03 | 01/17 | 2254065 * | $135.00 |

Member FDIC

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM EHBP
PO Box 3970
Duluth GA 30096

Georgia Commerce Bank

64-2051
610

Check Number: 2248308
Check Date: 12/15/22

AMOUNT
**$624.82

PAY Six Hundred Twenty Four & 82/100 Dollars

TO THE ORDER OF
REHABILITATION INSTITUTE
DEPT 4321
CAROL STREAM IL 60122

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈ ⑆0000062482⑆

CK 2248308 [redacted] PD 01/03 AMT $624.82

# EXHIBIT A-4

CHECK REGISTER

Check Date: 04/25/22

GroupNr: 3419
Company: CIENA/REGENCY AT GRAND BLANC

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 259933 | DEGARA APP PLLC | 190.90 | | 03/06/22-03/06/22 |
| 259934 | BROWN DEBORAH R | 211.95 | | 04/16/22-04/16/22 |
| 259935 | HURLEY MENTAL HEALTH ASSOC | 14.21 | | 04/06/22-04/06/22 |
| 259936 | MCLAREN REGIONAL MEDICAL | 717.37 | | 01/20/22-01/20/22 |
| 259937 | WOMENS INTEGRATED HEALTH CARE | 133.09 | | 04/08/22-04/08/22 |
| 259938 | QUEST DIAGNOSTIC | 93.91 | | 03/16/22-03/16/22 |
| 259939 | HURLEY MEDICAL CENTER | 392.00 | | 03/29/22-03/29/22 |
| 259940 | HURLEY MEDICAL CENTER | 38.76 | | 03/29/22-03/29/22 |
| 259941 | ASIF ISHAQUE | 187.05 | | 01/07/20-01/28/20 |
| 259942 | ASCENSION GENESYS HOSPITAL | 162.10 | | 02/15/22-02/15/22 |
| 259943 | ASCENSION GENESYS HOSPITAL | 4,250.64 | | 02/09/22-02/09/22 |
| 259944 | REGENTS OF UNIV OF MI | 144.72 | | 02/24/22-02/24/22 |
| 259945 | SCRIPT CARE, LTD | 10,248.69 | | 04/14/22-04/14/22 |
| 259946 | QUEST DIAGNOSTIC | 33.89 | | 03/29/22-03/29/22 |
| 259947 | QUEST DIAGNOSTIC | 25.51 | | 03/29/22-03/29/22 |
| | Total: | 16,844.79 | | |

EXHIBIT 41 10-23-24

depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 03/31/23 |

GROUP RESOURCES INC

**CHECKS PAID SUMMARY (continued)**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 03/01 | 2253146 * | $128.55 | 03/23 | 2256220 * | $142.63 | 03/08 | 2258668 * | $132.42 |
| 03/15 | 2253195 * | $348.24 | 03/22 | 2256225 * | $221.00 | 03/15 | 2258698 * | $75.00 |
| 03/17 | 2253249 * | $28.05 | 03/01 | 2256365 * | $50.06 | 03/02 | 2258701 * | $792.40 |
| 03/24 | 2253268 * | $412.17 | 03/21 | 2256387 * | $5,289.05 | 03/06 | 2258727 * | $110.88 |
| 03/01 | 2253537 * | $77.52 | 03/27 | 2256450 * | $201.94 | 03/17 | 2258766 * | $3,126.18 |
| 03/16 | 2253760 * | $69.18 | 03/14 | 2256495 * | $58.60 | 03/01 | 2258788 * | $205.00 |
| 03/02 | 2253783 * | $135.00 | 03/06 | 2256541 * | $45.30 | 03/17 | 2258994 * | $126.00 |
| 03/01 | 2253802 * | $437.40 | 03/21 | 2256569 * | $202.88 | 03/08 | 2259003 * | $262.71 |
| 03/21 | 2253973 * | $844.99 | 03/13 | 2256863 * | $101.15 | 03/01 | 2259005 * | $1,159.00 |
| 03/21 | 2253999 * | $117.08 | 03/02 | 2256890 * | $448.47 | 03/02 | 2259012 * | $465.75 |
| 03/01 | 2254000 | $193.50 | 03/15 | 2256918 * | $88.63 | 03/02 | 2259034 * | $126.17 |
| 03/14 | 2254013 * | $845.20 | 03/15 | 2256919 | $74.97 | 03/15 | 2259063 * | $62.25 |
| 03/10 | 2254014 | $117.20 | 03/15 | 2256920 | $72.91 | 03/15 | 2259064 | $62.25 |
| 03/09 | 2254118 * | $65.17 | 03/15 | 2256921 | $12.73 | 03/15 | 2259065 | $61.62 |
| 03/17 | 2254119 | $98.46 | 03/29 | 2256932 * | $117.82 | 03/15 | 2259066 | $62.25 |
| 03/09 | 2254151 * | $963.09 | 03/29 | 2256933 | $211.08 | 03/15 | 2259067 | $50.11 |
| 03/08 | 2254180 * | $1,438.17 | 03/09 | 2256934 | $286.40 | 03/15 | 2259068 | $62.25 |
| 03/29 | 2254199 * | $119.00 | 03/01 | 2257102 * | $119.45 | 03/15 | 2259069 | $62.25 |
| 03/06 | 2254318 * | $22.63 | 03/29 | 2257120 * | $384.26 | 03/15 | 2259070 | $1.38 |
| 03/01 | 2254434 * | $280.61 | 03/29 | 2257121 | $615.74 | 03/09 | 2259220 * | $65.17 |
| 03/14 | 2254436 * | $75.00 | 03/27 | 2257194 * | $431.67 | 03/01 | 2259283 * | $119.45 |
| 03/17 | 2254477 * | $1,296.69 | 03/01 | 2257261 * | $18.62 | 03/03 | 2259284 | $3,545.50 |
| 03/15 | 2254575 * | $65.17 | 03/01 | 2257262 | $14.91 | 03/06 | 2259375 * | $155.00 |
| 03/14 | 2254594 * | $276.29 | 03/01 | 2257263 | $70.05 | 03/02 | 2259401 * | $135.00 |
| 03/01 | 2254633 * | $12,309.07 | 03/03 | 2257399 * | $1,499.09 | 03/17 | 2259406 * | $221.25 |
| 03/01 | 2254634 | $2,520.00 | 03/02 | 2257649 * | $135.00 | 03/20 | 2259474 * | $3,767.67 |
| 03/21 | 2254963 * | $699.40 | 03/14 | 2257696 * | $114.71 | 03/14 | 2259492 * | $55.37 |
| 03/06 | 2254994 * | $82.00 | 03/22 | 2257701 * | $133.09 | 03/06 | 2259539 * | $95.22 |
| 03/22 | 2255086 * | $4,686.30 | 03/21 | 2257741 * | $97.05 | 03/06 | 2259617 * | $50.74 |
| 03/06 | 2255121 * | $141.08 | 03/29 | 2257754 * | $129.96 | 03/15 | 2259622 * | $9.00 |
| 03/01 | 2255303 * | $50.06 | 03/17 | 2257763 * | $4,328.35 | 03/06 | 2259738 * | $111.00 |
| 03/28 | 2255383 * | $60.12 | 03/17 | 2257853 * | $265.86 | 03/23 | 2259750 * | $115.44 |
| 03/23 | 2255449 * | $343.20 | 03/21 | 2258015 * | $63.03 | 03/01 | 2259779 * | $69.18 |
| 03/23 | 2255450 | $125.41 | 03/22 | 2258016 | $325.25 | 03/03 | 2259866 * | $57.43 |
| 03/17 | 2255480 * | $1,820.40 | 03/01 | 2258108 * | $79.00 | 03/03 | 2259867 | $387.49 |
| 03/22 | 2255564 * | $208.43 | 03/14 | 2258109 | $55.37 | 03/03 | 2259868 | $77.90 |
| 03/23 | 2255661 * | $548.10 | 03/03 | 2258149 * | $459.12 | 03/03 | 2259869 | $241.38 |
| 03/21 | 2255740 * | $300.00 | 03/23 | 2258359 * | $190.89 | 03/21 | 2259936 * | $717.37 |
| 03/01 | 2255773 * | $38.77 | 03/02 | 2258454 * | $329.00 | 03/08 | 2259943 * | $4,250.64 |
| 03/01 | 2256002 * | $77.52 | 03/01 | 2258549 * | $119.45 | 03/15 | 2259951 * | $211.32 |
| 03/06 | 2256031 * | $15.00 | 03/01 | 2258550 | $119.45 | 03/02 | 2259980 * | $308.00 |
| 03/09 | 2256201 * | $208.00 | 03/21 | 2258580 * | $5,169.77 | 03/03 | 2260015 * | $146.56 |

