UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIENA HEALTHCARE MANAGEMENT
INC. et al,

               Plaintiffs,                        Civil Action No. 24-cv-12362

v.

                                           HON. MARK A. GOLDSMITH

GROUP RESOURCES INCORPORATED
et al,

               Defendants.

_____/

## OPINION & ORDER (1) DENYING DEFENDANT WILLOUGHBY'S MOTION TO DISMISS (Dkt. 42) AND (2) DENYING IN PART AND GRANTING IN PART DEFENDANTS OBERMEYER, OBERMEYER WEALTH MANAGEMENT, LLC, AND SOUTHERN OAK DESIGN AND BUILD LLC'S MOTION TO DISMISS (Dkt. 48)

Plaintiffs Ciena Healthcare Management Inc. and Ciena Healthcare Management Inc. Health and Welfare Plan (Ciena) allege claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. and related state-law claims against two individuals, Andrew Willoughby and David Obermeyer, several entities, and ten John Does. See Am. Compl. (Dkt. 40). Before the Court are two motions to dismiss brought by four of the Defendants. One motion to dismiss is brought by Willoughby (Dkt. 42); the other motion (the Obermeyer motion) is brought by Obermeyer and two companies that he owns and controls: Obermeyer Wealth Management, LLC (OWM) and Southern Oak Design & Build LLC (SODB) (Dkt. 48). For the reasons that follow, the Court denies Willoughby's motion. It also denies dismissal as to Obermeyer, but grants it as to OWM and SODB.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to both motions, the briefing includes Ciena's response to Willoughby's motion (Dkt. 59), Ciena's

1

# I.     BACKGROUND

Ciena's amended complaint alleges the following facts.  Ciena is a Michigan corporation, which provides management services to Michigan skilled nursing, rehabilitation, sub-acute and assisted living facilities.  Am. Compl. ¶ 4.  It offers its employees medical and dental benefits through a self-funded benefits plan (the Plan).  Id. ¶ 5.  In 2008, Ciena hired Employee Benefit Concepts, Inc. (EBC), also a Michigan corporation, to be the administrative services agent of the Plan, as set forth in an administrative services agreement (ASA).  Id. ¶ 7.

At some point after 2008, Group Resources Acquisitions, LLC (GRA) acquired EBC, and rebranded it as, "Employee Benefits Concepts, a Group Resources® company."  Id. ¶ 7.  GRA, EBC, and related entities—which are collectively referred to as "Group Resources" in the amended complaint and in this Opinion—performed services in connection with the ASA between 2008 and 2024.[2] ¶ 99.  At all relevant times, Willoughby was president and CEO of GRA and all the related entities.  Am. Compl. ¶¶ 7, 14.  At all relevant times, Obermeyer was executive vice president and CFO of GRA and all the related entities.  Id. ¶ 7, 8.

The ASA granted Group Resources the ability to exercise control over the Plan's assets.  Id. ¶ 27.  For example, Group Resources—and Willoughby and Obermeyer, as CEO and CFO, respectively—exercised and maintained authority to approve or deny the Plan's claims and

---

response to the Obermeyer motion (Dkt. 60), Willoughby's reply (Dkt. 65), and the Obermeyer reply (Dkt. 64).

[2] The related entities are Group Resources Incorporated; GR Holdings, LLC; Group Resources of Iowa, LLC; Group Resources of Texas, LLC; Group Resources of Jamaica, LLC.  Am. Compl. ¶¶ 6, 15, 17, 18, 19.  The complaint named the related entities as defendants.  Id.  EBC; GRA; Group Resources Iowa, LLC; and Group Resources Incorporated later filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Georgia.  Am. Compl. ¶ 59.  This action is stayed as to those defendants.  Id.

appeals.  Id.  Additionally, Group Resources, Willoughby, and Obermeyer were responsible for performing or delegating "medical necessity determinations, experimental and investigational determinations and appeals," and deciding which claims would be paid, how much of the claim would be paid, and when the payment would occur.  Id.  To facilitate payment, Group Resources had a "for the benefit of" (FBO) bank account for the Plan.  Id. ¶ 34.  The bank account listed the account holder as: "GROUP RESOURCES INC[,] FBO[,] CIENA HEALTHCARE."  Id.

In late 2023 and early 2024, Ciena noticed that many of its employees' medical and dental providers were not being paid or that the payments were delayed.  Id. ¶ 35.  Ciena asked Group Resources to investigate this occurrence.  Id. ¶ 36.  At the time, Willoughby and Group Resources provided "various explanations."[3]  Id.