Member FDIC

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM EHBP
PO Box 3970
Duluth, GA 30096

Check Number: 2259943
Check Date: 02/16/23

AMOUNT
**$4,250.64

PAY Four Thousand Two Hundred Fifty & 64/100 Dollars

TO THE ORDER OF
ASCENSION GENESYS HOSPITAL
3278 SOLUTION CENTER
CHICAGO IL 60677-3002

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted]0793⑈

CK 2259943 [redacted] PD 03/08 AMT $4,250.64

# EXHIBIT A-5

CHECK REGISTER

Check Date: 06/30/22

GroupNr: 3348
Company: CIENA/REGENCY ON THE LAKE

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 263114 | LAKE HURON MEDICAL CENTER | 7.67 | | 06/01/22-06/01/22 |
| 263115 | HART MEDICAL EQUIPMENT | 99.81 | | 06/16/22-06/16/22 |
| 263116 | FAMILY HEALTHCARE OF BROWN CIT | 65.17 | | 06/16/22-06/16/22 |
| 263117 | GEORGE CARLEY, DO | 65.17 | | 06/02/22-06/02/22 |
| 263118 | PAULETTE S. BASS, DDS | 178.50 | | 06/15/22-06/15/22 |
| 263119 | PAULETTE S. BASS, DDS | 61.00 | | 06/15/22-06/15/22 |
| 263120 | PAULETTE S. BASS, DDS | 183.00 | | 06/15/22-06/15/22 |
| 263121 | MCLAREN PORT HURON | 766.84 | | 02/01/22-02/28/22 |
| 263122 | STAN KOKKINAKIS, DDS | 97.50 | | 06/15/22-06/15/22 |
| 263123 | GEORGE CARLEY, DO | 138.66 | | 06/13/22-06/13/22 |
| 263124 | LAKESIDE ANESTHESIA ASSOCIATES | 624.00 | | 05/25/22-05/25/22 |
| 263125 | PHYSICIAN HEALTHCARE NETWORK, | 130.92 | | 06/02/22-06/02/22 |
| 263126 | BIOTECH CLINICAL LAB | 10.89 | | 06/15/22-06/15/22 |
| 263127 | PHYSICIAN HEALTHCARE NETWORK, | 71.43 | | 06/15/22-06/15/22 |
| 263128 | COLLEEN GUILLIAT | 129.00 | | 06/16/22-06/16/22 |
| 263129 | ANNETTE BARNES-GRAIN | 74.98 | | 06/13/22-06/13/22 |
| 263130 | PORT HURON INTERNAL MEDICINE A | 65.17 | | 06/10/22-06/10/22 |
| 263131 | JERRY ORTHOPAEDIC INSTITUTE PL | 57.50 | | 06/13/22-06/13/22 |
| 263132 | LAKEVIEW CHIROPRACTIC PC | 101.91 | | 06/17/22-06/17/22 |
| 263133 | PORT HURON ENT, PC | 350.43 | | 06/03/22-06/03/22 |
| | Total: | 3,279.55 | | |

EXHIBIT
42
depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

BUSINESS CHECKING

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 06/28/24 |

GROUP RESOURCES INC

CHECKS PAID SUMMARY (continued)

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 06/10 | 2245440 * | $96.00 | 06/10 | 2268473 | $207.00 | 06/05 | 2278630 * | $185.40 |
| 06/10 | 2249366 * | $126.00 | 06/07 | 2269439 * | $168.00 | 06/05 | 2278676 * | $150.06 |
| 06/10 | 2249806 * | $222.00 | 06/10 | 2270772 * | $42.42 | 06/05 | 2278677 | $131.30 |
| 06/11 | 2251415 * | $95.20 | 06/05 | 2271411 * | $112.07 | 06/05 | 2278782 * | $26.93 |
| 06/06 | 2252547 * | $772.26 | 06/06 | 2271462 * | $543.70 | 06/05 | 2278968 * | $1,120.96 |
| 06/10 | 2253110 * | $112.00 | 06/07 | 2274939 * | $283.84 | 06/10 | 2279186 * | $67.22 |
| 06/10 | 2256459 * | $23.00 | 06/06 | 2274941 * | $305.90 | 06/10 | 2279187 | $67.22 |
| 06/10 | 2257040 * | $408.73 | 06/06 | 2275299 * | $16,673.31 | 06/10 | 2279188 | $67.22 |
| 06/11 | 2257178 * | $141.75 | 06/05 | 2275405 * | $20.30 | 06/07 | 2279210 * | $168.00 |
| 06/18 | 2257626 * | $232.89 | 06/05 | 2275406 | $25.13 | 06/05 | 2279254 * | $2,818.15 |
| 06/10 | 2259814 * | $610.68 | 06/06 | 2275813 * | $118.11 | 06/07 | 2279276 * | $130.50 |
| 06/10 | 2259902 * | $69.18 | 06/24 | 2275905 * | $184.32 | 06/07 | 2279277 | $190.92 |
| 06/05 | 2260371 * | $87.99 | 06/05 | 2275956 * | $27.36 | 06/10 | 2279338 * | $127.79 |
| 06/07 | 2260740 * | $129.00 | 06/04 | 2276392 * | $536.87 | 06/05 | 2279410 * | $26.93 |
| 06/07 | 2260741 | $105.00 | 06/07 | 2277027 * | $253.49 | 06/10 | 2279490 * | $318.00 |
| 06/10 | 2261239 * | $32.80 | 06/05 | 2277148 * | $74.40 | 06/06 | 2279581 * | $57.67 |
| 06/06 | 2262608 * | $14.14 | 06/05 | 2277149 | $2.14 | 06/06 | 2279856 * | $239.41 |
| 06/10 | 2263121 * | $766.84 | 06/05 | 2277150 | $127.50 | 06/07 | 2279906 * | $305.74 |
| 06/18 | 2263273 * | $159.75 | 06/05 | 2277274 * | $12.79 | 06/06 | 2280110 * | $4,886.37 |
| 06/10 | 2266889 * | $95.00 | 06/05 | 2277275 | $136.57 | 06/12 | 2280286 * | $139.68 |
| 06/10 | 2266890 | $72.00 | 06/05 | 2277754 * | $26.93 | 06/07 | 2280876 * | $57.66 |
| 06/10 | 2266891 | $174.00 | 06/05 | 2278204 * | $12.79 | 06/10 | 2281011 * | $294.00 |
| 06/10 | 2266892 | $126.00 | 06/05 | 2278205 | $41.07 | 06/24 | 2281841 * | $225.00 |
| 06/05 | 2267756 * | $11.16 | 06/10 | 2278577 * | $170.00 | 06/11 | 2282018 * | $158.00 |
| 06/07 | 2268377 * | $283.90 | 06/10 | 2278578 | $136.00 | 06/06 | 2283357 * | $4,531.39 |
| 06/06 | 2268378 | $61,761.59 | 06/24 | 2278594 * | $59.00 | 06/03 | 3248097 * | $133.09 |
| 06/10 | 2268472 * | $348.00 | 06/10 | 2278605 * | $67.22 | 06/10 | 3261245 * | $11.50 |

DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|---|---|
| 06/03 | $4,112,702.64 | 06/04 | $3,727,372.73 | 06/05 | $3,401,211.56 | 06/06 | $3,313,421.41 |
| 06/07 | $3,153,534.55 | 06/10 | $2,927,052.24 | 06/11 | $2,788,086.04 | 06/12 | $2,614,195.72 |
| 06/13 | $2,591,756.72 | 06/14 | $2,574,971.38 | 06/17 | $2,542,792.66 | 06/18 | $2,447,057.03 |
| 06/20 | $2,447,598.54 | 06/21 | $2,471,504.65 | 06/24 | $2,320,863.99 | 06/25 | $2,409,075.80 |
| 06/26 | $2,466,086.87 | 06/27 | $2,425,214.34 | 06/28 | $2,513,089.33 | | |

Member FDIC

CIENA/REGENCY ON THE LAKE
Group Resources f/b/o CHM EHBP
PO Box 3970
Duluth, GA 30096

First Horizon Bank

2263121

Issue Date: 02/22/2024

AMOUNT
***$766.84

PAY ***Seven Hundred Sixty Six Dollars and Eighty Four Cents***

TO THE ORDER OF MCLAREN PORT HURON
PO BOX 775382
CHICAGO IL 60677-5382

Authorized Signature

[redacted]0793⑈

CK 2263121 [redacted] PD 06/10 AMT $766.84

# EXHIBIT A-6

CHECK REGISTER

Check Date: 12/01/22

GroupNr: 3309
Company: CIENA/REGENCY OF LIVONIA

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 270161 | SOUTHGATE FAMILY DENTAL, PLLC | 164.00 | | 11/15/22-11/15/22 |
| 270162 | HENRY FORD HOSPITAL | 40.00 | | 11/16/22-11/16/22 |
| 270163 | RICHARD A KIRSCH DDS | 194.75 | | 11/17/22-11/17/22 |
| 270164 | AMAZING DENTAL GARDEN CITY | 158.97 | | 11/12/22-11/12/22 |
| 270165 | AMAZING DENTAL GARDEN CITY | 293.14 | | 11/12/22-11/12/22 |
| 270166 | AMAZING DENTAL GARDEN CITY | 547.89 | | 11/12/22-11/12/22 |
| 270167 | BRIGHT SIDE DENTAL LIVONIA | 509.50 | | 11/14/22-11/14/22 |
| 270168 | HENRY FORD HOSPITAL | 190.20 | | 11/14/22-11/14/22 |
| 270169 | ASCENSION PROVIDENCE HOSP | 1,769.04 | | 11/03/22-11/03/22 |
| | Total: | 3,867.49 | | |

EXHIBIT 43 10-22-24

depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

GROUP RESOURCES INC

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 11/30/23 |

**CHECKS PAID SUMMARY (continued)**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 11/22 | 2260311 | $106.96 | 11/17 | 2263816 * | $4,084.95 | 11/09 | 2267768 * | $2.97 |
| 11/15 | 2260312 | $140.12 | 11/22 | 2263955 * | $65.17 | 11/03 | 2267804 * | $677.19 |
| 11/22 | 2260313 | $106.96 | 11/29 | 2264279 * | $213.72 | 11/22 | 2268005 * | $9.22 |
| 11/22 | 2260317 * | $64.13 | 11/22 | 2264330 * | $65.17 | 11/22 | 2268006 | $93.01 |
| 11/21 | 2260339 * | $71.43 | 11/22 | 2264331 | $65.17 | 11/09 | 2268068 * | $267.92 |
| 11/22 | 2260377 * | $130.34 | 11/09 | 2264333 * | $175.55 | 11/27 | 2268240 * | $167.91 |
| 11/21 | 2260407 * | $109.67 | 11/21 | 2264365 * | $111.18 | 11/21 | 2268337 * | $120.84 |
| 11/02 | 2260800 * | $375.00 | 11/07 | 2264454 * | $81.00 | 11/29 | 2268657 * | $41.38 |
| 11/02 | 2260801 | $241.00 | 11/15 | 2264484 * | $148.00 | 11/21 | 2268662 * | $69.96 |
| 11/07 | 2260873 * | $87.66 | 11/06 | 2264513 * | $22.46 | 11/14 | 2268865 * | $12.86 |
| 11/10 | 2260920 * | $185.00 | 11/22 | 2264637 * | $127.26 | 11/14 | 2268866 | $213.53 |
| 11/10 | 2260922 * | $185.00 | 11/09 | 2264668 * | $74.76 | 11/14 | 2268867 | $406.23 |
| 11/10 | 2260923 | $185.00 | 11/09 | 2264669 | $3.40 | 11/03 | 2268988 * | $775.00 |
| 11/10 | 2260924 | $265.00 | 11/07 | 2264782 * | $111.00 | 11/07 | 2269063 * | $93.36 |
| 11/10 | 2260925 | $185.00 | 11/15 | 2264888 * | $152.60 | 11/09 | 2269268 * | $124.14 |
| 11/15 | 2260939 * | $104.78 | 11/21 | 2265296 * | $109.67 | 11/07 | 2269361 * | $98.13 |
| 11/07 | 2260940 | $106.96 | 11/01 | 2265316 * | $39.22 | 11/07 | 2269362 | $55.83 |
| 11/22 | 2260941 | $106.03 | 11/01 | 2265317 | $166.55 | 11/07 | 2269363 | $10.47 |
| 11/02 | 2260961 * | $146.55 | 11/01 | 2265318 | $74.39 | 11/15 | 2269480 * | $82.75 |
| 11/02 | 2260962 | $207.41 | 11/01 | 2265319 | $74.39 | 11/10 | 2269603 * | $140.00 |
| 11/13 | 2261471 * | $40.00 | 11/21 | 2265563 * | $109.67 | 11/10 | 2269604 | $140.00 |
| 11/21 | 2261673 * | $57.72 | 11/01 | 2265592 * | $74.39 | 11/10 | 2269605 | $140.00 |
| 11/06 | 2261724 * | $65.17 | 11/01 | 2265593 | $74.40 | 11/09 | 2269619 * | $76.20 |
| 11/20 | 2261823 * | $467.82 | 11/06 | 2265690 * | $399.00 | 11/21 | 2269633 * | $120.84 |
| 11/07 | 2261861 * | $150.00 | 11/01 | 2265853 * | $74.39 | 11/07 | 2269643 * | $130.35 |
| 11/24 | 2262071 * | $148.94 | 11/20 | 2265910 * | $366.85 | 11/09 | 2269997 * | $99.08 |
| 11/22 | 2262205 * | $65.17 | 11/07 | 2265966 * | $71.00 | 11/15 | 2270108 * | $124.14 |
| 11/22 | 2262206 | $70.69 | 11/22 | 2266160 * | $126.91 | 11/06 | 2270115 * | $23.80 |
| 11/22 | 2262207 | $211.81 | 11/22 | 2266161 | $76.20 | 11/01 | 2270116 | $1,444.30 |
| 11/22 | 2262245 * | $101.15 | 11/15 | 2266176 * | $40.84 | 11/01 | 2270161 * | $164.00 |
| 11/09 | 2262250 * | $138.47 | 11/07 | 2266184 * | $92.49 | 11/10 | 2270173 * | $19,501.53 |
| 11/20 | 2262563 * | $40.77 | 11/21 | 2266539 * | $90.97 | 11/01 | 2270219 * | $567.63 |
| 11/10 | 2262644 * | $14.01 | 11/01 | 2266556 * | $115.82 | 11/07 | 2270269 * | $42.04 |
| 11/09 | 2262668 * | $160.43 | 11/01 | 2266557 | $32.96 | 11/07 | 2270297 * | $181.21 |
| 11/22 | 2262797 * | $65.17 | 11/01 | 2266558 | $57.91 | 11/20 | 2270357 * | $127.50 |
| 11/22 | 2262825 * | $138.66 | 11/01 | 2266559 | $16.48 | 11/24 | 2270360 * | $211.00 |
| 11/02 | 2263131 * | $57.50 | 11/01 | 2266787 * | $113.61 | 11/07 | 2270517 * | $103.40 |
| 11/27 | 2263544 * | $65.53 | 11/01 | 2266789 * | $72.39 | 11/29 | 2270637 * | $133.97 |
| 11/02 | 2263552 * | $1,224.87 | 11/10 | 2266966 * | $57,410.63 | 11/24 | 2270659 * | $126.33 |
| 11/09 | 2263566 * | $69.18 | 11/07 | 2267507 * | $144.01 | 11/24 | 2270660 | $561.00 |
| 11/15 | 2263570 * | $312.14 | 11/21 | 2267673 * | $89.46 | 11/15 | 2270713 * | $85.69 |
| 11/27 | 2263758 * | $156.04 | 11/09 | 2267766 * | $84.57 | 11/29 | 2270726 * | $517.79 |