In the following months, Ciena realized that more of the Plan's participants were having issues with their providers not being paid.  Id. ¶ 37.  As a result, Ciena's employees were refused medical and dental treatment, and some were facing collections and credit issues.  Id. ¶ 37.  Ciena decided to visit Group Resources in March 2024 about the issues it was having.  Id. ¶ 38.  During the meeting, Willoughby and Group Resources confirmed that the Plan's funds were "not where they were supposed to be."[4]  Id.

Therefore, on April 9, 2024, Ciena sent Willoughby and Group Resources' outside counsel a letter stating that an "EBC executive may have misappropriated millions of dollars of Ciena's funds" and they demanded indemnification and documents related to their account.  Id. ¶ 39.  Group Resources' counsel responded and stated that it would send Ciena the "relevant records" and that it would honor its commitments to Ciena under the Plan.  Id. ¶ 40.  On April 30, 2024,

---

[3] The amended complaint does not elaborate on what the explanations were.

[4] The amended complaint does not identify who made this statement.

Willoughby emailed Ciena and explained that a police report and insurance claim had been filed with respect to the alleged misappropriation of the Plan's assets.  Id. ¶ 41.

Ciena subsequently acquired bank statements from its FBO account and compared them against the check registers that Group Resources had provided Ciena since 2021.  Id. ¶ 44.  Ciena discovered that approximately $14.1 million in claims had not been paid by Group Resources, even though the check registers that Group Resources sent to Ciena showed that these claims were paid.  Id.

Ciena alleges that Willoughby, Obermeyer, and Group Resources created fake check registers that were shared with Ciena to give the impression that claims were being paid out of the FBO account, when in reality, the money was being diverted elsewhere.  Id. ¶ 42–43, 45.  Specifically, Ciena alleges that Obermeyer stole assets from the Plan, by transferring funds from Ciena's FBO account into one or more accounts in Group Resources' name and then transferring the funds into bank account(s) controlled by OWM and SODB.  Id. at ¶ 22.

 Obermeyer formed and organized SODB, a Georgia-based LLC, in 2018.  Id. at ¶ 21.  SODB's principal place of business is in Georgia; Obermeyer is a member and registered agent of it.  Id.  Obermeyer also organized OWM, also a Georgia LLC, in 2023.  Id. ¶ 20.  Obermeyer is also the resident agent of OWM.  Id.  Ciena alleges that Willoughby knew, or should have known, that Obermeyer was stealing funds and transferring them to bank accounts controlled by OWM and SODB.  Id. ¶ 22.

Group Resources and Willoughby had been cooperating with Ciena's requests for documents and information regarding the Plan's assets until May of 2024.  Id. ¶ 47.  On May 3, 2024, Ciena emailed Willoughby asking for information about who owned the accounts that received the Plan's money and who initiated the transactions.  Id. ¶ 47.  Willoughby responded

4

with information about four of the requested accounts but did not provide information about the 30 other applicable accounts.  Id.  Instead, Willoughby wrote to Ciena, "we know there has been misappropriation associated with this account[,] and we have filed a claim with our insurance carrier and are awaiting further instructions regarding prosecution.  Until we get further in that investigation, there is no additional information I can provide you relating to this account."  Id. ¶ 48.

On July 29, 2024, Group Resources emailed their clients, including Ciena, a video of Willoughby explaining that they had discovered "significant criminal activity targeting Group Resources financials by a now former employee…."  Id. ¶ 51.  Ciena alleges that the "now former employee" referenced in the video is Obermeyer.  Id. ¶ 52.

Ciena alleges that documents produced in expedited discovery demonstrate that Willoughby was aware or should have been aware of Obermeyer's conduct.  Id. ¶ 62–63.  For instance, Ciena alleges that it received a bank statement for an account number ending in -5259 which it alleges is owned by OWM.  Id. ¶ 63.  Additionally, Ciena received an email forwarded from Obermeyer to Willoughby with a list of bank accounts with First Horizon Bank, to which Willoughby had access; they were in overdraft status.  Id.  One of the accounts in overdraft was the OWM account ending in -5259.  Id.  Therefore, Ciena alleges that Willoughby should have known that Obermeyer had bank accounts at First Horizon Bank that were unrelated to Group Resources accounts, which he used to funnel funds out of Group Resources and Ciena's FBO accounts.  Id.