Member FDIC

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM EHBP
PO Box 3970
Duluth, GA 30096

Georgia Commerce Bank

64-2011
610

Check Number: 2270161
Check Date: 10/12/23

AMOUNT
**$164.00

PAY One Hundred Sixty Four Dollars

TO THE ORDER OF
SOUTHGATE FAMILY DENTAL, PLLC
15185 ALLEN ROAD
SOUTHGATE MI 48195

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈

CK 2270161 [redacted] PD 11/01 AMT $164.00

# EXHIBIT A-7

CHECK REGISTER

Check Date: 12/15/22

GroupNr: 3309
Company: CIENA/REGENCY OF LIVONIA

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 270779 | BIOTECH CLINICAL LAB | 62.43 | | 12/01/22-12/01/22 |
| 270780 | HENRY FORD HOSPITAL | 51.53 | | 05/04/22-05/04/22 |
| 270781 | STANLEY M. POLECK, DO PLLC | 134.82 | | 11/29/22-11/29/22 |
| 270782 | STANLEY M. POLECK, DO PLLC | 18.47 | | 11/29/22-11/29/22 |
| 270783 | STANLEY M. POLECK, DO PLLC | 81.92 | | 11/29/22-11/29/22 |
| 270784 | STANLEY M. POLECK, DO PLLC | 182.23 | | 11/29/22-11/29/22 |
| 270785 | STANLEY M. POLECK, DO PLLC | 30.45 | | 11/29/22-11/29/22 |
| 270786 | STANLEY M. POLECK, DO PLLC | 10.78 | | 11/29/22-11/29/22 |
| 270787 | OAKWOOD HOSPITAL MEDICAL | 4,434.57 | | 08/23/22-08/23/22 |
| 270788 | OAKWOOD SOUTHSHORE MEDICAL | 3,126.28 | | 09/29/22-09/29/22 |
| 270789 | WILLIAM BEAUMONT HOSP - TROY H | 940.53 | | 11/10/22-11/10/22 |
| 270790 | GREAT LAKES PAIN MANAGEMENT MD | 507.18 | | 11/10/22-11/10/22 |
| 270791 | VHS PHYSICIANS OF MICHIGAN | 158.60 | | 11/14/22-11/14/22 |
| 270792 | IHA HEALTH SERVICES CORP | 290.21 | | 12/05/22-12/05/22 |
| 270793 | MENDELSON KORNBLUM ORTHOPEDICS | 49.61 | | 11/22/22-11/22/22 |
| 270794 | MENDELSON KORNBLUM ORTHOPEDICS | 48.39 | | 11/22/22-11/22/22 |
| 270795 | MENDELSON KORNBLUM ORTHOPEDICS | 59.25 | | 11/18/22-11/18/22 |
| 270796 | MENDELSON KORNBLUM ORTHOPEDICS | 38.75 | | 11/18/22-11/18/22 |
| 270797 | NIEMI ANDREA | 176.64 | | 11/22/22-11/22/22 |
| 270798 | BIOTECH CLINICAL LAB | 51.31 | | 12/02/22-12/02/22 |
| 270799 | BOTSFORD MEDICAL IMAGING PC | 43.87 | | 10/05/22-10/05/22 |
| 270800 | IHA HEALTH SERVICES CORP | 9.98 | | 11/29/22-11/29/22 |
| 270801 | ST MARY MERCY HOSPITAL | 771.68 | | 11/29/22-11/29/22 |
| 270802 | ALLENWOOD DENTAL, PLLC | 106.00 | | 11/26/22-11/26/22 |
| 270803 | ALLENWOOD DENTAL, PLLC | 95.00 | | 11/26/22-11/26/22 |
| 270804 | MI INT MEDICINE ASSOC PC | 214.20 | | 10/31/22-11/02/22 |
| 270805 | MI INT MEDICINE ASSOC PC | 105.32 | | 11/03/22-11/03/22 |
| | Total: | 11,800.00 | | |

EXHIBIT 44
10-3-24
depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

BUSINESS CHECKING

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 01/31/24 |

GROUP RESOURCES INC

CHECKS PAID SUMMARY (continued)