Ciena also alleges that the documents show "thousands" of checks that Defendants represented to Ciena were paid but were not actually paid.  Id. ¶ 64.  Defendants have now paid some of those claims, but Ciena alleges that they have not received a full accounting of what claims

have been paid and what claims are still outstanding.  Id.  Ciena alleges that it is still missing $20 million that were improperly transferred out of its FBO account by the Defendants.  Id.

## II.    ANALYSIS

In their motions, Willoughby, Obermeyer, OWM, and SODB argue: (i) that this Court cannot exercise personal jurisdiction over them and (ii) that Ciena has failed to state claims against them.  The Court will first examine personal jurisdiction and then address the parties' arguments related to whether Ciena has adequately stated claims.

### A.  Personal Jurisdiction

"Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists."  Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1168 (6th Cir.1988).  In a case with multiple defendants, the plaintiff must prove that jurisdiction is proper as to each defendant.  Beydoun v. Watamoua Restairamts Holding, Q.S.C., 768 F.3d 499, 504 (6th Cir. 2014).  The Court first considers personal jurisdiction over Willoughby and Obermeyer as to the ERISA and state-law claims asserted against them.  It then considers personal jurisdiction over OWM and SODB, as to which only state-law claims are asserted.  As explained below, it finds that it has personal jurisdiction over Willoughby and Obermeyer for all claims, but no personal jurisdiction over OWM and SODB as to any claims.

#### 1.  Willoughby and Obermeyer

##### a.  ERISA Claims

Under ERISA, a district court may exercise personal jurisdiction over a defendant if the defendant has sufficient minimum contacts with the United States.  Med. Mut. of Ohio v. deSoto, 245 F.3d 561, 567–568 (6th Cir. 2001) (finding that 29 U.S.C. § 1132(e)(2) provides for nation-wide personal jurisdiction).  The defendant need not have sufficient minimum contacts with the

6

state where the action is brought, as in the typical personal jurisdiction analysis established by Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).  See deSoto, 245 F.3d at 566.

Willoughby and Obermeyer both have sufficient minimum contacts with the United States. In their motions, they both state that they are residents of the state of Georgia.  Willoughby Mot. at PageID.670–671; Obermeyer Mot. at PageID.731.  Therefore, this Court can exercise personal jurisdiction over them with respect to Ciena's ERISA claims.  deSoto, 245 F.3d at 566–568.

### b.  State-law Claims

Ciena asserts several state-law claims that are grounded in the same factual predicates of the ERISA claims.  They are for breach of contract; conversion; accounting; aiding and abetting; civil conspiracy; and violation of the Michigan Uniform Voidable Transactions Act, Mich. Comp. Laws § 566.34.

Pendent claim jurisdiction allows the Court to extend personal jurisdiction over Willoughby and Obermeyer for the state-law claims against them because they are related to the ERISA anchor claim.  Canaday v. Anthem Co., Inc., 9 F.4th 392, 401 (6th Cir. 2021) (recognizing pendent claim jurisdiction that relates to  an anchor claim for which there is a nationwide service of process provision); see also  IUE AFL-CIO Pension Fund v Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact…the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.").

 As explained below, even if pendent claim jurisdiction were not applicable, the Court has personal jurisdiction over Willoughby and Obermeyer under the analysis required by Int'l Shoe, 326 U.S. at 316–317 and its progeny.

In analyzing challenges to personal jurisdiction, courts distinguish between "general" and "specific" jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). General jurisdiction exists when a defendant's connections with the forum state are "so continuous and systematic as to render" the defendant "essentially at home" there. Id. (punctuation modified). Specific jurisdiction, however, depends on the connection between the forum state and the underlying controversy. Malone v. Stanley Black & Decker, Inc., 965 F.3d 499, 502 (6th Cir. 2020) (punctuation modified).

Ciena does not allege that it has general jurisdiction over the Defendants, reducing the question to whether there is specific jurisdiction over them. For this Court to exercise specific jurisdiction over Willoughby and Obermeyer regarding the state-law claims, it must have authority under Michigan's long arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment. AlixPartners, LLP v. Brewington, 836 F.3d 543, 549 (6th Cir. 2016); Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).

### 1. Michigan's Long Arm Statute

Willoughby agrees that Michigan's long arm statute, Mich. Comp. Laws § 600.705(6), allows the Court to exercise jurisdiction over him. Willoughby Mot. at PageID.669–670.