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 01/02 | 2264707 * | $34.62 | 01/31 | 2268322 * | $544.24 | 01/16 | 2270787 * | $4,434.57 |
| 01/02 | 2264708 | $58.38 | 01/02 | 2268350 * | $93.00 | 01/23 | 2270858 * | $96.24 |
| 01/05 | 2264985 * | $118.37 | 01/02 | 2268351 | $36.00 | 01/26 | 2270979 * | $51.00 |
| 01/02 | 2265016 * | $27.40 | 01/02 | 2268352 | $57.00 | 01/03 | 2270980 | $120.72 |
| 01/02 | 2265017 | $27.40 | 01/02 | 2268677 * | $84.93 | 01/11 | 2271019 * | $4,449.32 |
| 01/02 | 2265018 | $65.60 | 01/02 | 2268678 | $32.57 | 01/17 | 2271132 * | $241.80 |
| 01/02 | 2265019 | $65.60 | 01/02 | 2268679 | $77.70 | 01/17 | 2271134 * | $16,984.46 |
| 01/23 | 2265137 * | $1,019.46 | 01/16 | 2268871 * | $15,440.86 | 01/17 | 2271135 | $13.00 |
| 01/17 | 2265198 * | $0.64 | 01/05 | 2268946 * | $80.76 | 01/02 | 2271160 * | $169.44 |
| 01/17 | 2265199 | $175.42 | 01/02 | 2268977 * | $57.00 | 01/22 | 2271196 * | $2.49 |
| 01/05 | 2265284 * | $118.37 | 01/02 | 2268978 | $41.94 | 01/10 | 2271310 * | $95.04 |
| 01/02 | 2265859 * | $93.00 | 01/22 | 2269082 * | $352.80 | 01/23 | 2271642 * | $123.22 |
| 01/09 | 2266040 * | $88.19 | 01/11 | 2269083 | $1,252.75 | 01/12 | 2271836 * | $112.33 |
| 01/23 | 2266077 * | $121.81 | 01/31 | 2269283 * | $114.37 | 01/26 | 2271915 * | $9.00 |
| 01/02 | 2266211 * | $93.00 | 01/02 | 2269310 * | $32.67 | 01/05 | 2272015 * | $114.37 |
| 01/02 | 2266212 | $93.00 | 01/02 | 2269311 | $60.33 | 01/26 | 2272097 * | $51.00 |
| 01/05 | 2266506 * | $118.37 | 01/11 | 2269352 * | $1,663.48 | 01/23 | 2272336 * | $38.37 |
| 01/02 | 2266795 * | $93.00 | 01/11 | 2269423 * | $119.00 | 01/23 | 2272337 | $18.19 |
| 01/05 | 2266927 * | $141.88 | 01/23 | 2269496 * | $83.34 | 01/23 | 2272338 | $140.25 |
| 01/02 | 2267119 * | $47.40 | 01/05 | 2269634 * | $118.17 | 01/31 | 2272462 * | $467.89 |
| 01/02 | 2267120 | $32.67 | 01/02 | 2269696 * | $32.67 | 01/23 | 2272608 * | $62.52 |
| 01/02 | 2267121 | $81.60 | 01/02 | 2269697 | $88.83 | 01/23 | 2272610 * | $76.20 |
| 01/02 | 2267122 | $117.33 | 01/02 | 2269698 | $64.50 | 01/23 | 2272627 * | $13.20 |
| 01/11 | 2267251 * | $7,008.11 | 01/02 | 2269741 * | $78.69 | 01/23 | 2272628 | $205.17 |
| 01/30 | 2267321 * | $135.00 | 01/26 | 2269755 * | $109.69 | 01/23 | 2272629 | $229.20 |
| 01/02 | 2267437 * | $93.00 | 01/17 | 2269869 * | $272.79 | 01/02 | 2272632 * | $180.00 |
| 01/02 | 2267438 | $93.00 | 01/02 | 2269876 * | $270.00 | 01/02 | 2272634 * | $270.00 |
| 01/11 | 2267464 * | $202.37 | 01/02 | 2269877 | $90.00 | 01/22 | 2272874 * | $718.74 |
| 01/05 | 2267727 * | $118.37 | 01/31 | 2269992 * | $76.20 | 01/31 | 2272880 * | $127.50 |
| 01/10 | 2267729 * | $153.59 | 01/09 | 2270082 * | $76.20 | 01/22 | 2272905 * | $114.37 |
| 01/23 | 2267748 * | $123.08 | 01/23 | 2270183 * | $236.88 | 01/17 | 2272942 * | $53.15 |
| 01/23 | 2267847 * | $4,221.16 | 01/26 | 2270243 * | $51.00 | 01/23 | 2272959 * | $137.34 |
| 01/02 | 2267993 * | $180.00 | 01/22 | 2270327 * | $202.80 | 01/23 | 2273075 * | $76.20 |
| 01/02 | 2267994 | $198.00 | 01/23 | 2270418 * | $76.20 | 01/31 | 2273106 * | $175.20 |
| 01/02 | 2267995 | $60.00 | 01/31 | 2270534 * | $482.38 | 01/30 | 2273107 | $12.40 |
| 01/02 | 2267996 | $270.00 | 01/31 | 2270535 | $455.49 | 01/03 | 2273171 * | $331.72 |
| 01/02 | 2267998 * | $270.00 | 01/31 | 2270536 | $185.25 | 01/31 | 2273268 * | $118.12 |
| 01/05 | 2268080 * | $118.37 | 01/02 | 2270578 * | $118.48 | 01/18 | 2273301 * | $120.84 |
| 01/02 | 2268121 * | $57.00 | 01/22 | 2270631 * | $440.88 | 01/23 | 2273354 * | $103.20 |
| 01/02 | 2268122 | $36.00 | 01/17 | 2270701 * | $12.00 | 01/11 | 2273637 * | $69.38 |
| 01/17 | 2268268 * | $298.00 | 01/23 | 2270705 * | $116.86 | 01/30 | 2273705 * | $329.65 |
| 01/16 | 2268276 * | $132.21 | 01/23 | 2270743 * | $33.14 | 01/11 | 2273751 * | $279.08 |

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources Cho
CHM LHDP
PO Box 3970
Duluth, GA 30096

Check Number: 2270787
Check Date: 12/28/23

AMOUNT
**$4,434.57

PAY Four Thousand Four Hundred Thirty Four & 57/100 Dollars

TO THE ORDER OF
OAKWOOD HOSPITAL MEDICAL
PO BOX 933211
CLEVELAND OH 44193-0035

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈

CK 2270787 [redacted] PD 01/16 AMT $4,434.57

# EXHIBIT A-8

CHECK REGISTER

Check Date: 02/02/23

GroupNr: 3409
Company: CIENA/REGENCY AT ST CLAIR SHORE

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 273167 | RIYADH P. KASMIKHA, MD | 201.60 | | 11/17/22-12/19/22 |
| 273168 | BEAUMONT HOSPITAL DEARBORN | 750.05 | | 01/13/23-01/13/23 |
| 273169 | CENTER FOR PREVENTATIVE MEDICI | 144.65 | | 11/10/22-11/10/22 |
| 273170 | HENRY FORD HEALTH SYSTEM | 119.84 | | 01/15/23-01/18/23 |
| 273171 | ANTHONY V. BENENATI, DPM PC | 331.72 | | 01/09/23-01/09/23 |
| 273172 | IVF MICHIGAN ROCHESTER & FLINT | 120.84 | | 11/22/22-11/29/22 |
| 273173 | WILLIAM BEAUMONT HOSP - TROY H | 694.90 | | 01/19/23-01/19/23 |
| 273174 | ROBERT PICCININI, DO | 60.00 | | 01/16/23-01/16/23 |
| 273175 | ROBERT PICCININI, DO | 60.00 | | 12/21/22-12/21/22 |
| 273176 | CAROLE L. KOWALCZYK | 40.84 | | L01/19/23-01/19/23 |
| 273177 | SCRIPT CARE, LTD | 1,201.09 | | 01/31/23-01/31/23 |
| 273178 | ASCENSION MICHIGAN CMG | 120.84 | | 01/16/23-01/16/23 |
| 273179 | GLORY COUNSELING SERVICES | 405.00 | | 07/26/22-08/29/22 |
| 273180 | GLORY COUNSELING SERVICES | 270.00 | | 01/03/23-01/11/23 |
| 273181 | GLORY COUNSELING SERVICES | 405.00 | | 09/13/22-10/12/22 |
| 273182 | GLORY COUNSELING SERVICES | 405.00 | | 10/27/22-12/13/22 |
| | Total: | 5,331.37 | | |