Obermeyer argues that Michigan's long arm statute does not reach him because Michigan's "general" personal jurisdiction relationships do not exist related to him. Obermeyer Mot. at PageID.722 (citing Mich. Comp. Laws § 600.701). But the "general" jurisdiction relationships of Michigan's long arm statute are only part of the statute. Michigan's long arm statute also allows a court to exercise "limited" personal jurisdiction. See Mich. Comp. Laws § 600.705. Obermeyer does not make any arguments why the "limited" personal jurisdictions provisions do not apply to him.

The Court finds that § 600.705(6) also applies to Obermeyer because he is "an officer of a corporation incorporated under the laws of…[Michigan]" as at all relevant times he was CFO of EBC.  Am. Compl. ¶¶ 7, 8.

Because the Court finds that Michigan's long arm statute applies to Willoughby and Obermeyer, it now examines whether the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment.

### 2.  Fourteenth Amendment Due Process Analysis

Due process requires that a nonresident defendant have "certain minimum contacts" with the forum so that haling the defendant into court in the forum is reasonably anticipated and does not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (punctuation modified).

The Sixth Circuit uses a three-part test to determine if minimum contacts exist between the defendant and the forum.  AlixPartners, LLP, 836 F.3d at 549–550.  "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." Id. at 549 (punctuation modified).  Second, the cause of action "must arise out of or relate to the defendant's contacts' with the forum." Id.  Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Id. at 549–550 (punctuation modified).

### a.  Purposeful Availment

The first requirement—purposeful availment—is "arguably the most important." Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007).  A defendant purposefully avails himself of a forum "by engaging in activity that should provide fair warning

that he may have to defend a lawsuit there[.]"  Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir.

2003) (punctuation modified).  Defendants do not, however, purposefully avail themselves of the

forum through "'random,' 'fortuitous' or 'attenuated' contacts[,] or [ ]the 'unilateral activity of

another party or third person."  Air Prods., 503 F.3d at 550 (citing Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 475 (1985).  As the discussion below reveals, the alleged conduct of

Willoughby and Obermeyer is anything but "random, fortuitous or attenuated."[5]

**Willoughby**

Ciena identifies several ways that Willoughby allegedly purposefully availed himself of

the privilege of acting or causing consequences in Michigan.  See Resp. to Willoughby at

PageID.1006–1007.  One basis is Ciena's allegation that Willoughby as president and CEO of

EBC, "continuously communicated with Ciena and the Plan about unpaid claims, amounts needed

to replenish the FBO, and the services being provided."  Id. at PageID.1006.  Ciena supports this

claim with the affidavit of Cynthia Daffin, who is a benefits manager with Ciena.  Daffin Aff. at

PageID.1116 (Dkt. 59–6).  Daffin attests that she has "exchanged hundreds of emails with

[Willoughby] and since 2018 had on average at least one call each month with Willoughby…."

Id. at PageID.1117.  Daffin further attests that these communications were about "claims

administration, payment of claims, unpaid claims, and the handling of the Plan's assets via the

'FBO' account on which Plan claims checks/payments were written…"  Id.  Moreover, the

communications also involved "the services Mr. Willoughby, EBC/Group Resources and their

leaders and employees were providing or would be providing, and generally how the relationship

between Ciena and EBC was going."  Id.  Daffin also stated that she met with Willoughby "at least

---

[5] The conduct also goes beyond their mere status as officers.  Therefore, their argument based on
the fiduciary-shield doctrine, Willoughby Mot. at PageID.685; Obermeyer Mot. at PageID.725–
727, is without merit.  See Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 697–698 (6th
Cir. 2000) (rejecting fiduciary shield doctrine because of defendant's personal involvement).

a dozen times in Michigan" between 2012 and 2024 and they discussed the Plan, the services being provided, and the relationship between Ciena and EBC/Group Resources.  Id. at PageID.1117–1118.

These numerous contacts are similar to contacts found sufficient in MAG IAS Holdings, Inc. v. Schmückle, 854 F.3d 894 (6th Cir. 2017).  There, the Sixth Circuit held that Plaintiffs had successfully made a prima facie showing of personal jurisdiction over a defendant, a German citizen residing in Germany, who was the former CEO of the plaintiffs' foreign parent company. Id. at 902.  The panel relied on three main factors in reaching its conclusion: the CEO (i) "had established a close working relationship with [the plaintiff's] entities and employees in Michigan;" (ii) "was directly involved in planning for future operations in the state" and (iii) "was in regular contact with Michigan-based executives by phone and email".  MAG IAS Holdings, Inc., 854 F.3d at 901–902.