EXHIBIT
45
10-23-24
depobook.com

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

GROUP RESOURCES INC

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 02/29/24 |

**CHECKS PAID SUMMARY (continued)**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 02/23 | 2272919 * | $83.40 | 02/23 | 2275738 | $6.61 | 02/02 | 2278917 * | $2.56 |
| 02/01 | 2273138 * | $67.80 | 02/26 | 2276259 * | $33.00 | 02/14 | 2278925 * | $104.25 |
| 02/23 | 2273170 * | $119.84 | 02/20 | 2276389 * | $9.22 | 02/16 | 2278981 * | $113.90 |
| 02/23 | 2273184 * | $169.69 | 02/20 | 2276390 | $120.52 | 02/12 | 2278982 | $131.54 |
| 02/23 | 2273185 | $24.55 | 02/21 | 2276395 * | $328.05 | 02/01 | 2279017 * | $39.00 |
| 02/23 | 2273186 | $520.11 | 02/21 | 2276417 * | $10,432.30 | 02/23 | 2279036 * | $154.03 |
| 02/23 | 2273189 * | $322.69 | 02/16 | 2276627 * | $408.00 | 02/23 | 2279068 * | $104.69 |
| 02/23 | 2273205 * | $31.80 | 02/21 | 2276816 * | $288.00 | 02/23 | 2279070 * | $79.20 |
| 02/23 | 2273220 * | $180.02 | 02/14 | 2276820 * | $526.42 | 02/09 | 2279099 * | $33.09 |
| 02/12 | 2273232 * | $78.68 | 02/28 | 2276853 * | $129.63 | 02/09 | 2279102 * | $209.79 |
| 02/23 | 2273305 * | $109.69 | 02/09 | 2276928 * | $58.13 | 02/23 | 2279115 * | $159.79 |
| 02/27 | 2273362 * | $150.00 | 02/14 | 2277130 * | $144.00 | 02/23 | 2279126 * | $446.84 |
| 02/23 | 2273461 * | $684.00 | 02/01 | 2277292 * | $139.15 | 02/23 | 2279128 * | $50.59 |
| 02/23 | 2273463 * | $802.39 | 02/26 | 2277432 * | $76.20 | 02/23 | 2279129 | $300.06 |
| 02/23 | 2273465 * | $224.91 | 02/27 | 2277568 * | $245.35 | 02/22 | 2279156 * | $103.50 |
| 02/23 | 2273467 * | $243.58 | 02/02 | 2277581 * | $36.20 | 02/22 | 2279157 | $310.50 |
| 02/23 | 2273469 * | $684.00 | 02/27 | 2277587 * | $157.63 | 02/12 | 2279235 * | $26.84 |
| 02/23 | 2273524 * | $109.69 | 02/20 | 2277790 * | $197.22 | 02/23 | 2279273 * | $39.68 |
| 02/23 | 2273604 * | $146.50 | 02/20 | 2277791 | $216.67 | 02/06 | 2279278 * | $112.50 |
| 02/16 | 2273724 * | $187.06 | 02/23 | 2277858 * | $67.22 | 02/12 | 2279343 * | $78.07 |
| 02/28 | 2273750 * | $90.97 | 02/23 | 2277859 | $67.22 | 02/12 | 2279344 | $274.83 |
| 02/23 | 2273943 * | $101.00 | 02/23 | 2277860 | $67.22 | 02/22 | 2279377 * | $92.00 |
| 02/26 | 2273992 * | $63.59 | 02/23 | 2277861 | $67.22 | 02/22 | 2279378 | $674.25 |
| 02/26 | 2273993 | $190.77 | 02/23 | 2277864 * | $97.76 | 02/22 | 2279379 | $111.00 |
| 02/26 | 2273994 | $63.59 | 02/21 | 2278225 * | $610.04 | 02/23 | 2279414 * | $104.69 |
| 02/26 | 2273995 | $190.77 | 02/23 | 2278307 * | $67.22 | 02/23 | 2279421 * | $82.41 |
| 02/23 | 2274022 * | $69.38 | 02/23 | 2278308 | $67.22 | 02/23 | 2279423 * | $1,247.10 |
| 02/23 | 2274032 * | $23.44 | 02/23 | 2278309 | $67.22 | 02/09 | 2279438 * | $140.71 |
| 02/12 | 2274046 * | $101.85 | 02/14 | 2278395 * | $370.39 | 02/23 | 2279461 * | $264.22 |
| 02/23 | 2274252 * | $239.17 | 02/14 | 2278396 | $485.96 | 02/23 | 2279530 * | $102.27 |
| 02/23 | 2274255 * | $19.83 | 02/14 | 2278397 | $759.05 | 02/23 | 2279531 | $87.33 |
| 02/01 | 2274324 * | $67.80 | 02/14 | 2278398 | $776.60 | 02/23 | 2279532 | $21.83 |
| 02/07 | 2274494 * | $276.56 | 02/14 | 2278399 | $414.86 | 02/06 | 2279628 * | $105.00 |
| 02/20 | 2274826 * | $55.76 | 02/23 | 2278461 * | $58.16 | 02/06 | 2279637 * | $152.25 |
| 02/12 | 2274946 * | $1,390.23 | 02/22 | 2278581 * | $145.16 | 02/22 | 2279659 * | $111.00 |
| 02/09 | 2275084 * | $10.05 | 02/14 | 2278672 * | $142.00 | 02/22 | 2279660 | $54.00 |
| 02/23 | 2275153 * | $152,431.22 | 02/22 | 2278749 * | $779.96 | 02/13 | 2279709 * | $10.52 |
| 02/26 | 2275159 * | $204.16 | 02/20 | 2278769 * | $193.73 | 02/12 | 2279747 * | $160.31 |
| 02/22 | 2275179 * | $1,101.52 | 02/23 | 2278861 * | $67.22 | 02/09 | 2279835 * | $144.01 |
| 02/06 | 2275226 * | $138.00 | 02/23 | 2278863 * | $55.12 | 02/09 | 2279842 * | $2.51 |
| 02/27 | 2275659 * | $221.00 | 02/23 | 2278865 * | $21.83 | 02/09 | 2279844 * | $41.20 |
| 02/23 | 2275737 * | $295.74 | 02/06 | 2278895 * | $76.20 | 02/23 | 2279940 * | $149.40 |

Member FDIC

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM UHBP
PO Box 3970
Duluth, GA 30096

Georgia Commerce Bank

Check Number: 2273170
Check Date: 02/08/24

AMOUNT
**$119.84

PAY One Hundred Nineteen & 84/100 Dollars

TO THE ORDER OF
HENRY FORD HEALTH SYSTEM
PO BOX 670884
DETROIT MI 48267-0884

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈

CK 2273170 [redacted] PD 02/23 AMT $119.84

# EXHIBIT A-9

CHECK REGISTER

Check Date: 03/30/23

GroupNr: 3352
Company: CIENA/ROYALTON MANOR

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 275782 | LIFE COACH PSYCHOLOGY PLC | 551.34 | | 03/02/23-03/16/23 |
| 275783 | LAKELAND HOSPITALS AT NILES AN | 157.34 | | 03/01/23-03/01/23 |
| 275784 | STRIVE MEDICAL LLC | 405.73 | | 03/07/23-09/29/22 |
| 275785 | STRIVE MEDICAL LLC | 97.20 | | 03/07/23-03/07/23 |
| | Total: | 1,211.61 | | |