Here, as president and CEO of Group Resources, Willoughby established a close working relationship with Ciena and its employees in Michigan, was in regular contact with them, and was directly involved in planning for future business in Michigan.  See Daffin Aff. at PageID.1116–1118.  Daffin attests that, since at least 2018, she exchanged "hundreds of emails" with Willoughby and spoke to him on the phone at least monthly while she was in Michigan.  Id. at PageID.1117. Furthermore, like in MAG IAG Holdings, Inc., these conversations consisted of direct planning and future operations in Michigan as Daffin attests, that they spoke about "claims administration, payment of claims, unpaid claims, and handling of the Plan's assets via the 'FBO' account" as well as "how the relationship between Ciena and EBC was going."  Id.  Ciena has established a prima facie case of purposeful availment.

11

Willoughby argues that this Court does not have personal jurisdiction over him because he was (i) overseeing EBC operations from Georgia; (ii) there was no proof that he was aware of the tortious conduct; (iii) he is not personally listed as a party to the ASA; and (iv) the "few" emails that Willoughby was "only copied on…and rarely responded" to are insufficient to demonstrate that he purposefully availed himself to Michigan.   Willoughby Mot. at PageID.674–676; Willoughby Reply at PageID.1569.

These arguments are unpersuasive.   As demonstrated above, Daffin attested that she exchanged hundreds of emails with Willoughby over the years.   See Daffin Aff. at PageID.1116–1118.   In addressing a motion to dismiss based on personal jurisdiction, the Sixth Circuit has instructed that courts ignore defendants' affidavits to the extent they directly contradict the specific facts the plaintiff relies on to support their prima facie proofs.   Malone, 965 F.3d at 505–506.

In addition, Ciena has sufficiently supported its allegations that Willoughby was doing more than just "overseeing operations" from Georgia.   In its response, Ciena provided text messages between Willoughby and Obermeyer that span from July of 2018 to May of 2024.   See Text Messages at PageID.1170–1221 (Dkt. 59–7).   Over the approximately six years, Willoughby and Obermeyer texted about Ciena and, at times, Willoughby instructed Obermeyer to take certain actions with respect to Ciena.   Id.   For example, on August 5, 2018, Willoughby texted Obermeyer, "When you get a chance tomorrow, can you update the ciena report for the week before's (sic) receipts?"   Id. at PageID.1172.   In another exchange in September of 2020, Obermeyer writes to Willoughby about Ciena and Willoughby responds that he will "provide direction" today.   Id. at 1177.

These messages demonstrate that Ciena has sufficiently plead that Willoughby was doing more than merely "overseeing" Group Resources' operations from Georgia.

Willoughby's other arguments—that he cannot be hauled into court in Michigan because he was unaware of the tortious conduct and that he, individually was not a party to the ASA—do not tip the scale in his favor. Willoughby cites no caselaw to support these propositions. This Court need not evaluate an argument that Willoughby fails to develop. See ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 583–584 (6th Cir. 2019) ("[T]his court has consistently declined to review issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (punctuation modified). In any case, his contentions do nothing to undermine the significant contacts alleged.

The Court finds that Ciena has established a prima facie case that Willoughby purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state.

**Obermeyer**

Obermeyer argues that he did not purposefully avail himself because he: (i) never "personally contracted" with Ciena in Michigan; (ii) nor was he "directly involved" in ASA negotiations; (iii) he only visited Michigan twice; (iv) he never routinely corresponded with Ciena employees in Michigan; (v) the ASA's choice of law is Georgia; and (vi) his alleged administration

of the Plan occurred in Georgia.   Obermeyer Mot. at PageID.725–729; Obermeyer Reply at PageID.1555–1556.

Ciena argues that Obermeyer, as the CFO and vice president of Group Resources: (i) frequently communicated with Ciena and the Plan in Michigan and (ii) under his leadership, his department provided fake check registers to Ciena in Michigan since at least 2021.   Resp. to Obermeyer Mot. at PageID.1300.   Daffin also attested to her contacts with Obermeyer saying that she emailed with Obermeyer "over a dozen times" about "claims administration, payment of claims, unpaid claims…."   Daffin Aff. at PageID.1452–1453 (Dkt. 60–6).   Daffin provided an example of a communication where she alleges that Obermeyer "assured her" that she could rely on the numbers he sent her related to Ciena's claims on hold.   Id. at PageID.1452.

| | |
|---|---|
| **From:** | dave obermeyer |
| **Sent:** | Thur 9/14/2017 9:26:05 PM (UTC) |
| **To:** | clouis@cienahmi.com; Pam |
| **Cc:** | Bill Jack; Kathy Burns; Andy Willoughby |
| **Bcc:** | Sheila Autry |
| **Subject:** | RE: Claims on Hold listing |

Cynthia,

I apologize for any confusion.