EXHIBIT
46
10.29.24

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

BUSINESS CHECKING

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 01/31/24 |

GROUP RESOURCES INC

**CHECKS PAID SUMMARY (continued)**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 01/11 | 2273800 * | $162.00 | 01/16 | 2275106 * | $141.00 | 01/02 | 2277561 * | $52.27 |
| 01/11 | 2273808 * | $63.72 | 01/31 | 2275264 * | $226.15 | 01/02 | 2277562 | $856.00 |
| 01/11 | 2273811 * | $368.60 | 01/09 | 2275484 * | $2,067.30 | 01/17 | 2277820 * | $79.00 |
| 01/11 | 2273851 * | $175.79 | 01/12 | 2275513 * | $385.76 | 01/17 | 2277821 | $200.00 |
| 01/05 | 2273853 * | $137.69 | 01/30 | 2275522 * | $244.70 | 01/17 | 2277834 * | $166.50 |
| 01/26 | 2273870 * | $13.60 | 01/09 | 2275584 * | $26.93 | 01/09 | 2277877 * | $26.93 |
| 01/11 | 2273895 * | $175.79 | 01/09 | 2275585 | $26.93 | 01/09 | 2277878 | $26.93 |
| 01/02 | 2273923 * | $150.00 | 01/17 | 2275637 * | $73.32 | 01/16 | 2277931 * | $250.57 |
| 01/31 | 2273941 * | $104.18 | 01/31 | 2275638 | $48.96 | 01/17 | 2277932 | $235.43 |
| 01/09 | 2273958 * | $112.76 | 01/31 | 2275784 * | $405.73 | 01/23 | 2277936 * | $76.20 |
| 01/23 | 2274037 * | $4,226.24 | 01/31 | 2275785 | $97.20 | 01/23 | 2277940 * | $132.10 |
| 01/29 | 2274082 * | $180.26 | 01/26 | 2275837 * | $109.69 | 01/02 | 2278187 * | $134.59 |
| 01/17 | 2274155 * | $73.12 | 01/30 | 2275890 * | $120.84 | 01/02 | 2278189 * | $134.59 |
| 01/02 | 2274163 * | $437.51 | 01/31 | 2276067 * | $114.37 | 01/26 | 2278195 * | $51.00 |
| 01/11 | 2274454 * | $17.58 | 01/04 | 2276105 * | $3.03 | 01/11 | 2278201 * | $160.67 |
| 01/02 | 2274503 * | $83.41 | 01/04 | 2276106 | $80.76 | 01/17 | 2278358 * | $1,008.00 |
| 01/31 | 2274587 * | $410.11 | 01/10 | 2276295 * | $167.00 | 01/31 | 2278470 * | $109.60 |
| 01/31 | 2274588 | $77.49 | 01/12 | 2276305 * | $605.00 | 01/16 | 2278525 * | $105.00 |
| 01/11 | 2274594 * | $69.38 | 01/18 | 2276306 | $142.35 | 01/11 | 2278528 * | $275.45 |
| 01/11 | 2274610 * | $81.00 | 01/09 | 2276334 * | $52.88 | 01/16 | 2278632 * | $274.48 |
| 01/11 | 2274639 * | $224.91 | 01/12 | 2276359 * | $77.28 | 01/23 | 2278641 * | $76.20 |
| 01/11 | 2274640 | $224.91 | 01/24 | 2276364 * | $1,123.50 | 01/23 | 2278884 * | $874.16 |
| 01/11 | 2274641 | $11.72 | 01/02 | 2276371 * | $83.41 | 01/16 | 2278894 * | $6,250.26 |
| 01/11 | 2274642 | $224.91 | 01/12 | 2276448 * | $1,240.87 | 01/30 | 2279137 * | $120.72 |
| 01/11 | 2274643 | $74.97 | 01/09 | 2276499 * | $26.93 | 01/12 | 2279195 * | $28.57 |
| 01/11 | 2274644 | $224.91 | 01/09 | 2276500 | $26.93 | 01/09 | 2279196 | $26.93 |
| 01/11 | 2274652 * | $389.21 | 01/31 | 2276504 * | $133.60 | 01/09 | 2279197 | $26.93 |
| 01/11 | 2274653 | $396.51 | 01/23 | 2276510 * | $153.59 | 01/17 | 2279234 * | $45.98 |
| 01/11 | 2274654 | $373.66 | 01/09 | 2276737 * | $462.07 | 01/23 | 2279291 * | $111.36 |
| 01/11 | 2274679 * | $307.77 | 01/02 | 2276801 * | $220.31 | 01/23 | 2279508 * | $100.30 |
| 01/11 | 2274684 * | $227.87 | 01/31 | 2276821 * | $97.20 | 01/22 | 2279542 * | $114.37 |
| 01/11 | 2274730 * | $40.78 | 01/05 | 2276969 * | $123.45 | 01/31 | 2279732 * | $378.00 |
| 01/22 | 2274757 * | $132.10 | 01/05 | 2276998 * | $1,765.76 | 01/26 | 2280229 * | $32.26 |
| 01/11 | 2274787 * | $1,182.00 | 01/05 | 2277026 * | $328.75 | 01/09 | 2280236 * | $26.93 |
| 01/23 | 2274869 * | $103.20 | 01/11 | 2277042 * | $822.00 | 01/30 | 2280568 * | $302.30 |
| 01/31 | 2274871 * | $93.01 | 01/03 | 2277464 * | $208.46 | 01/31 | 3271418 * | $42.97 |
| 01/30 | 2275087 * | $296.45 | 01/23 | 2277556 * | $114.37 | | | |

Member FDIC

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A BLUE BACKGROUND AND MICROPRINTING IN THE BORDER

Group Resources f/b/o
CHM EHBP
PO Box 3970
Duluth GA 30096

Check Number: 2275784
Check Date: 01/18/24

AMOUNT
**$405.73

PAY Four Hundred Five & 73/100 Dollars

TO THE ORDER OF STRIVE MEDICAL LLC
5800 CAMPUS CIRCLE
DR E STE 100B
IRVING TX 75063-2701

Authorized Signature

DO NOT CASH IF SECURITY SCREEN IS NOT PRESENT ON THE REVERSE SIDE OF THIS DOCUMENT.