I always generate this report and have since the beginning.  Bill does the support detail work for me prior to me sending it to Kathy.

You can ABSOLUTELY rely on the numbers that I sent you.

In the future, relating to this report, if Kathy or Andy are not accessible, please feel free to contact me.

Dave

14

When communications into the forum give rise to an intentional tort, that alone may satisfy the purposeful availment prong. Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001). The Sixth Circuit explained:

> When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'

Id. at 332 (exercising personal jurisdiction over resident of Belgium).

As in Neal, Obermeyer's alleged actions with Ciena in Michigan—providing fake check registers over a period of at least three years, exchanging "at least a dozen" emails with Daffin in Michigan about claims, and assuring Daffin that she could rely on his numbers—gives rise to the alleged intentional torts underlying this action. Thus, these contacts are sufficient to meet the purposeful availment prong. Needa Parts Mfg., Inc. v. PSNet, Inc., 635 F. Supp. 2d 642, 650 (E.D. Mich. 2009) (exercising personal jurisdiction over a non-resident defendant for allegedly sending two fraudulent letters and making fraudulent statements over the phone).

### b. Arising From and Reasonableness Prongs

In addition to purposeful availment, the Court must also examine whether the cause of action "ar[ose] from the defendant's activities [in Michigan] and whether the exercise of jurisdiction over the defendant is "reasonable." AlixPartners, LLP, 836 F.3d at 549–550 (punctuation modified). With respect to whether the exercise of jurisdiction is "reasonable," where the first two prongs of the test are met, there is an inference of "reasonableness." Id. at 552. The Court finds that both prongs are satisfied with respect to Willoughby and Obermeyer.

Willoughby does not make any arguments that his contacts did not arise out of or relate to his actions in Michigan. Because Willoughby does not develop this argument, the Court can consider it waived. See McPherson v. Kelsey, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues

15

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Willoughby does argue that the Court's exercise of jurisdiction as to him is unreasonable. Willoughby Mot. at PageID.678. He states that it would be a "burden" to defend this suit in Michigan because it would "require expensive and prolonged travel away from his home and work in Georgia." Id. Furthermore, he argues that Ciena has failed to show that Michigan has an interest in adjudicating this dispute and Ciena has not given the court a reason why it would be less convenient to obtain relief in Georgia rather than Michigan. Id.

These arguments fail. First, the burden of travelling to defend this lawsuit is insufficient to demonstrate that the Court's exercise of jurisdiction over him is unreasonable because the Sixth Circuit has upheld specific jurisdiction in cases where doing so forced the defendant to travel. See e.g., Youn, 324 F.3d at 420 (collecting cases). Second, Ciena has demonstrated Michigan's interest in adjudicating this dispute—Ciena alleges that the Defendants misused millions of dollars of a Michigan-based ERISA plan affecting hundreds of Michigan clients. xLM Sols., LLC v. Mecanica Sols., Inc., No. 18-cv-10443, 2018 WL 2973375, at *6 (E.D. Mich. June 13, 2018) (finding a court's exercise of jurisdiction over an out-of-state defendant reasonable because "Michigan has an interest in protecting its residents from fraud"). Thus, this Court's exercise of jurisdiction is reasonable under the circumstances.

As for Obermeyer, Ciena alleges that he embezzled Ciena's Plan funds over a period of several years affecting Ciena and the Plan's participants in Michigan. Resp. to Obermeyer Mot. at PageID.1301–1302; Daffin Aff. at PageID.1453. By allegedly directing fraudulent representations to a Michigan company, he could reasonably have anticipated "being haled into court" in Michigan. Needa Parts Mfg., Inc., 635 F. Supp. 2d at 650 (punctuation modified) (finding

that a CEO's allegedly fraudulent phone calls and emails over several months to a Michigan company sufficiently satisfied the "purposeful availment" and "arising from" prongs of the due process analysis).   Obermeyer does not make any arguments in his motion related to reasonableness; thus he has waived this argument.  McPherson, 125 F.3d at 995.

Accordingly, the Court finds that it can exercise personal jurisdiction over Willoughby and Obermeyer for Ciena's state law claims as well.