[redacted] 0793⑈

CK 2275784 [redacted] PD 01/31 AMT $405.73

# EXHIBIT A-10

CHECK REGISTER

Check Date: 08/10/23

GroupNr: 3417
Company: CIENA/REGENCY AT CANTON

| CheckNr | Payee | Amount | Employee/Dependent | Service Dates |
|---|---|---|---|---|
| 282021 | ST JOSEPH MERCY HOSPITAL | 822.87 | | 07/28/23-07/28/23 |
| 282022 | IHA HEALTH SERVICES CORP | 178.24 | | 07/27/23-07/28/23 |
| 282023 | OAKWOOD AMBULATORY LLC | 114.37 | | 07/07/23-07/07/23 |
| 282024 | BEAUMONT HOSPITAL DEARBORN | 36.45 | | 07/20/23-07/20/23 |
| 282025 | ZZZ ADVANCED DERMATOLOGY OF MI | 160.10 | | 07/21/23-07/21/23 |
| 282026 | BEAUMONT HOSPITAL DEARBORN | 11.54 | | 07/21/23-07/21/23 |
| 282027 | BOULDER EMERGENCY PHYSICIAN | 756.00 | | 07/14/23-07/14/23 |
| 282028 | REGENTS OF UNIV OF MI | 10.08 | | 07/19/23-07/19/23 |
| 282029 | HENRY FORD HOSPITAL | 58.00 | | 07/26/23-07/26/23 |
| 282030 | PRIME COUNSELING SERVICES | 120.00 | | 07/24/23-07/24/23 |
| 282031 | EPMG OF MICHIGAN PC | 470.71 | | 06/29/23-06/29/23 |
| 282032 | DRS HARRIS,BIRKHILL,WANG,SONGE | 195.65 | | 06/27/23-06/27/23 |
| 282033 | ST JOSEPH MERCY HOSPITAL | 341.70 | | 07/31/23-07/31/23 |
| 282034 | ST JOSEPH MERCY HOSPITAL | 49,112.90 | | 05/01/23-05/01/23 |
| 282035 | ALAFFIA HEALTH | 5,967.29 | | 05/01/23-05/01/23 |
| 282036 | ST JOSEPH MERCY HOSPITAL | 2,174.94 | | 07/11/23-07/28/23 |
| 282037 | HENRY FORD HOSPITAL | 175.50 | | 07/26/23-07/26/23 |
| 282038 | ALLERGY IMMUN ASSOC OF ANN ARB | 76.20 | | 07/07/23-07/07/23 |
| 282039 | ASCENSION BRIGHTON CENTER FOR | 146.17 | | 03/27/23-07/19/23 |
| 282040 | BEAUMONT HOSPITAL WAYNE | 88.48 | | 07/31/23-07/31/23 |
| 282041 | PROMEDICA MONROE CARDIOLOGY PL | 117.99 | | 07/21/23-07/21/23 |
| 282042 | VAN BUREN URGENT CARE CENTER | 75.00 | | 06/28/23-06/28/23 |
| 282043 | SAMI ABBASI, DO PLLC | 102.23 | | 07/24/23-07/24/23 |
| 282044 | PREMIER CARDIOVASCULAR SPECIAL | 121.35 | | 04/26/23-04/26/23 |
| 282045 | RT SPECIALISTS CORPORATION | 47.23 | | 07/22/23-07/22/23 |
| 282046 | RT SPECIALISTS CORPORATION | 149.80 | | 07/22/23-07/22/23 |
| 282047 | ST MARY MERCY HOSPITAL | 1,049.65 | | 07/27/23-07/27/23 |
| 282048 | ST JOS MERCY LIVINGSTON | 3,081.95 | | 07/27/23-07/27/23 |
| 282049 | BRIGHTON FAMILY PHYSICIANS PC | 78.69 | | 07/24/23-07/24/23 |
| 282050 | ST JOSEPH MERCY HOSPITAL | 457.56 | | 07/24/23-07/24/23 |
| | Total: | 66,298.64 | | |

EXHIBIT 47
depobook.com
10-22-24

FIRST HORIZON
P.O. BOX 84
MEMPHIS, TN 38101

**BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********0793 |
| STATEMENT DATE | 07/31/24 |

GROUP RESOURCES INC

**CHECKS PAID SUMMARY (continued)**

| DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT | DATE | CHECK # | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 07/29 | 295661 * | $69.80 | 07/05 | 2209869 * | $88.85 | 07/03 | 2210817 * | $23.13 |
| 07/31 | 295685 * | $26,754.33 | 07/02 | 2210132 * | $267.75 | 07/03 | 2210818 | $54.93 |
| 07/31 | 295898 * | $345.29 | 07/24 | 2210148 * | $150.35 | 07/03 | 2210819 | $58.38 |
| 07/26 | 295899 | $2,474.44 | 07/22 | 2210150 * | $164.82 | 07/22 | 2211117 * | $272.42 |
| 07/26 | 295900 | $266.14 | 07/03 | 2210165 * | $35.92 | 07/15 | 2211125 * | $165.69 |
| 07/29 | 295901 | $7.39 | 07/03 | 2210166 | $22.46 | 07/05 | 2254910 * | $69.18 |
| 07/19 | 2209836 * | $366.92 | 07/01 | 2210457 * | $22.40 | 07/01 | 2265471 * | $162.02 |
| 07/19 | 2209837 | $43.71 | 07/18 | 2210479 * | $101.36 | 07/15 | 2282035 * | $5,967.29 |
| 07/30 | 2209840 * | $102.38 | 07/24 | 2210803 * | $101.37 | 07/08 | 3254136 * | $109.67 |
| 07/18 | 2209858 * | $2,559.91 | | | | | | |

**DAILY BALANCE SUMMARY**

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|---|---|
| 07/01 | $2,419,791.25 | 07/02 | $2,160,000.14 | 07/03 | $1,964,958.15 | 07/05 | $1,943,337.28 |
| 07/08 | $1,905,032.06 | 07/09 | $1,887,933.82 | 07/10 | $1,871,040.41 | 07/11 | $2,125,609.00 |
| 07/12 | $2,098,690.31 | 07/15 | $2,038,567.68 | 07/16 | $2,023,719.79 | 07/17 | $2,140,834.30 |
| 07/18 | $2,025,276.67 | 07/19 | $1,947,388.95 | 07/22 | $1,796,204.61 | 07/23 | $1,762,278.58 |
| 07/24 | $1,724,849.20 | 07/25 | $1,844,460.56 | 07/26 | $1,947,501.40 | 07/29 | $1,920,606.67 |
| 07/30 | $1,887,439.09 | 07/31 | $1,779,265.46 | | | | |

**INQUIRY INFORMATION**

*ALL INQUIRIES FOR BALANCES, GENERAL INFORMATION, ACCOUNT ERRORS, ACCOUNT ACTIVITY, AUTOMATED TELLER MACHINE ACTIVITY AND DEBIT CARD TRANSACTIONS SHOULD BE DIRECTED TO 1-888-382-4968.
*TO REPORT A LOST/STOLEN DEBIT CARD: CALL 1-888-382-4968 IMMEDIATELY AND FOLLOW THE VOICE PROMPTS.
*DIRECT INQUIRIES CONCERNING PREAUTHORIZED ELECTRONIC FUNDS TRANSFER TO 1-888-382-4968.
*YOU MAY MAIL INQUIRIES CONCERNING AUTOMATED TELLER MACHINE ACTIVITY, DEBIT CARD TRANSACTIONS, AND PREAUTHORIZED ELECTRONIC FUNDS TRANSFERS TO:
FIRST HORIZON BANK
P.O. BOX 84
MEMPHIS, TN 38101

Member FDIC

CIENA/REGENCY AT CANTON
Group Resources f/b/o CHM EHBP
PO Box 3970
Duluth, GA 30096

First Horizon Bank

2282035

Issue Date: 02/15/2024

AMOUNT
***$5,967.29

PAY ***Five Thousand Nine Hundred Sixty Seven Dollars and Twenty Nine Cents***

TO THE ALAFFIA HEALTH
ORDER 169 MADISON AVE
OF #2049
NEW YORK NY 10016

VOID VOID VOID

Authorized Signature

[redacted]0793⑈

CK 2282035 [redacted] PD 07/15 AMT $5,967.29