### 2.  OWM and SODB

Finding that it has personal jurisdiction over Willoughby and Obermeyer for all of the claims against them, the Court next examines whether it can exercise personal jurisdiction over OWM and SODB.  For the reasons that follow, the Court finds that it cannot exercise personal jurisdiction over OWM and SODB, so the Obermeyer motion to dismiss with respect to OWM and SODB is granted.

In its complaint, Ciena alleges that OWM and SODB "knowingly received stolen assets belonging to Ciena…."  Am. Compl. ¶ 22.  Ciena also alleges that "Willoughby later admitted that Obermeyer improperly and unlawfully sent funds from Group Resources…, directly to SODB…." Id.  The only other mentions of OWM and SODB in Ciena's complaint describe that Obermeyer organized both entities, that he is the registered agent of both, and that both are incorporated and have their principal places of business in Georgia.  Id. ¶¶ 20–21.

Both parties barely mention OWM and SODB in their briefs.  Their arguments mostly consist of attributing Obermeyer's actions to OWM and SODB, without actually explaining how OWM and SODB are involved.  See Obermeyer Mot. at PageID.717; Resp. to Obermeyer Mot. at PageID.1300–1301.  Ciena's only specific purposeful availment arguments regarding OWM and SODB are that: (i) Matt Obermeyer, an alleged co-owner of SODB, "traveled to Michigan for

17

work on behalf of one or more of the Obermeyer Defendant entities;" and (ii) OWM and SODB "knowingly benefited from the Defendants' misdeeds against a Michigan company." Resp. to Willoughby Mot. at PageID.1301.

These two specific allegations are insufficient for the Court to exercise jurisdiction over OWM and SODB. Ciena does not provide any caselaw supporting these two arguments. The Court need not respond to arguments that a party fails to develop. See ECIMOS, LLC, 736 F. App'x at 583–584.

For the above reasons, the Obermeyer motion to dismiss for lack of personal jurisdiction with respect to OWM and SODB is granted.

## B. Failure to State a Claim[6]

Finding that it has jurisdiction over Willoughby and Obermeyer, this Court will now examine Willoughby and Obermeyer's arguments that Ciena has failed to state a claim against them. For the reasons that follow, the Court finds that Ciena has sufficiently stated all its claims against Willoughby and Obermeyer.

### 1. ERISA Claims (Counts I–III)

In their motions to dismiss, Willoughby and Obermeyer argue that Ciena has not properly pled that they are fiduciaries, a necessary element for the breach of fiduciary duties claims set out in Counts I–III. Willoughby Mot. at PageID.679–683; Obermeyer Mot. at PageID.732–737. The Court disagrees.

Under ERISA, a person is a fiduciary if he or she "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

---

[6] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

respecting management or disposition of [a fund's] assets." 29 U.S.C. § 1002(21)(A)(i). "The threshold for acquiring fiduciary status is lower for persons or entities responsible for handling the plan's assets than for those who manage the plan." Briscoe v. Fine, 444 F.3d 478, 491 (6th Cir. 2006). In contrast, an entity or individual who "performs purely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits" is not a fiduciary under ERISA. Pipefitters Loc. 636 v. Blue Cross & Blue Shield of Mich., 213 F. App'x 473, 477 (6th Cir. 2007).

Ciena's complaint sufficiently alleges fiduciary status as to Willoughby and Obermeyer. It sets forth allegations that both "maintained and exercised the authority to adjudicate and approve or deny claims…and appeals." Am. Compl. ¶ 27. Ciena alleges that Group Resources performed "medical necessity determinations, experimental and investigational determinations and appeals," and decided "which claims could be paid." Id. Ciena also provided text messages demonstrating that Willoughby and Obermeyer discussed how to handle business related to the Plan. Text Messages at PageID.1171–1221. These allegations go well-beyond mere ministerial tasks related to the Plan.

Willoughby and Obermeyer's arguments to the contrary are not persuasive. First, they argue that the ASA states that Group Resources is not an ERISA fiduciary. Willoughby Mot. at PageID.680–681; Obermeyer Mot. at PageID.732. Second, they argue that Group Resources' duties under the ASA are "purely ministerial," so they are not fiduciaries. Willoughby Mot. at PageID.681–682; Obermeyer Mot. at PageID.733. Third, they say that, even if Group Resources is a fiduciary, their roles as officers of Group Resources does not mean that they, too, are fiduciaries. Willoughby Mot. at PageID.682–682; Obermeyer Mot. at PageID.733. These arguments all fail.

19

Willoughby and Obermeyer's first argument fails because "language in a contract purporting to limit fiduciary status does not override[] [a third-party administrator's] functional status as a fiduciary." Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc., 689 F.3d 793, 798 (6th Cir. 2012) (punctuation modified). To determine whether a party is a fiduciary under ERISA, the Court must examine the actual duties and actions of the defendants. Clements v. Aetna Life Ins. Co., No. 11–10955, 2012 WL 5820856, at *5 (E.D. Mich. Mar. 21, 2012). "A fiduciary is established under ERISA by a party's functional role and that responsibility cannot be abrogated by contract." Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich., 751 F.3d 740, 746 n.7 (6th Cir. 2014). Simply because the ASA excludes Group Resources as a fiduciary does not absolve Willoughby and Obermeyer's role particularly where, as here, Ciena has alleged that Willoughby and Obermeyer were actively involved in business related to the Plan. Text Messages at PageID.1171–1221.

Willoughby and Obermeyer's second argument, that the duties under the ASA are purely ministerial, fails because Ciena, as explained above, has sufficiently alleged that Group Resources engaged in activities requiring the exercise of discretion. See, e.g., Am. Compl. ¶ 27 (alleging that Group Resources, Willoughby and Obermeyer "exercised discretionary control over Plan assets or maintained and exercised the authority adjudicate and approve or deny claims…appeals, or both;" that they performed "medical necessity determinations, experimental and investigational determinations;" and they decided "which claims could be paid"). These alleged tasks are not simply ministerial.

Willoughby and Obermeyer's third argument fails because Ciena is not alleging that Willoughby and Obermeyer are fiduciaries simply because they are officers of a company that was a fiduciary of the Plan. Ciena has sufficiently alleged that Willoughby and Obermeyer, by their

own conduct, exercised discretionary control over the Plan assets when they communicated via text message about how to handle the Plan's assets.  Text Messages at PageID.1171–1221.

The Court, therefore, rejects Willoughby and Obermeyer's arguments that Ciena has not sufficiently plead that they were fiduciaries and denies their motion to dismiss related to the ERISA claims.

### 2.   State-Law Claims (Counts V–VIII)

Ciena also brings five state-law claims against Willoughby and Obermeyer.  See Am. Compl.  The Court will examine Willoughby and Obermeyer's arguments related to these claims separately.

### a.   Willoughby

Willoughby argues that Ciena failed to properly allege the state-law claims against him because he "cannot be liable for the torts committed by Obermeyer or the GR Entities," and that Ciena has "only alleged that Willoughby knew or should have known" that Obermeyer was stealing funds from the Plan.  Willoughby Mot. at PageID.683–686.  Instead of specifying how Ciena failed to state a claim as to each of the claims alleged against him, Willoughby argues in a conclusory fashion, that as an officer, he is not vicariously liable for the actions of other officers and that he is protected by the fiduciary shield doctrine.  Id. at 685–686.  As stated above, this Court need not evaluate arguments that Willoughby fails to develop.  ECIMOS, LLC, 736 F. App'x at 583–584.

In his reply brief, Willoughby makes more specific arguments as to the conversion and aiding and abetting claims only.  Reply to Willoughby Mot. at PageID.1566–1567.  But because his reply brief is the first time Willoughby makes these arguments, they are waived.  Sanborn v.

<u>Parker</u>, 629 F.3d 554, 579 (6th Cir. 2010) (stating that the Sixth Circuit has "consistently held" that arguments made for the first time in a reply brief are waived).

Therefore, the Court denies Willoughby's motion to dismiss as to Ciena's state-law claims against him.

### b.  Obermeyer

Obermeyer argues that, because Ciena has failed to state a federal claim against him, the Court should not exercise supplemental jurisdiction over the remaining claims alleged against him. Obermeyer Mot. at PageID.737–738.  Because the Court has found that Ciena has sufficiently alleged federal claims against Obermeyer—the ERISA claims in Counts I–III—Obermeyer's argument fails.  Therefore, the Court denies the Obermeyer motion to dismiss for failure to state a claim as to the state-law claims against Obermeyer as well.

Accordingly, Ciena's state-law claims against Willoughby and Obermeyer survive.

### III.    CONCLUSION

For the reasons explained above, the Court denies Willoughby's motion to dismiss (Dkt. 42). The Obermeyer motion (Dkt. 48) is granted in part (as to OWM and SODB) and denied in part (as to Obermeyer).

**SO ORDERED.**

Dated: September 26, 2025                              s/Mark A. Goldsmith
Detroit, Michigan                                     MARK A. GOLDSMITH
                                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 26, 2025.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager

23